## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

| | | |
|---|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAM PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) | **MDL No. 2:18-mn-2873-RMG**<br><br>**This document relates to**<br>**2:23-cv-02384-RMG** |

### MEMORANDUM IN SUPPORT OF MOTION TO DISMISS BY DEFENDANT STARR INDEMNITY AND LIABILITY COMPANY

Defendant Starr Indemnity and Liability Company ("Starr"), through its undersigned counsel and pursuant to Local Rule 7.04, hereby respectfully submits this Memorandum in Support of its Motion to Dismiss.

### SUMMARY

Starr moves this Court to dismiss the Amended Complaint filed by Tyco Fire Products LP ("Tyco") in its entirety or, in the alternative, to stay these proceedings pending resolution of a similar, earlier filed, and more comprehensive action pending in Wisconsin. As set forth below, Starr respectfully moves this Court on five separate grounds, which largely incorporate or mirror the arguments identified in the Motions to Dismiss and accompanying memoranda filed by Defendants AIU Insurance Company and affiliated companies (collectively, the "AIG Insurers") [ECF No. 47] and by Zurich American Insurance Company and affiliated companies (collectively, the "Zurich Insurers") [ECF No. 46]. With respect to the lack of personal jurisdiction, Starr separately sets forth its own jurisdictional facts below, but Starr otherwise joins in and incorporates the legal arguments made by the Zurich Insurers. For the remaining four grounds, Starr joins in and expressly incorporates by reference the arguments made by the AIG Insurers and Zurich Insurers in their respective motions and memoranda.

1

First, Tyco has not met its burden to demonstrate personal jurisdiction over Starr. As with respect to the Zurich Insurers, the Court lacks general personal jurisdiction because Starr is not "at home" in South Carolina, as Starr is headquartered in Texas and maintains its principal place of business in New York. The Court does not possess specific personal jurisdiction, because the Starr policy identified in Tyco's lawsuit was not issued in South Carolina, nor does Tyco have its principal place of business or incorporation in South Carolina. The insured risk at issue, Tyco's manufacture and sale of AFFF, was based in Wisconsin without any particular connection to South Carolina.

Second, Tyco's lawsuit should be dismissed because it was improperly filed directly in the MDL without authorization under the Order issued by the Judicial Panel on Multidistrict Litigation ("JPML") or this Court's Case Management Orders.

Third, this Court should stay or abstain from the present action in favor of the first-filed, parallel insurance coverage action in Wisconsin, which also concerns coverage for the same underlying litigation. A stay or abstention is warranted under both the *Brillhart-Wilton* abstention doctrine and the *Colorado River* doctrine.

Fourth, as a non-resident plaintiff, Tyco may not sue foreign corporations over a cause of action without a connection to South Carolina under the restrictions imposed by South Carolina's door-closing statute.

Fifth, and finally, this Court should also stay or abstain from the present action in favor of the coverage action in Wisconsin under the doctrine of *forum non conveniens*.

## STATEMENT OF FACTS RELEVANT TO PERSONAL JURISDICTION

Starr joins and incorporates by reference the factual background set forth in the Motion to Dismiss and memorandum filed by the AIG Insurers. As described there, Tyco and related entities filed a declaratory judgment action in state court in South Carolina in October 2022 seeking

2

insurance coverage from various insurers for its alleged PFAS liabilities (and some other claims). Plaintiffs did not name Starr in that action. That action was dismissed on May 22, 2023, in light of the parallel, pending insurance coverage action in Wisconsin between Tyco and related entities and many of its insurers concerning coverage for the same underlying PFAS liability.

The Wisconsin coverage action, described in detail in the brief filed by the AIG Insurers, forms the basis for the arguments presented by the AIG Insurers, in which Starr joins, that this Court should dismiss the present action, or abstain from hearing it, on the basis of the *Brillhart-Wilton* abstention doctrine, the *Colorado River* doctrine, and/or the doctrine of *forum non conveniens*. As in the South Carolina state court action, Starr was not named as a party in the Wisconsin action. Nonetheless, Starr is considering intervention in the Wisconsin action and, in any case, would not contest jurisdiction in that court should another party seek to bring Starr into that action.

As alleged in Tyco's Amended Complaint, neither Tyco nor Starr is a resident of South Carolina or is organized under the laws of South Carolina. Rather, the Complaint alleges that Tyco is a limited partnership with a principal place of business in Marinette, Wisconsin, and is organized under the laws of the State of Delaware, making Tyco a citizen of Wisconsin and Delaware. Am. Compl. ¶ 11. Plaintiff alleges that Starr is a "corporation organized under the laws of the State of Texas, with its principal place of business located in the State of New York." *Id.* ¶ 19. These jurisdictional allegations regarding Starr are essentially correct. Declaration of Judy F. Marotti ("Marotti Decl.") ¶ 4. Plaintiff also alleges upon information and belief that Starr is "licensed to do and is doing business in the State of South Carolina." Am. Compl. ¶ 19. While Starr is indeed licensed to do business in South Carolina, that is insufficient to confer personal jurisdiction, as described below.

In its Amended Complaint, Plaintiff now identifies five excess Starr policies issued to

3

Tyco, with policy periods covering October 1, 2015, to October 1, 2020. The policy numbers and policy periods are as follows:

| Policy Number | Policy Period |
|---|---|
| 1000040408151 | 10/01/2015-10/01/2016 |
| 10000040405161 | 10/01/2016-10/01/2017 |
| 10000040405171 | 10/01/2017-10/01/2018 |
| 10000040405181 | 10/01/2018-10/01/2019 |
| 10000040405191 | 10/01/2019-10/01/2020 |

Am. Compl. ¶ 49. Tyco does not allege that any of the events relating to the negotiation or issuance of these policies occurred in South Carolina, nor can it. For example, the 2015-16 policy states it was issued by Starr Indemnity & Liability Company of Dallas, Texas, produced by Thomas E Sears, Inc., of Boston, Massachusetts, and issued to Tyco International Management Company, of Princeton, New Jersey. Marotti Decl. ¶¶ 4-6. The policy contains a state-specific endorsement reflecting New Jersey requirements for cancellation and removal provisions but no other state-specific endorsements from any other state including South Carolina. In fact, the policy contains no references at all to South Carolina or South Carolina law. *Id.* ¶ 8. The remaining four policies are similarly bereft of any references to South Carolina or South Carolina law. *Id*. ¶ 9. Furthermore, Starr does not maintain an office in South Carolina. *Id.* ¶ 10.

## ARGUMENT

### I. This Court Cannot Exercise Personal Jurisdiction over Starr.

Federal courts may only exercise personal jurisdiction over a defendant to the extent authorized by that state's long-arm statute and the Fourteenth Amendment's due process requirements. *Christian Sci. Bd. of Dirs. Of First Church of Christ, Sci. v. Nolan*, 259 F.3d 209, 2015 (4th Cir. 2001). When a district court rules on a motion to dismiss for lack of personal jurisdiction over a defendant, the burden is on the plaintiff to show jurisdiction. *In re Celotex*

4

*Corp.*, 124 F.3d 619, 628 (4th Cir. 1997). Thus, Tyco must demonstrate that this Court can properly assert either general or specific jurisdiction over Starr. *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623–24 (D.S.C. 1999). Because Tyco can show neither as to Starr, the Complaint against Starr should be dismissed.

### A.     Starr is Not Subject to General Jurisdiction in South Carolina.

The United States Supreme Court has repeatedly held that the Due Process Clause of the Fourteenth Amendment precludes a court from exercising general jurisdiction over a defendant—even one who does extensive business in the state—unless the defendant is "at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporate defendant is "at home" in the states where it is incorporated and maintains its principal place of business, which are the "paradigm" bases for general jurisdiction. *Daimler AG v. Bauman*, 571 U.S. 117, 137–139 (2014). *See also Holliday v. Nissan Motor Co.*, No. 2:18-1503-RMG, 2018 U.S. Dist. LEXIS 216802, *4 (D.S.C. Dec. 26, 2018) (citing *Daimler AG* for the proposition that corporate defendants are "traditionally . . . subject to general jurisdiction in [their] state of incorporation or principal place of business").

Starr is neither incorporated in South Carolina, nor is its principal place of business in South Carolina. Marotti Decl. ¶ 4. When neither a corporate defendant's place of incorporation nor its principal place of business is in the forum state, "the only way this Court can have general jurisdiction . . . is if its contacts with South Carolina are so continuous and systematic as to render it essentially at home in South Carolina." *Carl v. Mazda Motor Corp.*, No. 4:20-CV-00640-DCC, 2020 U.S. Dist. LEXIS 235413, at *10 (D.S.C. Dec. 15, 2020). Merely "doing business" in a state is not sufficient for exercising general jurisdiction, especially where the defendant does business in multiple states. *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 412 (2017) (noting that, while the defendant railroad had "over 2,000 miles of railroad track and more than 2,000 employees in

5

Montana," that was insufficient to render it "at home" there because "the inquiry calls for an appraisal of a corporation's activities in their entirety" and "a corporation that operates in many places can scarcely be deemed at home in all of them"). Thus, the fact that Starr does business in South Carolina, among many other states, is insufficient to subject it to general jurisdiction.

The Amended Complaint alleges that Starr "was and is licensed to do and is doing business in the State of South Carolina," Am. Compl. ¶¶ 19, and Tyco's opposition to the insurers' original motions to dismiss stresses the registration of each defendant insurer with the state. ECF No. 3549 at 3 & 16-18. Unfortunately for Tyco, registration to do business in South Carolina does not subject foreign corporations to general jurisdiction in the state. *See, e.g.*, *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020) ("South Carolina law does not make consent to general jurisdiction a consequence of obtaining a certificate of authority to transact business."); *see also Maseng v. Lenox Corp.*, 483 F. Supp. 3d 360, 367–68 (D.S.C. 2020).

The *Fidrych* court squarely held that a license to do business in South Carolina is insufficient to establish general jurisdiction over an insurer. 952 F.3d at 134 (holding that "the requirements for the exercise of contact-based general jurisdiction are not satisfied" even when the defendant "has a Certificate of Authority to conduct business" in South Carolina and "does business" in South Carolina). Courts in other states have reached similar conclusions. *See, e.g.*, *Wartsila N. Am., Inc. v. Int'l Ctr. for Dispute Resolution*, 387 F. Supp. 3d 715, 731 (S.D. Tex. 2018) (holding that an insurance company's contacts in Texas—including that it was licensed in Texas, maintained a regional headquarters in Texas, and conducted a significant portion of its business in Texas—were "not sufficient for the exercise of general jurisdiction"); *Pena v. N.J. Mfrs. Ins. Co.*, 2021 U.S. Dist. LEXIS 132204, at *4–5 (E.D.N.Y. July 14, 2021) (holding that an insurance company was not subject to general jurisdiction in New York when it was "authorized to do business in New York" and wrote automobile policies for businesses that had New York

6

offices or New York-licensed vehicles, as the insurance company was in "no way . . . 'essentially at home' in New York"); *Whatley v. Ohio Nat'l Life Ins. Co.*, 2019 U.S. Dist. LEXIS 200187, at *9 (M.D. Ala. Nov. 19, 2019) (holding that "the Plaintiffs' factual allegations concerning general jurisdiction fail to establish that the Defendants are at home in Alabama" because the Defendants were incorporated and maintained their principal place of business in Ohio, even though the Defendants also marketed and sold insurance products in Alabama "on a systematic and regular basis"). Thus, the fact that Starr obtained a certificate of authority to conduct business in South Carolina does not establish general personal jurisdiction. Starr also joins and incorporates the specific arguments made by the Zurich Insurers with respect to this South Carolina licensing statute, S.C. § 38-5-10, et seq. *See* ECF No. 44 at 21-24.

Tyco also cites the recent Supreme Court decision *Mallory v. Norfolk S. Railway*, 143 S. Ct. 2028 (2023), but that case has no impact on the personal jurisdiction analysis here. The *Mallory* decision relied heavily on the specific provisions addressed in *Pennsylvania Fire Ins. Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917), and the similarities between the Missouri statute at issue in *Pennsylvania Fire* and the Pennsylvania statute at issue in *Mallory*. *See, e.g.*, *Mallory*, 143 S. Ct. at 2037–38. Among other provisions, those statutes required a registering corporation to identify an "office" it would "continuously maintain" in the state and also obligated that corporation to permit state courts to "exercise general personal jurisdiction" over any registered foreign corporation. *Id*. (citing 15 Pa. Cons. Stat. § 411(f) & 42 Pa. Cons. Stat. § 5301(a)(2)(i)). The South Carolina statute does not contain either of these provisions. *See* S.C. § 38-5-10, *et seq*. Furthermore, the Fourth Circuit has squarely addressed those issues in *Fidrych* in the context of South Carolina's specific business registration statute. *Fidrych*, 952 F.3d at 134. *Mallory* does not change the *Fidrych* conclusion that registering to do business in South Carolina does not amount to consent to general jurisdiction in the state.

7

In sum, Tyco has not alleged facts sufficient to show that Starr is "at home" in South Carolina for the purpose of jurisdiction. *See, e.g.*, *Holliday*, 2018 U.S. Dist. LEXIS 216802 at *6 (finding no personal jurisdiction over a corporate defendant that sold to and purchased from several companies in South Carolina" because "these minimal financial transactions cannot support general jurisdiction"). Tyco alleges no actual contact by Starr with the state of South Carolina— the Complaint merely states that Defendant insurers are licensed to do business in South Carolina, that they generally included South Carolina within the coverage territory of their policies, and that they "promised, through [their] policies, to provide insurance benefits in or relating to South Carolina." Am. Compl. ¶ 36.

### B.    The Court Cannot Assert Specific Jurisdiction over Starr Consistent with the Fourteenth Amendment.

Because South Carolina's long-arm statute is coextensive with the Due Process Clause of the United States Constitution, this Court may only exercise specific personal jurisdiction over a foreign defendant when the defendant has "sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). The Fourth Circuit has synthesized the requirements for specific jurisdiction into a three-part test that considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Id.* at 278. Each prong must be met before the Court need consider the next prong. *Id*. at 278–79.

8

### 1. Tyco's Claims Do Not Arise out of Any Activities by Starr Directed at South Carolina.

Under either of the first two components of the test, Tyco fails to sufficiently allege that Starr had sufficient contacts in South Carolina or that Tyco's claims arose out of any such contacts. As stated above, Tyco alleges only three South Carolina-related contacts as a basis for personal jurisdiction over the insurers: each insurer (1) "deliberately licensed itself to do business in South Carolina or engages in substantial business activities in this State"; (ii) "provides for nationwide coverage," thus "insuring South Carolina risks relating to Tyco Fire Products' operations, products and interests"; and (iii) "promised, though its Policies, to provide insurance benefits in or relating to South Carolina," including "paying damages and/or providing a defense or paying defense costs with respect to underlying suits brought in South Carolina." Am. Compl. ¶ 36. Tyco's Starr-specific allegations are brief and conclusory, stating merely that Starr "was and is licensed to do and is doing business in the State of South Carolina." *Id*. ¶ 19. Even assuming that "deliberately" obtaining a license to do business in South Carolina amounts to purposeful availment under the first prong of the test, which it does not, Tyco has not shown how any of the claims at issue relate to any of Starr's activities directed toward South Carolina. Tyco does not and cannot allege that Starr negotiated or issued the policy in South Carolina, or indeed that the liability insured by the Policy had any specific connection to South Carolina at all. *See* Marotti Decl. ¶¶ 5–8.

Although Tyco is named as a defendant in some of the MDL lawsuits, those lawsuits arise out of Tyco's (and its predecessor's) manufacture and sale of products containing PFAS at its facility in Wisconsin. *E.g.*, Am. Compl. ¶¶ 3, 11 (describing the underlying complaints and noting that Tyco's principal place of business is in Wisconsin). As set forth by the AIG and Zurich Insurers, neither the underlying MDL lawsuits, nor Tyco's (improper) attempt to file this coverage litigation directly in the MDL, is sufficient to confer personal jurisdiction over the insurers, given the location of the insured risk and the fact that the vast majority of underlying lawsuits are

unrelated to South Carolina but were merely transferred to the MDL for consolidated pre-trial discovery.

### 2. The Exercise of Personal Jurisdiction Is Constitutionally Unreasonable.

Even if Tyco somehow satisfied the first two prongs of the personal jurisdiction test (which it cannot), Tyco would also need to show that the exercise of personal jurisdiction would be constitutionally reasonable, taking into account:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs*, 561 F.3d at 279. Taken as a whole, these factors show that the exercise of personal jurisdiction by this Court is not constitutionally reasonable here. South Carolina itself has little interest in resolving a coverage dispute among foreign companies with no relationship to South Carolina. Tyco's interest in effective relief can be equally served in the pending coverage action in the Wisconsin court, which has general jurisdiction over Tyco's principal place of business and acknowledged personal jurisdiction over the insurers issuing policies to Tyco. The shared interests of the states in obtaining efficient resolution of the dispute and furthering substantive social policies would also be best served through the Wisconsin coverage action. Thus, this Court should dismiss Tyco's complaint.

## II. This Court Should Dismiss the Complaint as Improperly Filed on the MDL Docket.

As set forth by the Zurich Insurers, Tyco is not permitted to file its coverage lawsuit directly in the MDL under the Order issued by the Judicial Panel on Multidistrict Litigation ("JPML"), or under this Court's Case Management Order No. 3. Starr joins and incorporates by reference the arguments regarding Tyco's improper filing of its complaint as set forth in the Zurich Insurers' Motion to Dismiss and accompanying memorandum and related documents.

**III.    This Court Should Stay or Abstain from this Action under the *Brillhart-Wilton* Abstention Doctrine or the *Colorado River* Doctrine.**

As set forth in the AIG Insurers' Motion to Dismiss and accompanying memorandum and related documents, this Court should abstain from deciding Tyco's declaratory judgment action under the *Brillhart-Wilton* doctrine set forth in the Supreme Court cases of *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942), and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). Starr joins and incorporates by reference all arguments regarding abstention under *Brillhart-Wilton* and related doctrines as set forth in the AIG Insurers' Motion to Dismiss and accompanying memorandum and related documents. Starr also joins and incorporates by reference all arguments set forth by the AIG Insurers regarding abstention under the Colorado River doctrine, established in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976).

**IV.    This Court Should Dismiss this Action because Tyco Lacks Standing Under South Carolina's Door-Closing Law.**

Tyco also lacks standing to sue Starr in South Carolina for this coverage dispute due to South Carolina's door-closing statute, which mandates dismissal. Starr joins and incorporates by reference all arguments regarding Tyco's lack of standing under the door-closing statute as set forth in the Zurich Insurers' Motion to Dismiss and accompanying memorandum and related documents. Because Tyco lacks standing to sue in this Court, its Complaint should be dismissed.

**V.    This Court Should Stay or Abstain from this Action under the Doctrine of *Forum Non Conveniens*.**

As set forth in the Zurich Insurers' Motion to Dismiss and accompanying memorandum and related documents, this Court should dismiss or stay Tyco's declaratory judgment action under the doctrine of *forum non conveniens*. Although Starr is not a named defendant in the Wisconsin coverage action, Starr adopts the arguments of the AIG Insurers as to dismissal on the basis of *forum non conveniens*, as set forth in the AIG Insurers' Motion to Dismiss and accompanying memorandum and related documents.

## VI. Conclusion

For the foregoing reasons, Starr respectfully requests that the Court dismiss, stay, or abstain from hearing the Complaint filed by Tyco.

September 11, 2023

*s/Wesley B. Sawyer*
Wesley B. Sawyer (Fed. Bar 11244)
MURPHY & GRANTLAND, P.A.
4406-B Forest Drive
Columbia, South Carolina 29206
(803) 454-1233
wsawyer@murphygrantland.com
Attorneys for Defendant Starr Indemnity & Liability Company


LINDEMANN MILLER BOWEN LLP
John Lindemann (*pro hac vice* application forthcoming)
john@lm-law.com
Jeff Bowen (*pro hac vice* application forthcoming)
jeff@lm-law.com
125 S. Wacker Dr. Suite 200
Chicago, IL 60606
(312) 300-4500
Attorneys for Defendant Starr Indemnity & Liability Company


LYNBERG & WATKINS PC
R. Jeff Carlisle (*pro hac vice* application forthcoming)
jcarlisle@lindberg.com
1150 S. Olive Street, 18th Floor
Los Angeles, CA 90015
Attorney for Defendant Starr Indemnity & Liability Company