**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| **TYCO FIRE PRODUCTS LP,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| vs. | ) | |
| | ) | **Civil Action No. 2:23-cv-02384-RMG** |
| **AIU INSURANCE COMPANY,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**PARTIAL AIG INSURERS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE,
MOTION TO CERTIFY AN INTERLOCUTORY APPEAL
PURSUANT TO 28 U.S.C. § 1292(b) AND TO STAY PROCEEDINGS**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................ 1

ARGUMENT ....................................................................................................... 6

I.     THE COURT SHOULD GRANT RECONSIDERATION OF ITS DENIAL OF
THE INSURERS' MOTION TO DISMISS ...................................................... 6

     A.    The Court Erred In Failing To Apply South Carolina's Door-Closing
Statute to Bar Tyco's Claims ................................................................ 7

     B.    The Court Erred In Finding Defendants Are Subject To Specific Personal
Jurisdiction In South Carolina ............................................................ 10

     C.    The Court Abused Its Discretion In Declining To Abstain From Exercising
Jurisdiction In This Matter .................................................................. 12

     D.    The Case Schedule Is Designed To Benefit Tyco And Harm The Partial
AIG Insurers By Depriving Them Of Their Due Process Rights ......................... 15

II.    ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS ORDER FOR
INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(b) .......................... 18

     A.    The Court's Decision Turns On Three Controlling Questions Of Law And
There Is Substantial Ground For Difference Of Opinion As To Each
Question To Warrant Certification For Immediate Appeal ................................ 18

     B.    Resolution Of These Controlling Questions Of Law Will Materially
Advance The Litigation ........................................................................ 23

     C.    A Stay Of Proceedings Is Warranted ...................................................... 24

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aluminum Bahr. B.S.C. v. Dahdaleh*,
    2012 U.S. Dist. LEXIS 153457 (W.D. Pa. Oct. 25, 2012) ....................................................22

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
    326 F.3d 505 (4th Cir. 2003) .............................................................................................7

*Ansul, LLC, et al. v. ACE Am. Ins. Co., et al.*,
    No. 2022-CP-40-05289 (S.C. Ct. Com. Pl. May 22, 2023)....................................................23

*APCC Servs., Inc. v. Sprint Commc'ns Co.*,
    297 F. Supp. 2d 90 (D.D.C. 2003) .........................................................................................21

*Arizona v. San Carlos Apache Tribe*,
    463 U.S. 545 (1983).................................................................................................................12

*AsIs Internet Servs. v. Active Response Grp.*,
    2008 U.S. Dist. LEXIS 117075 (N.D. Cal. Sept. 16, 2008) ...................................................25

*Bell v. Farmers Ins. Exch.*,
    9 Cal. Rptr. 3d 544 (Ct. App. 2004) .......................................................................................17

*Black v. W. Va. State Police*,
    2023 U.S. Dist. LEXIS 186350 (S.D. W. Va. Oct. 17, 2023) .................................................25

*Boisvert v. Techtronic Indus. N. Am., Inc.*,
    56 F. Supp. 3d 750 (D.S.C. 2014)....................................................................................9, 20

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*,
    582 U.S. 255 (2017)......................................................................................................11, 12, 21

*Central Wesleyan College v. W.R. Grace & Co.*,
    6 F.3d 177 (4th Cir. 1993) ...............................................................................................9, 10

*Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*,
    2011 U.S. Dist. LEXIS 57530 (E.D. Ky. May 24, 2011) ......................................................22

*Coalition for Equity & Excellence in MD Higher Educ. v. MD Higher Educ. Comm'n*,
    2015 U.S. Dist. LEXIS 83741 (D. Md. June 29, 2015)..........................................................19

*Colony Ins. Co. v. Danica Grp., LLC*,
    2014 U.S. Dist. LEXIS 125285 (E.D.N.Y. Sep. 8, 2014).......................................................12

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) .........................................................................................11, 21

*Cooper v. Stender*,
   30 F.R.D. 389 (E.D. Tenn. 1962) .......................................................................17

*Emerson Elec. Co. v. Yeo*,
   2013 U.S. Dist. LEXIS 15148 (E.D. Mo. Feb. 5, 2013) ...................................22, 25

*Estate of Alvarez v. Johns Hopkins Univ.*,
   2019 U.S. Dist. LEXIS 69262 (D. Md. Apr. 23, 2019) ........................................23

*Farmer v. Monsanto Corp.*,
   353 S.C. 553, 579 S.E.2d 325 (2003) ................................................................8, 20

*Flexi-Van Leasing, Inc. v. Travelers Indem. Co.*,
   2017 U.S. Dist. LEXIS 237933 (D.S.C. Dec. 7, 2017)...........................................8

*Freehill v. Lewis*,
   355 F.2d 46 (4th Cir. 1966) ...........................................................................16, 17

*Grice v. Indep. Bank*,
   2023 U.S. Dist. LEXIS 141061 (D.S.C. June 22, 2023).........................................9

*GTE New Media Servs., Inc. v. Ameritech Corp.*,
   44 F. Supp. 2d 313 (D.D.C. 1999) ......................................................................22

*Hart v. Navy Fed. Credit Union*,
   2021 U.S. Dist. LEXIS 110909 (D.S.C. June 11, 2021) ...............................9, 10, 20

*Hutchens v. Capital One Servs., LLC*,
   2020 U.S. Dist. LEXIS 192480 (E.D. Va. Oct. 16, 2020) ....................................25

*Int'l Refugee Assistance Project v. Trump*,
   404 F. Supp. 3d 946 (D. Md. 2019) .....................................................................24

*Karanik v. Cape Fear Acad., Inc.*,
   2022 U.S. Dist. LEXIS 197103 (E.D.N.C. Oct. 31, 2022) ......................... 18-19, 24

*Kennedy v. St. Joseph's Ministries, Inc.*,
   657 F.3d 189 (4th Cir. 2011) ..............................................................................18

*Lindsey v. Normet*,
   405 U.S. 56 (1972)..............................................................................................15

*Long Island Lighting Co. v. Barbash*,
   779 F.2d 793 (2d Cir. 1985)................................................................................17

*Mathews v. Eldridge*,
   424 U.S. 319 (1976).............................................................................................15

*McCall v. State Farm Mutual Automobile Co.*,
    359 S.C. 372, 597 S.E.2d 181 (Ct. App. 2004)...............................................1, 2, 8

*Med. Mut. Ins. Co. of N.C. v. Littaua*,
    35 F.4th 205 (4th Cir. 2022) ...............................................................13

*Mellon Bank, N.A. v. IBJ Schroder Bank & Tr. Co.*,
    1989 U.S. Dist. LEXIS 16517 (W.D. Pa. Aug. 17, 1989) .....................................12

*Michelin N. Am., Inc. v. Inter City Tire & Auto Ctr., Inc.*,
    2013 U.S. Dist. LEXIS 158701 (D.S.C. Nov. 6, 2013) .......................................18

*Mitcheson v. Harris*,
    955 F.2d 235 (4th Cir. 1992) ...............................................................14

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950)........................................................................16

*Nautilus Ins. Co. v. Winchester Homes, Inc.*,
    15 F.3d 371 (4th Cir. 1994) ................................................................13

*Philipp v. Fed. Republic of Germany*,
    253 F. Supp. 3d 84 (D.D.C. 2017) .........................................................25

*Proctor & Schwartz, Inc. v. Rollins*,
    634 F.2d 738 (4th Cir. 1980) ............................................................7, 20

*Reed v. United Transp. Union*,
    633 F. Supp. 1516 (W.D.N.C. 1986) ........................................................24

*Reynolds v. Wyndham Vacation Resorts, Inc.*,
    2016 U.S. Dist. LEXIS 59044 (D.S.C. May 4, 2016)..........................................23

*Ritz Camera & Image, L.L.C. v. SanDisk Corp.*,
    2011 U.S. Dist. LEXIS 100335 (N.D. Cal. Sept. 6, 2011) ...................................21

*Shakespeare Co. v. Silstar Corp. of Am.*,
    906 F. Supp. 997 (D.S.C. 1995)............................................................15

*T.S. ex rel. T.M.S. v. Heart of Cardon, LLC*,
    2021 U.S. Dist. LEXIS 131051 (S.D. Ind. July 14, 2021)....................................21

*Thomas v. Maximus, Inc.*,
    2022 U.S. Dist. LEXIS 92498 (E.D. Va. May 10, 2022) ......................................23

*Tomczak v. United Servs. Auto Ass'n*,
    2022 U.S. Dist. LEXIS 53183 (D.S.C. March 24, 2022).......................................9

*United Prop. & Cas. Ins. v. Couture*,
    2022 U.S. Dist. LEXIS 102333 (D.S.C. June 8, 2022)........................................................ 6-7

**RULES & STATUTES**

28 U.S.C. § 1292(b) ................................................................................................. *passim*

Fed. R. Civ. Proc. 54.............................................................................................................6

S.C. Code Ann. § 15-5-150....................................................................................................7

**OTHER AUTHORITIES**

10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice &*
    *Procedure* § 2741 (4th ed. 2023) ...........................................................................17

The "Partial AIG Insurers"[1] respectfully move this Court to reconsider its October 17, 2023 Opinion and Order, Doc. 103 (the "Order"), denying their motion to dismiss the Amended Complaint filed by Tyco, or, in the alternative, certify the Order for immediate appeal under 28 U.S.C. § 1292(b).

## INTRODUCTION

The Court's Order is legally flawed and reconsideration is therefore appropriate. *First*, the Order ignores controlling precedent concerning the door-closing statute. Under that statute, non-resident plaintiffs cannot sue non-resident defendants where the non-resident plaintiffs' cause of action did not arise in South Carolina. That is precisely the case here. To avoid the statute, the Court held that there was a "countervailing federal interest" that displaces the statute, namely, a desire for Tyco, with the Court's assistance, to achieve a settlement in the AFFF MDL. But that reasoning is mistaken. As this very Court has held in another case, under Fourth Circuit precedent the "countervailing federal interest" exception is now limited to situations where the non-resident plaintiff cannot litigate anywhere else. Here, the parties are litigating coverage issue in Wisconsin, and were doing so for four months before this action was filed. In fact, Tyco recently filed a motion for partial summary judgment on certain coverage issues in Wisconsin, *arguing that Wisconsin law applies*. *See* **Exhibit A**. The door-closing statute applies here, and it requires a dismissal of this action, just as occurred in *McCall v. State Farm Mutual Automobile Co.*, 359 S.C. 372, 597 S.E.2d 181 (Ct. App. 2004), a case that is directly on point, but which the Court did not address at all.

---

[1] All defined terms in the Partial AIG Insurers' Brief in Support of their Motion to Dismiss (Doc. Nos. 47, 47-1) ("Mov. Br." or "AIG Moving Brief") are used as defined terms herein. The Partial AIG Insurers' Reply Brief (Doc. 94) is referred to herein as "AIG Reply Br."; the Zurich Defendants' Reply Brief (Doc. 95) is referred to herein as "Zurich Reply Br."

What's more, while the Court found a countervailing federal interest based on the AFFF MDL, this action is not and cannot be part of the AFFF MDL, as the Court recognized.  So, any countervailing federal interest that may apply to the AFFF MDL does not apply to *this* action, which is an entirely separate coverage action between Tyco and its out-of-state insurers (and a duplicative, second-filed action at that).  Further, while the Court focused on approximately 80 (out of 6,000) of the underlying claims in the AFFF MDL that have some connection to South Carolina as a basis to avoid the door-closing statute, claims asserted in the AFFF MDL have no impact here, in an action involving non-resident parties and insurance policies issued outside of South Carolina.  And even if that very small number of underlying claims were relevant to the analysis, which they are not under *McCall*, there is no "supplemental" or "pendent" theory of standing under the door-closing statute that would permit this Court to allow a non-resident plaintiff to sue non-resident insurers for the *99%* of underlying AFFF MDL claims that have *absolutely nothing* to do with South Carolina.

*Second*, the Court erred in finding that specific personal jurisdiction exists.  The Court failed to determine whether the exercise of jurisdiction here is constitutionally reasonable, where jurisdiction is based on the underlying AFFF MDL claims against Tyco, 99% of which have nothing to do with South Carolina.  Moreover, the Court's analysis focused solely on the supposed benefit to Tyco in having coverage decided here—a belief not borne out by the fact that Tyco is now the plaintiff in the Wisconsin Action and has filed a summary judgment motion in *that* action.  But in any event, settled law required the Court to analyze whether the exercise of jurisdiction would violate the *Defendants'* Due Process rights, which the Court failed to do.  The possibility that a coverage determination might benefit settlement in the AFFF MDL has no bearing on jurisdiction.

*Third*, on abstention, the Court did not address *any* of the factors it was obligated to consider, instead finding that abstention was not warranted because litigating coverage here might foster settlement of underlying suits in the AFFF MDL. As a result of the Court's Order, Tyco—in unprecedented fashion—is now the *plaintiff* in two competing actions involving the same parties and the same issues, thereby maximizing inefficiencies, and discarding basic principles of federalism and comity that underlie abstention principles. And, moreover, this Court has created an unseemly race to judgment, risking inconsistent rulings and ensuring piecemeal litigation (because there are insurers in the Wisconsin Action that cannot be joined here). In short, the Order achieves everything that the Supreme Court and the Fourth Circuit have counseled district courts *to avoid*.

*Fourth*, the Order states that coverage will be decided on summary judgment motions, which is improper as there is no way for the parties or the Court to presently know whether genuine material issues of fact will preclude summary judgment on some coverage matters. Moreover, it is improper for the Court to determine whether the Partial AIG Insurers are bound to indemnify Tyco for any losses without knowing whether Tyco will have any loss. What if Tyco wins a bellwether case, or is granted summary judgment in the MDL with respect to that case? What if evidence in the underlying cases that will not have been produced by the time of the schedule affects a coverage argument? It is improper to assume that coverage can be ruled on early in the process, before Tyco will have even had one bellwether trial-ready (let alone tried). To predetermine that indemnity coverage will be resolved before any liability could even exist is illogical and contrary to common practice.

*Fifth*, the Court's ruling that coverage must be determined before the first bellwether trial will inevitably result in a denial of the Partial AIG Insurers' Due Process rights, as the schedule

imposed on the Partial AIG Insurers will ensure that they are unable to prepare a full defense. Undeniably, the Court has stacked the deck against the Partial AIG Insurers. Tyco and underlying claimants in the MDL have produced nearly *20 million pages* (19,814,332 pages to be exact) of documents that may be relevant to coverage issues; in fact, on November 5, Tyco produced over *5 million pages* and on November 9, Tyco produced over *1.7 million pages* to the Partial AIG Insurers. More documents are forthcoming. Tyco has had a lifetime to review its own documents and years to review documents produced by others. The Partial AIG Insurers, in sharp contrast, do not even have all the documents yet—and did not receive any documents until July 28, 2023. Based on the number of documents received to date, the Partial AIG Insurers would have to review over 100,000 pages per day to complete their review by May 1. Likewise, Tyco doubtless has an army of experts ready to opine on key issues such as hydrology, chemistry, biology, the potential harm of its products, and the like. The Partial AIG Insurers do not. The idea that the Partial AIG Insurers, under the stringent schedule forced on them, will have a full and fair opportunity to prepare for and present every available defense, as the Due Process Clause guarantees, is not practical.

Significantly, the Court imposed that schedule based solely on account of a water-provider bellwether trial set by this Court for August 2024. But the Court could easily push that trial back a few months to ensure that the Partial AIG Insurers' Due Process rights are not infringed upon. The AFFF MDL, which has been pending for more than five years, is a suit about money, not emergent or injunctive relief. There will be no prejudice to anyone if the Court pushed that bellwether trial back a few months. And although, according to the Court, Tyco's very existence may depend on a ruling in its favor in this case, we note no competent evidence of such financial dire straits in the record. Other settling defendants also faced mammoth liabilities and settled.

4

Without intruding on other cases, this Court should not assume those other defendants had full insurance coverage in hand when they settled.

It is a matter of record that this Court tried to persuade Judge Morrison in the Wisconsin Action to defer to this Court so this Court could hold the Partial AIG Insurers' "feet to the fire" and "hammer" them to obtain a negotiated settlement. *See* Wisconsin Action, Docs. 355, 2; 431, 33:15-22; 432.

In fact, the Order itself underscores that the Court's desire to obtain a settlement is at the core of *every one* of its rulings. Tyco itself never argued that a countervailing federal interest rendered the door-closing statute inapplicable, yet the Court made that argument for Tyco—concluding on its own that the federal interest in "advance[ing] the potential resolution of that [the AFFF MDL] litigation," was enough to overcome the statute. Order, 14. But the fact that Tyco would like to settle with a group of plaintiffs in the MDL, of which this action is not a part, is not a countervailing federal interest sufficient to avoid the door-closing statute.

Similarly, the Court held that the exercise of personal jurisdiction was constitutionally reasonable because, among other things, the bellwether trial "could potentially produce devastating financial consequences to the company" (Order, 12), and a "timely resolution" of the insurance coverage issues "could assist in facilitating meaningful and potentially successful settlement discussions...." Order, 13. These are not proper considerations for the exercise of jurisdiction.

And on abstention, the Court ignored all tests carved into law because resolving coverage issues could conceivably "provide the negotiating parties in the MDL critical information needed to reach a negotiated settlement." Order, 16. The Order cites no precedent for its decision to set aside the vast body of law concerning abstention on such a basis.

All of the Court's erroneous rulings can be traced to its evident efforts to wrestle the action away from the Wisconsin Court so it could "hammer" the Defendants with a schedule that's so brutal that the Defendants will have little choice but to settle with Tyco, which would, the Court says over and over, be a good thing to help Tyco resolve claims in the AFFF MDL. But that was improper. This Court should have dismissed the action outright under the door-closing statute or lack of personal jurisdiction. And if this Court was not convinced of that, this action screams for abstention. At the very least, the Court should have provided the Defendants with sufficient time to prepare for and present its case, as the Due Process Clause guarantees. But because the Order was myopically focused on how the Court could help Tyco by furthering settlement in the AFFF MDL, the Court ignored settled law, did not even address any factors it was required to under abstention precedent, and imposed a one-sided schedule that almost literally holds the insurers' feet to the fire.

For all these reasons, the Court should reconsider its rulings, or at the very least, certify them for interlocutory appeal under 28 U.S.C. § 1292(b).

## ARGUMENT

## I.   THE COURT SHOULD GRANT RECONSIDERATION OF ITS DENIAL OF THE INSURERS' MOTION TO DISMISS

Federal Rule of Civil Procedure 54(b) provides courts the procedural power to reconsider, rescind, or modify an interlocutory order for sufficient cause. Courts in this District hold that reconsideration under Rule 54 is appropriate: (i) "to follow an intervening change in controlling law;" (ii) "on account of new evidence;" or (iii) "to correct a clear error of law or prevent manifest injustice." *United Prop. & Cas. Ins. v. Couture*, 2022 U.S. Dist. LEXIS 102333, at *6 (D.S.C. June 8, 2022) (citations omitted). Clear legal error warrants reconsideration because "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under

law." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003) (vacating order denying motion for reconsideration where district court abused its discretion).  Here, a motion for reconsideration is necessary to correct three separate errors of law and prevent manifest injustice. It is also necessary because the schedule imposed by the Order unfairly favors Tyco and will result in a wholesale violation of the Partial AIG Insurers' Due Process rights.

### A.    The Court Erred In Failing To Apply South Carolina's Door-Closing Statute to Bar Tyco's Claims

The Court found that South Carolina's door-closing statute, S.C. Code Ann. § 15-5-150, was inapplicable to Tyco's claims because: (1) there is a strong countervailing federal policy in consolidating actions in multi-district litigation, and (2) a small number of the pending cases in the AFFF MDL include South Carolina as a home venue.  Order, 14.  This finding contravenes established case law.

South Carolina's door-closing statute provides that an action against a foreign corporation may be brought in a South Carolina state court *only if* the plaintiff is a resident of South Carolina or "the cause of action shall have arisen or the subject of the action shall be situated" in South Carolina. S.C. Code Ann. § 15-5-150.  The door-closing statute applies in federal courts "unless there is an important countervailing federal policy in conflict."  *See Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 739 (4th Cir. 1980).  Here, Plaintiff and all Defendants, including the Partial AIG Insurers, are foreign corporations.  Tyco's cause of action against the Partial AIG Insurers arises out of alleged wrongful denials of coverage under insurance policies issued to a non-resident of South Carolina by non-South Carolina insurers.  Those policies were not made, negotiated, or issued in South Carolina.

The fact that there are approximately 80 pending cases (out of over 6,000) in the AFFF MDL that include South Carolina as their home venue is, respectfully, irrelevant.  *See* Zurich Br.,

29-31.  The bellwether case set for trial in August 2024 is *not* one of those 80 cases.  In any event, the Court ignored *McCall*, cited by Defendants, which is directly on point.  In *McCall*, the court first held that State Farm, an out-of-state insurer, could not be sued in South Carolina by a non-resident, even though the underlying event (a car collision that killed the insured) took place in South Carolina because the "subject of the suit was a North Carolina insurance policy."  *McCall*, 597 S.E.2d at 185.  *See* Zurich Br., 30-31.  Instead of following *McCall*, the Court embraced an unpublished decision riddled with mistakes.[2]  Zurich Br., 31-32.  That was error.

Moreover, the Order allows Tyco to bootstrap its insurance coverage claims involving more than 6,000 underlying liability claims having nothing to do with South Carolina to the 80 or so underlying claims involving some South Carolina connection.  But no decision of which we are aware has ever adopted such a "supplemental" or "pendent" interpretation of the door-closing statute until the present one.  To the contrary, that theory is foreclosed by *Farmer v. Monsanto Corp.*, 353 S.C. 553, 579 S.E.2d 325 (2003), in which the court held that parties who would otherwise be precluded from suing under the statute cannot sneak their way into class actions filed in South Carolina.  Numerous cases have made the point that the door-closing statute applies granularly, precluding non-resident claims to be heard in South Carolina even if federal procedural law, such as the class action device, would permit it.[3]  Bootstrapping is not allowed and, by the

---

[2] Indeed, the Court cites *Flexi-Van Leasing, Inc. v. Travelers Indem. Co.*, 2017 U.S. Dist. LEXIS 237933, at *4 (D.S.C. Dec. 7, 2017), but this case is entirely distinguishable. In *Flexi-Van*, the underlying tort claim (a tire explosion) arose in South Carolina.  In addition, the insurer did not argue that the door-closing statute applied, so the issue was not even litigated.  The Court raised the issue *sua sponte* only because it mistakenly believed that the door-closing statute concerned its subject-matter jurisdiction (it relates instead to standing).

[3] *See, e.g.*, *Hart v. Navy Fed. Credit Union*, 2021 U.S. Dist. LEXIS 110909, at *5 (D.S.C. June 11, 2021) (Gergel, J.); *Grice v. Indep. Bank*, 2023 U.S. Dist. LEXIS 141061, at *14-15 (D.S.C. June 22, 2023); *Tomczak v. United Servs. Auto Ass'n*, 2022 U.S. Dist. LEXIS 53183, at *8-9 (D.S.C. March 24, 2022).

same logic, Tyco cannot bootstrap the 99% of its claims barred by the statute to the 1% of its claims that conceivably are not.

Moreover, Tyco has standing to bring this action in South Carolina only if there is a countervailing federal policy in conflict with the "door-closing" statute. But those "countervailing federal considerations" have "been almost completely limited, by the Fourth Circuit Court of Appeals, to circumstances in which the plaintiff does not have an alternative forum to assert his claims." *Boisvert v. Techtronic Indus. N. Am., Inc.*, 56 F. Supp. 3d 750, 752 (D.S.C. 2014); *see also Hart*, 2021 U.S. Dist. LEXIS 110909, at *4 n.3 (Gergel, J.) (countervailing federal policy is now limited by Fourth Circuit law to "*situations in which plaintiff has no other available forum in which to bring its action*") (citation omitted) (emphasis added). Here, Tyco has an existing "alternative forum"—the Wisconsin Action—where it has already asserted its own claims and has become the plaintiff.

Ignoring this authority, the Court instead cited *Central Wesleyan College v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993), claiming it established "countervailing federal policies" about "liberal joinder rules to allow the consolidation of multi-defendant litigation, such as asbestos litigation." Order, 13. But in that case, the issue before the court was whether a conditional class should be certified. There, efficient joinder (*Cent. Wesleyan Coll.*, 6 F.3d at 187), perhaps under the law at the time, might provide some countervailing interest to avoid the statute. Even then, the decision was limited to asbestos litigation. *Id.* (noting the lengthy history behind the "countervailing federal policy *in favor of consolidating asbestos litigation*") (emphasis added). There is no countervailing federal interest in joinder in *this* action, which, unlike *Central Wesleyan College*, is not even a class action and does not even raise issues of joinder.

Moreover, as this very Court has held, "[j]udicial economy and efficiency will potentially be an issue in every case. *These justifications are insufficient to constitute a countervailing federal policy and do not prevent the application of the South Carolina door-closing statute*." *Hart*, 2021 U.S. Dist. LEXIS 110909, at *5 (emphasis added). Hence, although the Court believes that having this action decided by the same judge presiding over the AFFF MDL promotes judicial efficiency, that justification, under this Court's *own prior rulings*, is irrelevant.

Significantly, pursuant to the Order, this action is *not* part of the AFFF MDL, so any novel perceived countervailing federal interest based on the AFF MDL does not apply in *this* action, which is—at core—nothing but a coverage dispute between one party in the AFFF MDL and its out-of-state insurers. That dispute is not only outside of the AFFF MDL, but is also being litigated in Wisconsin where Tyco, the only party in this action that is also a party in the AFFF MDL, is now the plaintiff. The Order cites no decision (as there is none) establishing that the desire to have the parties in *Case A* settle so that the Plaintiff in *Case A* may theoretically be in a better position to settle *Case B* is a countervailing federal interest sufficient to overcome the door-closing statute. As this Court has made clear, countervailing federal interests are limited to situations where the plaintiff has no other forum to pursue its claims. *Hart*, 2021 U.S. Dist. LEXIS 110909, at *4 n.3. That is simply not the case here.

**B.    The Court Erred In Finding Defendants Are Subject To Specific Personal Jurisdiction In South Carolina**

In ultimately holding that Defendants are subject to personal jurisdiction in South Carolina, the Court found that the exercise of jurisdiction over Defendants is constitutionally reasonable. Order, 11-13. In so doing, the Court explained that "Plaintiff has a strong interest in obtaining a convenient, timely, and effective forum to adjudicate its coverage claims since it faces an August 23, 2024 day certain trial in a bellwether case in the AFFF MDL which would potentially produce

10

devasting financial consequences to the company" and further observed that "if pretrial resolution of the claims pending against Plaintiff" in *other actions* "is not accomplished," the 6,000-plus cases in the MDL will go back to their individual district courts. Order, 12-13.

This reasoning is misplaced. The Court's analysis on whether the exercise of jurisdiction is constitutionally reasonable must consider the Due Process rights *of Defendants*, not Plaintiff. *See Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009). Under this analysis, for the exercise of jurisdiction to be constitutionally reasonable and accord with Due Process, a court must consider, in part, the burden on the defendant of litigating in the forum and the interest of the forum state in adjudicating the dispute, as well as the shared interest of the states in obtaining an efficient resolution of disputes. *See id.* at 278. When applying these factors here, it is clear that the exercise of jurisdiction is not constitutionally reasonable because South Carolina has little interest in resolving coverage disputes between a Wisconsin-based insured (Tyco) and foreign insurers with no relationship to the state, especially when the specific actions and contacts of the insurers took place outside of South Carolina.[4] Even Tyco recognizes this. It has become the plaintiff in the Wisconsin Action and has moved for partial summary judgment on coverage issues in that Action, arguing Wisconsin law applies.

What is more, the fact that the Court and Tyco want timely resolution of *other actions* has nothing to do with whether jurisdiction exists in this action. The fact that cases in in the AFFF MDL might get sent back to their home courts is not "an activity or an occurrence that takes place in the forum State." *Bristol-Myers Squibb Co.*, 582 U.S. at 284. Indeed, anything related to the

---

[4] *See Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 582 U.S. 255, 262 (2017) (emphasizing "there must be an affiliation between the forum state and the underlying controversy, principally an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation") (citation omitted); *see also* Zurich Br., 23-28.

other actions in the MDL has absolutely nothing to do with whether jurisdiction exists here and whether the Partial AIG Insurers' Due Process rights would be violated if they are forced to litigate coverage claims unrelated to South Carolina in this district court. The Court's finding that the exercise of jurisdiction over the Defendants is constitutionally reasonable is erroneous.

### C.    The Court Abused Its Discretion In Declining To Abstain From Exercising Jurisdiction In This Matter

Despite clear law, the Court declined to abstain from exercising jurisdiction in this matter even though all coverage issues are currently being litigated in the first-filed Wisconsin Action, *where Tyco resides and is pursuing the same claims against the same insurers at the same time.* The Court's decision violates, in the most fundamental ways, principles of comity, federalism, and efficiency. It also invites potentially inconsistent judgments on coverage, which poses an embarrassment to the judicial system.[5] Similarly, the Court's erroneous ruling has created an unseemly race to judgment between the two competing actions.[6] The Order guarantees all the evils and embarrassment that the Supreme Court and the Fourth Circuit have told district courts should be *avoided*.

Indeed, as noted in the Mov. Br., the Supreme Court has repeatedly made it clear that federal courts should abstain from exercising jurisdiction over a declaratory judgment action where there is a prior pending state court proceeding involving the same parties and the issue is one of

---

[5] *See, e.g.*, *Mellon Bank, N.A. v. IBJ Schroder Bank & Tr. Co.*, 1989 U.S. Dist. LEXIS 16517, at *12 (W.D. Pa. Aug. 17, 1989) ("Moreover, by dismissing this action, we will avoid not only any judicial embarrassment and further burden to the parties in the event inconsistent judgments are reached, but also the added expense to the parties of litigating the identical issue in two courts.").

[6] *See, e.g.*, *Arizona v. San Carlos Apache Tribe*, 463 U.S. 545, 567 (1983) ("Moreover, since a judgment by either court would ordinarily be res judicata in the other, the existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issues first."); *Colony Ins. Co. v. Danica Grp., LLC*, 2014 U.S. Dist. LEXIS 125285, at *17 (E.D.N.Y. Sep. 8, 2014) ("an unseemly race to judgment weighs in favor of abstaining").

state law.  The Fourth Circuit and courts in this District and others have followed this doctrine—the *Brillhart-Wilton* doctrine—time and time again, particularly in insurance coverage actions (*see* Mov. Br., 13-15), even when the plaintiff amends its pleading to add a claim for money damages to avoid application of the *Brillhart-Wilton* standard.  *See* Mov. Br., 21-30.

The Court ignored this case law.  It did not even decide whether *Brillhart-Wilton* or *Colorado River* applied.  It thus did not even mention, let alone discuss, the *Nautilus* factors.[7]  Yet the Court tacitly recognized that all of the four *Nautilus* factors were met: (1) "Tyco is at home in Wisconsin," (2) "the Wisconsin forum has certain advantages," (3) the Wisconsin Action "contains overlapping issues with claims made by the parties in this action," and (4) "some of the criticism of Tyco's filing [in this Court] is valid."  Order, 16-18.

On the last point, the Court ignored Supreme Court precedent establishing that the mere filing of a reactive suit could form a basis for abstention.  AIG Reply Br., 9-10. Instead, despite acknowledging Tyco's blatant forum shopping, the Court excused Tyco's exploitation of the judiciary as "something of a side show" (Order, 18), despite the fact that it is highly relevant under established law.  Moreover, the Court erroneously suggested that the Partial AIG Defendants were engaging in forum shopping of their own, holding that the Partial AIG Insurers and other Defendants "converted a narrow coverage dispute between Tyco and Chubb" in Wisconsin "into a full-bore coverage war." Order, 18.  Tyco itself never argued that, and it is not accurate.  The Partial AIG Insurers did not file the Wisconsin Action.  They were named defendants in that action and asserted cross-

---

[7] The *Nautilus* factors are:  (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping. *Med. Mut. Ins. Co. of N.C. v. Littaua*, 35 F.4th 205, 208-09 (4th Cir. 2022) (quoting *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994)).

claims.

The Court also ignored *Mitcheson v. Harris*, 955 F.2d 235 (4th Cir. 1992), even though it is binding and directly on point. Like the Supreme Court did in *Brillhart-Wilton*, the Fourth Circuit in *Mitcheson* underscored the importance of federal courts not gratuitously interfering with state court proceedings—there, like here, a coverage action. AIG Reply Br., 7. Such proper abstention furthers efficiency, comity, and federalism, and avoids inconsistent judgments, piecemeal litigation, and an unseemly race to judgment. That is settled law. Yet, from the get-go, this Court has tried to interfere with the Wisconsin Action, first by emailing and calling Judge Morrison to persuade him not to exercise jurisdiction over a suit involving Tyco, so the Court could "hammer" the insurers to facilitate mediation. And when that failed, the Court issued the Order imposing a schedule that was even more aggressive than entered in the Wisconsin Action on the consent of the parties, to further marginalize the relevancy of the first-filed state court action. In so doing, this Court achieved a result that is utterly contrary to precedent.

The purported basis for this deviation from settled principles of law, once again, focuses almost entirely on forcing a settlement in the AFFF MDL. The Court, ignoring the established legal standard for abstention, said it would not abstain because the "[t]he absence of a resolution of the major coverage issues between Tyco and its liability carriers has impaired the negotiations between Tyco and the plaintiffs in the MDL." Order, 16. The Court quickly concluded that abstention was not warranted because "[t]he potential negotiated resolution of the August 2024 bellwether trial carries significant consequence for Tyco, the plaintiffs and the defendants in the AFFF MDL." Order, 17. The Court reasoned that abstaining would somehow harm Tyco, because it is a "fundamental problem" that the Wisconsin Action would not be adjudicated before the bellwether trial starts; rather, it would likely conclude later in 2024. *Id.* Putting aside that the

Court could have very easily cured that "fundamental problem" by moving the bellwether trial date back a few months, the Court's analysis is entirely unsupported under the law. Abstention in these circumstances is based on bedrock legal and juridical principles, like federalism. The fact that a plaintiff would like a ruling in *Case A* so it can try to settle *Case B* is no basis to deny abstention, and no court has ever held as much. The Court's entire analysis instead focuses on how adjudicating complex coverage issues within an unreasonably short period of time *will help Tyco*. That was erroneous and presents an appearance of bias. As such, the Partial AIG Insurers request that the Court reconsider its Order and abstain from exercising jurisdiction in this action.

### D.    The Case Schedule Is Designed To Benefit Tyco And Harm The Partial AIG Insurers By Depriving Them Of Their Due Process Rights

"Due process requires that there be an opportunity to present every available defense." *Lindsey v. Normet*, 405 U.S. 56, 66 (1972) (citing *Am. Sur. Co. v. Baldwin*, 287 U.S. 156, 168 (1932)). Due Process also requires that a defendant be provided a *meaningful* opportunity to prepare and present its defenses. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.").[8] Due Process is violated where a defendant does not have the opportunity to fully prepare and present evidence opposing the claims asserted against it. This includes making sure the defendant has adequate time to discover such evidence. *Freehill v. Lewis*, 355 F.2d 46, 48 (4th Cir. 1966) ("*[A]dequate time must be allowed for discovery of the facts and assembly of the proof*.") (emphasis added). That is especially true given the stakes in this action. *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950) (highlighting that Due Process Clause requires

---

[8] *See also Shakespeare Co. v. Silstar Corp. of Am.*, 906 F. Supp. 997, 1006 n.7 (D.S.C. 1995) ("[T]he right to due process entails the right to fully and fairly litigate each issue . . . and requires that findings based on the evidence must embrace the basic facts which are needed to sustain the order."), *aff'd*, 110 F.3d 64, 66 (4th Cir. 1997).

an "opportunity for hearing *appropriate to the nature of the case*") (emphasis added). This action potentially involves billions of dollars among the Defendants. The "nature of this case" requires more time for discovery. Routine small-dollar slip and fall cases receive more time to conduct discovery than the Court afforded Defendants here.

Moreover, the Order states that it will resolve coverage issues on summary judgment motions. But there are at least three problems with that. *First*, the Court seems to have already ruled that material issues of fact will not be in dispute, thus allowing a summary judgment resolution, but preordaining that is not possible. If there are facts in dispute, as there may well be on key issues such as the "expected and intended" provisions of various policies (Tyco itself had advised Defendants that it seeks to take massive discovery on policy formation and the meaning of policy terms), summary judgment will not be possible. To rule now otherwise is an affront to the Partial AIG Insurer's constitutional right to a jury trial.

*Second*, and perhaps more fundamentally, the Court is assuming that coverage issues will be ripe for summary adjudication by June 2024. But they won't be. Tyco has not yet tried any case or been found liable for any supposed injury it allegedly caused. Tyco could prevail at trial, or on summary judgment. By June 2024, the Partial AIG Insurers might not even know *what* they are being asked to indemnify. It will very difficult, and to a degree a matter of conjecture, for the Partial AIG Insurers to prepare their defense not knowing whether Tyco is liable for any loss, and if so, on what basis. The Partial AIG Insurers are as a matter of Due Process entitled to know what's on the line, so they can prepare a defense. While the Court assumes that coverage should be resolved before even the first bellwether trial occurs, that is, respectfully, illogical and puts the proverbial cart before the horse.

*Third*, the schedule set forth in the Order all but guarantees that the Partial AIG Insurers'

Due Process rights will be violated. As the Court knows, there are millions of documents that may bear upon coverage issues—documents produced by Tyco in the MDL, documents Tyco possesses but have not been produced in the MDL, and documents produced by the underlying claimants. Tyco has had possession of the first two categories of documents since they were created, and the last category for years.[9] For this reason, the very limited time afforded by the Order to take discovery is grossly one-sided and unfair, and will inevitably diminish the Partial AIG Insurers' ability to present every available defense, in violation of their Due Process rights.[10] Worse still, it appears that the Order is *designed* to deprive the Partial AIG Insurers of their Due Process rights, hoping that a stringent schedule will aid Tyco's mediation in the AFFF MDL by forcing the Defendants into the unenviable position of either paying Tyco money for liabilities *that may not even exist* or risking an adverse judgment without the constitutionally-guaranteed right to meaningfully prepare for and present every possible defense.

The Court, respectfully, should amend the schedule to extend the deadlines to afford the Partial AIG Insurers sufficient time to take discovery and prepare its defense. The Court should also reorder the sequence of proceedings, by having at least one bellwether trial involving Tyco proceed before making definitive coverage rulings.

---

[9] It is black letter law that "[s]ufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party." 10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 2741 (4th ed. 2023). The Court ignores this. Tyco has all the facts, which plainly favors Tyco. *See, e.g., Cooper v. Stender*, 30 F.R.D. 389, 393 (E.D. Tenn. 1962) ("It is not the purpose of the discovery rules to give one party a strategic advantage over the other").

[10] *See generally Long Island Lighting Co. v. Barbash*, 779 F.2d 793, 795 (2d Cir. 1985) ("Although a district court has considerable latitude in determining the scope of discovery, it abuses its discretion when the discovery is so limited as to affect a party's substantial rights.") (citations omitted); *Freehill*, 355 F.2d at 48 (a party cannot be denied "adequate time . . . for discovery of the facts and assembly of the proof"); *Bell v. Farmers Ins. Exch.*, 9 Cal. Rptr. 3d 544, 580 (Ct. App. 2004) (noting a case management plan "would raise due process issues if it served to restrict [defendant's] right to present evidence against the claims") (citations omitted).

## II.    ALTERNATIVELY, THE COURT SHOULD CERTIFY ITS ORDER FOR INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(b)

If the Court declines to reconsider the Order, the Could should prevent the potential manifest injustice resulting from its ruling by certifying its Order for interlocutory appeal and staying the district court proceedings.  A district court may certify an order for interlocutory appellate review under 28 U.S.C. § 1292(b) if the following three requirements are met: (1) the issue to be certified "involves a controlling question of law," (2) "there is substantial ground for difference of opinion" on the issue, and (3) an interlocutory appeal "may materially advance the ultimate termination of the litigation."  *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 195 (4th Cir. 2011).  Here, the Court's Order denying dismissal of this action presents three separate issues warranting certification under § 1292(b).

### A.    The Court's Decision Turns On Three Controlling Questions Of Law And There Is Substantial Ground For Difference Of Opinion As To Each Question To Warrant Certification For Immediate Appeal

For purposes of § 1292(b), a controlling question of law is "a narrow question of pure law whose resolution would be *completely dispositive* of the litigation, either as a legal or practical matter . . ."  *Michelin N. Am., Inc. v. Inter City Tire & Auto Ctr., Inc.*, 2013 U.S. Dist. LEXIS 158701, at *7 (D.S.C. Nov. 6, 2013) (citation omitted).  Courts then examine to what extent the controlling law is unclear to determine if a "substantial ground for difference of opinion" exists under § 1292(b).  "A substantial ground for a difference of opinion must arise out of a genuine doubt as to whether the district court applied the correct legal standard in its order."  *Karanik v. Cape Fear Acad., Inc.*, 2022 U.S. Dist. LEXIS 197103, at *13 (E.D.N.C. Oct. 31, 2022) (citation omitted).  A substantial ground for difference of opinion may exist "where a court's challenged decision conflicts with decisions of several other courts."  *Coalition for Equity & Excellence in MD Higher Educ. v. MD Higher Educ. Comm'n*, 2015 U.S. Dist. LEXIS 83741, at *16 (D. Md.

June 29, 2015) (citing *APCC Servs., Inc. v. Sprint Commc'ns Co.*, 297 F. Supp. 2d 90, 97-98 (D.D.C. 2003))**.** Additionally, a court may find a substantial ground for difference of opinion "if there is a novel and difficult issue of first impression." *Karanik*, 2022 U.S. Dist. LEXIS 197103, at *14 (citations omitted).

Here, there are three separate controlling questions of law, none of which require this Court to consider disputed issues of fact:

    i.    Whether a "federal policy in consolidating actions in multi-district litigation" is a countervailing consideration that gives Plaintiff standing despite South Carolina's door-closing statute and whether the statute allows some form of "pendent" standing;

    ii.    Whether the Partial AIG Insurers are subject to specific personal jurisdiction in South Carolina; and

    iii.    Whether a federal court should exercise its discretionary jurisdiction in an insurance coverage action where there is a prior pending proceeding involving the same parties and only issues of state law.

This Court ruled in Plaintiff's favor on each of these three controlling issues of law, but in so doing departed from established precedent signifying that there is a substantial ground for difference of opinion over these important questions of law.

i.       *Whether A "Federal Policy In Consolidating Actions In Multi-District Litigation" Is A Countervailing Federal Consideration That Gives Plaintiff Standing Despite South Carolina's Door-Closing Statute*

The South Carolina door-closing statute applies in South Carolina federal courts with diversity jurisdiction "unless there are affirmative countervailing federal considerations." *Proctor & Schwartz, Inc.*, 634 F.2d at 739-40 (citation omitted). The Court found that the statute does not deprive Tyco of standing because there was "countervailing federal policy"—namely, a "federal policy in consolidating actions in multi-district litigation." Order, 14. The Court made its finding without citation to any authority, which begs the question of whether a "federal policy in consolidation actions in multi-district litigation" (of which this action is not a part) confers standing on Plaintiff to bring this action in this Court despite South Carolina's door-closing statute. While this Court answered in the affirmative, other courts have held that "countervailing federal considerations" have "been almost completely limited by the Fourth Circuit Court of Appeals, to circumstances in which the plaintiff does not have an alternative forum in which to assert his claims." *Boisvert*, 56 F. Supp. 3d at 752. This very Court has held the same. *See also Hart*, 2021 U.S. Dist. LEXIS 110909, at *4 n.3. Here, Tyco already has an existing alternative forum—the Wisconsin Action—and any "federal policy in consolidating actions in multi-district litigation" is irrelevant here, where this Court correctly held that this action *is not part of the AFFF MDL*.

Moreover, the Order allows Tyco to bootstrap its insurance coverage claims involving more than 6,000 underlying liability claims having nothing to do with South Carolina to the 80 underlying claims involving some South Carolina connection. No court decision of which we are aware has ever adopted such a "supplemental" or "pendent" interpretation of the door-closing statute and that interpretation appears to be contrary to *Farmer*, 353 S.C. 553, 579 S.E.2d 325. That too provides ground for certification for appeal. Courts have found that similar standing

issues constitute controlling questions of law appropriate for interlocutory certification.[11]

### ii.    Whether The Partial AIG Insurers Are Subject To Specific Personal Jurisdiction In South Carolina

The Supreme Court had made clear that a court's exercise of jurisdiction over an individual or entity must be constitutionally reasonable and comport with Due Process. *See Bristol-Myers Squibb Co.*, 582 U.S. at 262. Fourth Circuit law provides that for the exercise of jurisdiction to be constitutionally reasonable and accord with Due Process considerations, a court must consider: (1) the burden on the defendant of litigating in the forum, (2) the interest of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the shared interest of the states in obtaining efficient resolution of disputes, and (5) the interests of the states in further substantive social policies. *See Consulting Eng'rs Corp.*, 561 F.3d at 279.

Here, it is not disputed that Tyco, a Wisconsin-based entity, brought suit against foreign insurers on claims having no relationship to South Carolina. *See also* Zurich Br., 23-28. As explained above, the Court's analysis of whether its exercise of jurisdiction was constitutionally reasonable confusingly considered the Due Process rights of Tyco, not, as it must, the Due Process rights of Defendants, including the Partial AIG Insurers. *See, e.g.*, *Bristol-Myers Squibb Co.*, 582 U.S. at 284; *Consulting Eng'rs Corp.*, 561 F.3d at 277. The Court did not address the burden of the Partial AIG Insurers in litigating parallel actions brought by Tyco in South Carolina and Wisconsin concerning the same insurance policy coverage issues; nor did it address the interest of the forum state in adjudicating a dispute between a Wisconsin-based entity and foreign insurers.

---

[11] *See, e.g.*, *APCC Servs. v. Sprint Comm'ns Co.*, 297 F. Supp. 2d 90, 95 (D.D.C. 2003); *T.S. ex rel. T.M.S. v. Heart of Cardon, LLC*, 2021 U.S. Dist. LEXIS 131051, at *24-25 (S.D. Ind. July 14, 2021); *Ritz Camera & Image, L.L.C. v. SanDisk Corp.*, 2011 U.S. Dist. LEXIS 100335, at *2, 5-10 (N.D. Cal. Sept. 6, 2011).

While it is true that some cases (80 of over 6,000) in the AFFF MDL—of which this action is not a part—have a South Carolina nexus, none of those 80 cases are among those bellwether cases set for trial that form the rationale for the Court's insistence on exercising specific jurisdiction over the Partial AIG Insurers.  There is substantial ground for difference of opinion whether the Partial AIG Insurers have subjected themselves to specific personal jurisdiction in this Court at all, and certainly as it relates to coverage issues associated with all of the thousands of underlying MDL suits that have no nexus to South Carolina.  Courts across the country have found that questions of jurisdiction constitute controlling questions of law appropriate for certification of an interlocutory appeal.[12]

### iii.    *Whether A Federal Court Should Exercise Its Discretionary Jurisdiction In An Insurance Coverage Action Where There Is A Prior Pending Proceeding Involving the Same Parties And Only Issues Of State Law*

The Court declined to abstain from exercising its discretionary jurisdiction despite recognizing that this is a declaratory judgment action involving a Wisconsin insured and there is a prior-filed applicable state court proceeding pending in Wisconsin.  Order, 15-20.  In so doing, this Court departed from established Fourth Circuit and nationwide precedent cited in the Partial AIG Insurers' briefs.

While the Court was correct in noting that it has discretion to exercise supplemental jurisdiction notwithstanding these facts (Order, 16), the Court's reason for declining to abstain— its belief that the expedited Wisconsin court schedule would not result in an adjudication of the major coverage issues in advance of a presently-scheduled August 23, 2024 bellwether trial in the

---

[12] *See, e.g.*, *Aluminum Bahr. B.S.C. v. Dahdaleh*, 2012 U.S. Dist. LEXIS 153457, at *4-5, 11-12 (W.D. Pa. Oct. 25, 2012); *Emerson Elec. Co. v. Yeo*, 2013 U.S. Dist. LEXIS 15148, at *5, 11, 13-14 (E.D. Mo. Feb. 5, 2013); *Cmty. Tr. Bancorp, Inc. v. Cmty. Tr. Fin. Corp.*, 2011 U.S. Dist. LEXIS 57530, at *5-6, 12 (E.D. Ky. May 24, 2011); *GTE New Media Servs., Inc. v. Ameritech Corp.*, 44 F. Supp. 2d 313, 314 (D.D.C. 1999).

MDL in which Tyco is a defendant and faces "significant consequence"—has nothing to do with any of the factors this Court was bound to consider under settled precedent in analyzing whether abstention was warranted. Indeed, the Court does not cite *any* precedent in support of its analysis. Nor could it: the impact of one action on a separate action is not a factor that Fourth Circuit courts (or any courts in this country) have ever analyzed when deciding whether to abstain.

What is more, it should be noted that when Tyco first attempted to file this suit in South Carolina state court, Chief Justice Toal found that the action before her was entirely duplicative of the Wisconsin Action and used her discretion to dismiss the case, holding:

> A comprehensive coverage action is already pending in Marinette, Wisconsin, which is where Tyco is located. That case deals with the PFAS coverage issues asserted in this action, including the cause of action asserted in this case seeking a declaration regarding coverage for underlying lawsuits filed in Wisconsin alleging environmental contamination taking place in Marinette, Wisconsin. Because the Wisconsin action is already going forward on the PFAS-related issues, the Court finds that dismissal of this case is appropriate.

Order, *Ansul, LLC, et al. v. ACE Am. Ins. Co., et al.*, No. 2022-CP-40-05289 (S.C. Ct. Com. Pl. May 22, 2023). Justice Toal had it right. The abstention issue should be certified for appeal.

### B.    Resolution Of These Controlling Questions Of Law Will Materially Advance The Litigation

When determining whether a controlling question of law will materially advance the litigation, courts consider whether immediate appellate review could "avoid protracted and expensive litigation" and "materially affect the eventual outcome of the litigation." *Thomas v. Maximus, Inc.*, 2022 U.S. Dist. LEXIS 92498, at *19 (E.D. Va. May 10, 2022).[13]

---

[13] *See also Estate of Alvarez v. Johns Hopkins Univ.*, 2019 U.S. Dist. LEXIS 69262, at *7 (D. Md. Apr. 23, 2019) (certifying order for appellate review in part because an immediate appeal could "result in the dismissal of all claims against all defendants"); *cf. Reynolds v. Wyndham Vacation Resorts, Inc.*, 2016 U.S. Dist. LEXIS 59044, at *5 (D.S.C. May 4, 2016) (determining that because the "case would not have ended if the Court had ruled in Defendants' favor on the question," as "a number of issues would still need to be addressed," the appeal "would not materially advance the termination of this litigation").

There can be no doubt that this requirement is satisfied here. Each of these controlling questions of law is a threshold issue that is completely dispositive of the litigation. Indeed, if the Partial AIG Insurers are successful in their appeal, then the action would be dismissed in its entirety, or stayed. This consideration is of utmost importance; here, there are two different courts in two different parts of the country reviewing the exact same insurance policies and exact same facts to determine the key issue at hand: whether the Partial AIG Insurers and other insurer defendants are obligated to provide insurance coverage to Tyco in connection with thousands of AFFF suits pending against it across the country. The risk of facing irreparable harm from potentially conflicting judgments is acute and the likelihood of years of appellate practice is high. Answering these threshold questions now will avoid the likely irreparable harm of these potentially conflicting judgments, let alone save this Court and the parties significant time and expense litigating the same issues in two different forums. Giving the Fourth Circuit the opportunity to analyze controlling questions of law at this stage of the litigation will conserve both party and judicial resources, and ultimately materially advance the ultimate termination of the litigation.

### C.    A Stay Of Proceedings Is Warranted

A district court can order a stay when it certifies an in issue for interlocutory appeal under 28 U.S.C. § 1292(b). *Reed v. United Transp. Union*, 633 F. Supp. 1516, 1528 (W.D.N.C. 1986), *rev'd on other grounds*, 828 F.2d 1066 (1987). Although courts within the Fourth Circuit have employed a variety of factor tests to determine whether a stay pending interlocutory appeal is appropriate, the question ultimately bears on "the balance of the equities."[14]  Here, a stay of proceedings is particularly appropriate because—as highlighted above—the appeal is specifically

---

[14] *Int'l Refugee Assistance Project v. Trump*, 404 F. Supp. 3d 946, 953 (D. Md. 2019). *See also Karanik*, 2022 U.S. Dist. LEXIS 197103, at *16-17 (applying the four-factor test for stays of judgments or orders to stay litigation pending an interlocutory appeal).

directed to the avoidance of *duplicative*, "protracted and expensive litigation" in two different forums. *See Hutchens v. Capital One Servs., LLC*, 2020 U.S. Dist. LEXIS 192480, at *14-15 (E.D. Va. Oct. 16, 2020); *Black v. W. Va. State Police*, 2023 U.S. Dist. LEXIS 186350, at *13 (S.D. W. Va. Oct. 17, 2023).[15]

## <u>CONCLUSION</u>

For the foregoing reasons, the Partial AIG Insurers respectfully request that the Court reconsider its prior Order, or, in the alternative, amend its Order to certify for interlocutory appeal the three controlling questions of law and, if certified, stay this matter pending that appeal.

---

[15] Courts have stayed proceedings pending resolution of interlocutory appeals when litigation is "likely to be time-consuming and expensive" and "[a] stay could promote economy of time and effort for the Court, counsel, and litigants." *AsIs Internet Servs. v. Active Response Grp.*, 2008 U.S. Dist. LEXIS 117075, at *11-12 (N.D. Cal. Sept. 16, 2008); *see Philipp v. Fed. Republic of Germany*, 253 F. Supp. 3d 84, 89 (D.D.C. 2017); *Emerson Elec. Co.*, 2013 U.S. Dist. LEXIS 15148, at *14-16.

Respectfully submitted,

**COLLINS & LACY, P.C.**

*/s/ Christian Stegmaier*
Christian Stegmaier (Fed. Bar No.: 8007)
1330 Lady Street, 6th Floor
Columbia, South Carolina 29201
cstegmaier@collinsandlacy.com
Telephone: (803) 256-2660

**ALSTON & BIRD LLP**

Adam J. Kaiser (*pro hac vice pending*)
Alexander S. Lorenzo (*pro hac vice pending*)
Matthew B. Byers (*pro hac vice pending*)
90 Park Avenue, 15th Floor
New York, New York 10016
adam.kaiser@alston.com
alexander.lorenzo@alston.com
matt.byers@alston.com
Telephone: (212) 210-9400

*Counsel for Defendants AIU Insurance Company,*
*American Home Assurance Company, Granite*
*State Insurance Company, Insurance Company of*
*the State of Pennsylvania, National Union Fire*
*Insurance Company of Pittsburgh, Pa., and New*
*Hampshire Insurance Company*

November 10, 2023
Columbia, South Carolina.

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 10, 2023, I electronically filed the foregoing DEFENDANTS AIU INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., AND NEW HAMPSHIRE INSURANCE COMPANY'S MOTION FOR RECONSIDERATION OR, IN THE ALTERNATIVE, MOTION TO CERTIFY AN INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b) AND TO STAY PROCEEDINGS using the Court's CM/ECF system, which will automatically send notification of such filing to all counsel of record.

**COLLINS & LACY, P.C.**

*/s/ Christian Stegmaier*
Christian Stegmaier (Fed. Bar No.: 8007)
1330 Lady Street, 6th Floor
Columbia, South Carolina 29201
cstegmaier@collinsandlacy.com
Telephone: (803) 256-2660

*Counsel for Defendants AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa., and New Hampshire Insurance Company*