UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TYCO FIRE PRODUCTS LP, *Plaintiff*, <br><br> v. <br><br> AIU INSURANCE COMPANY, *et al.* *Defendants*. | Civil Action No. 2:23-cv-02384-RMG <br><br> Hon. Richard M. Gergel |

## ORDER REGARDING THE COLLECTION AND PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION

Pursuant to Fed. R. Civ. P. 26(f), Plaintiff and Defendants (each a "Party" and collectively, the "Parties") have conferred. All Parties except Defendants Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Security Company and Travelers Property Casualty Company of America) and Travelers Property Casualty Company of America[1] agreed to this Stipulation Regarding the Collection and Production of Documents and Electronically Stored Information (the "Stipulation") and request that the Court order that this Stipulation shall apply in this case. In accordance with to Fed. R. Civ. P. 29, this Stipulation sets forth the agreement between the Parties regarding the production of documents and electronically stored information ("ESI"), which are collectively referred to herein as "Documents," as further defined below, unless

---

[1] All Parties except Defendants Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Security Company and Travelers Property Casualty Company of America) and Travelers Property Casualty Company of America (collectively "Travelers") agreed to the entry of this ESI Protocol. (Dkt. No. 160 at 1) (noting Travelers' objection to the same and indicating it appeared Travelers would file its own proposed protocol). To date, Travelers has not filed a proposed ESI Protocol for the Court's consideration. As it appears Travelers has abandoned its objections to the entry of the instant order, and for good cause shown, the Court enters the following order as to all parties.

otherwise noted, in the above-captioned action (the "Action"), venued in the United States District Court for the District of South Carolina Charleston Division (the "Court").

## I.     GENERAL TERMS

A.     <u>Application</u>.  The procedures set forth in this Stipulation shall govern the production of Documents relevant to this Action.  In the event that any Party identifies a particular source of responsive Documents for which application of this Stipulation would be impossible or otherwise unduly burdensome or impractical, the Party identifying the source will promptly notify the other Parties, and the Parties may meet and confer concerning the source.

B.     <u>Scope of Discovery</u>.  This Stipulation shall govern the production of Documents, as described in Fed. R. Civ. P. 34. This Stipulation does not affect the proper subject matter of discovery in this Action.  Nor does this Stipulation imply that Documents produced under its terms are relevant or admissible in this Action or in any other litigation.

C.     <u>Preservation of Data</u>.  This Stipulation does not alter or expand the preservation obligations of any Party.

D.     <u>Privileges</u>.  Nothing in this Stipulation shall be interpreted to require the disclosure of Documents that a Party contends are protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege or protection.

E.     <u>Legibility</u>.  The Parties will make reasonable efforts to ensure that all scanned hard-copy Documents they produce are legible.  If a copy is not legible and it is possible to produce a legible copy without undue burden or cost, such a legible copy will be produced (subject to relevant general and specific objections) within twenty (20) business days of a request from a receiving Party, or as mutually agreed upon by the Parties.  But if no legible copy can be made, then the

original hard-copy Document will be made available for inspection and copying within thirty (30) business days of a request from a receiving Party, or as mutually agreed upon by the Parties.

      F.     <u>Modification and Amendment</u>.  Subject to entry by the Court, this Stipulation may be modified or amended by written agreement of the Parties.

      G.     <u>Reservation of Rights</u>.  The Parties reserve all rights under the Federal Rules of Civil Procedure, Federal Rules of Evidence, and any other applicable laws, rules, or standards.

      H.     <u>Definitions</u>.

      1.     "Document," "electronically stored information," and "ESI," are defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34.

      2.     "Metadata" means and refers to information that describes or explains data, and includes without limitation (i) information embedded in or associated with a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File, which describes the characteristics, origins, usage and/or validity of the electronic file and/or (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system.

      3.     "Media" means an object or device, real or virtualized, including, but not limited to, a disc, tape, computer or other device, on which data is or was stored.

      4.     "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed, stored, and/or modified in the usual course of the producing Party's business activities.

5.     "Image" refers to a representation of ESI produced by converting a Native File into standard image format capable of being viewed and printed on standard computer systems.

## II.    COLLECTION OF DOCUMENTS

A.    <u>Custodians and Non-Custodial Sources</u>.  Before producing ESI in response to a written discovery request from another Party, the responding Party shall ascertain both a reasonable subset of ESI custodians, if any, that are likely to have ESI responsive to those written discovery requests as well as any non-custodial data sources (*e.g.*, department shares, databases, etc.) that are likely to have ESI responsive to those written discovery requests.  At the time of production of ESI, each Party shall provide to all other Parties a list of ESI custodians from whom ESI was collected along with each custodian's position or job title, and a good-faith explanation describing how the ESI custodians were determined.  The Parties retain the right, upon reviewing the initial production of Documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and to meet and confer regarding such request.

B.    <u>Sources</u>.  The Parties shall make reasonable efforts to identify and collect any Documents that are potentially relevant and responsive to a document request served in this Action that are proportional to the needs of the case from non-duplicative, reasonably accessible sources of Documents, including, but not limited to, servers, network drives, and shared drives, that are within the Parties' respective possession, custody, or control, to the extent a custodian or IT personnel reveals that such locations may contain such Documents.  In addition to the provisions of Paragraph IV.R, a source is not reasonably accessible if, and only to the extent that, the Party in possession of that source determines in good faith that the source is irretrievable.

C.     <u>Search of ESI</u>.  Consistent with The Sedona Conference Principles, Principle 6, the Parties agree that each producing Party is best suited to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own ESI.  Accordingly, each producing Party shall design and implement the methods it uses to identify, cull, and review its potentially responsive ESI based on its knowledge and understanding of its own data, the facts and issues involved in the Action, and the discovery requests and determinations of discoverability, responsiveness and privilege shall initially be made by the producing Party, with all other Parties reserving all rights.  In responding to discovery requests, a producing Party must make a reasonable inquiry to locate and produce responsive Documents.  The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken and the conclusions drawn therefrom are reasonable under the circumstances.  At the time of production of ESI, the producing Party shall disclose the search methodology or advanced analytics that it applied, including, but not limited to, search terms and date restrictions.  The mere fact that a Document is hit or captured by the application of any search terms does not mean that such Document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. In the event of a dispute between any Parties regarding the adequacy of a producing Party's steps to preserve and produce ESI, the Parties shall meet and confer to discuss the dispute.  If the Parties are unable to resolve any disputes, any Party may file an appropriate motion for determination by the Court.  During the pendency of any such motion, the producing Party's production obligation (if and only to the extent that obligation is dependent on resolution of such motion) will be stayed.

D.     <u>Collection of ESI</u>.  The Parties shall use best efforts to collect ESI in a forensically sound manner that does not alter metadata or other file attributes.

### III.    PRODUCTION OF HARD-COPY DOCUMENTS

A.    <u>File Type</u>.  The Parties shall produce hard-copy Documents as Group IV black-and-white, single-page TIFF images at not less than 300 dpi resolution, along with associated document-level text files, image load files (.OPT) indicating appropriate Document and family breaks, as well as metadata load files (.DAT) in delimited text format containing the fields required by Section IV(D).  The TIFF image must convey the same information as if the Document were produced in paper.

B.    <u>Color Copies</u>.  A receiving Party may request that specific hard-copy Documents be produced in color for good cause, including, but not limited to, when the original Document contains color that is necessary to understand the meaning or content of the Document.  The Parties then shall meet and confer to discuss production of color image(s) for specific hard-copy Documents, or groups of hard-copy Documents.  With respect to hard-copy Documents or groups of hard-copy Documents where the original was in color, a producing Party shall exercise good faith with respect to whether or not it should produce such hard-copy Documents or groups of hard-copy Documents in color or provide the receiving Party notice that such Documents are in color.

C.    <u>OCR</u>.  The producing Party will produce an extracted text file for each electronic Document where text can be extracted, and an Optical Character Recognition ("OCR") text file for each imaged paper Document.  The OCR software shall maximize text quality.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.  For hard-copy Documents that contain redactions, the producing Party will provide an OCR text file for the unredacted portions of such hard-copy Documents.  Said OCR files shall be produced as

document-level text files and be named consistently with their corresponding TIFF files ([producing Party's Name]-000000001.tif and [producing Party's Name]-000000001.txt).

D.     <u>Family Groups</u>.  The Parties will make reasonable best efforts to ensure that hard copy Documents are logically unitized when scanned.  With respect to responsive, non-privileged hard copy Documents that will be produced, the Parties shall maintain family groups together in one production volume and shall not break family groups apart in separate production volumes.

E.     <u>Scan Size</u>.  Reasonable efforts will be used to scan hard-copy Documents at or near their original size, so that the print or image on the Document appears straight, and not skewed. Reducing image size may be necessary to display production numbers and confidentiality designations without obscuring text.  Physically oversized originals will appear reduced.  A producing Party reserves the right to determine whether to produce oversized hard-copy Documents in their original size.  A receiving Party may request that specific oversized hard-copy Documents be produced in their original size for good cause.  The Parties then shall meet and confer to discuss production of specific hard-copy Documents in their original size.

F.     <u>Notes and Attachments</u>.  If any original Document has notes or attachments affixed thereto, the Parties will produce copies of those hard-copy Documents with the accompanying notes and attachments unless privileged.

G.     <u>Documents Scanned Prior to Discovery in this Matter</u>.  Notwithstanding the above provisions, to the extent a producing Party is in possession of scans of responsive, non-privileged hard copy Documents that were scanned prior to the beginning of discovery in this matter and scanned for purposes other than discovery in this matter, the producing Party is not required to re-scan such Documents in order to comply with the above provisions, but shall make reasonable

7

efforts to comply with the above provisions for such Documents to the extent practicable and produce an Optical Character Recognition ("OCR") text file for each imaged paper Document.

## IV.    PRODUCTION OF ESI

A.    <u>File Type</u>.  Except as specified in Section IV(E) below, the Parties shall produce ESI as Group IV black-and-white, single-page TIFF images at not less than 300 dpi resolution, along with associated document-level text files, image load file (OPT) indicating appropriate Document and family breaks, as well as metadata load files (.DAT) in delimited text format containing the fields required by Section IV(D).  TIFF images will be rendered in such a way as to show all unredacted text and images that would have been visible to the reader using the native software, such as the BCC line for messages, reviewer's comments, tracked changes, speaker's notes, and other similar content.

B.    <u>Color Copies</u>.  A receiving Party may request that specific ESI be produced in color for good cause, including, but not limited to, when the original Document contains color that is necessary to understand the meaning or content of the Document.  The Parties then shall meet and confer to discuss production of color image(s) for ESI, or groups of ESI.  With respect to ESI or groups of ESI that are in color but are not produced in native format, a producing Party shall exercise good faith with respect to whether or not it should produce such ESI or groups of ESI in color or provide the receiving Party notice that such Documents are in color.  If a document is produced in color, it may be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image.  The Parties are under no obligation to enhance an image beyond how it was kept in the usual course of business.

C.    <u>Extracted Text</u>.  The producing Party will produce an extracted text file for each unredacted electronic Document where text can be extracted, and an OCR text file for each

electronic Document for which text cannot be extracted.  The OCR software shall maximize text quality.  Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process. For Documents that contain redactions, the producing Party will provide an OCR text file for the unredacted portions of such Documents.  OCR files shall be produced as document level text files and be named consistently with their corresponding TIFF files ([producing Party's Name]-000000001.tif and [producing Party's Name]-000000001.txt).

D.    Metadata.   For each item of ESI, if applicable, the Parties shall identify the Metadata listed in Table 1, attached hereto.  The Parties will take reasonable steps to preserve, to the extent they have a value, all Metadata associated with ESI even if such Metadata is not specified in Table 1 for production.  The Parties are not obligated to populate manually any of these fields if such fields cannot be extracted from the ESI.  Nothing in this paragraph shall be construed to obligate a Party to (i) create new Metadata that is not already in existence at the time of collection of the ESI (except for the populating of the All Custodians, Redacted, and Confidentiality fields as discussed below), (ii) produce Metadata that is privileged or attorney work product (although such withheld Metadata must be included in a privilege log), or (iii) produce Metadata that is protected from disclosure by statute or regulation.

E.    Native Files.  All non-privileged ESI that has not been redacted, and does not lend itself to useful imaging, shall be produced as Native Files.  These files include: Microsoft Excel, Microsoft PowerPoint, Microsoft Access, website files, audio files, and/or video files.  For Documents produced as Native Files, the Parties agree to produce a single slip-sheet in TIFF format branded with the text "File Produced In Native Format" along with the corresponding Bates number and the Document's confidentiality designation.  Any Native Files shall be renamed to match the Bates number assigned thereto and shall be produced with the source file path provided,

as well as all extracted text and applicable Metadata fields set forth in Table 1. A Party may request that another Party produce other ESI as Native Files for good cause. The Parties then shall meet and confer to discuss production of specific Native Files.

      a.     The Parties may use an industry standard native redaction tool for redactions of Native Files.

      b.     Track Changes/Hidden Content: For word processing files and for presentation files and spreadsheets that are produced in image format, the Documents shall display tracked changes, comments, hidden text, hidden slides, speaker notes, as well as hidden rows, comments, and worksheets, if any, in such files.

      F.     <u>Database or Information from Proprietary, Non-Standard Software</u>. Discoverable ESI that is stored in a database (*e.g.,* structured data) or other proprietary, non-standard software will be produced in reasonably usable standard report export formats available in the ordinary course of business. Upon review of the exported report(s), the receiving Party may, on a showing of particularized need, request from the producing Party additional information to explain any codes, abbreviations, or other information necessary to ensure the report is reasonably usable, and may request that the database or other such Document be produced as a Native File. In the event of such a request, the Parties will meet and confer regarding the most reasonable means to provide the information requested.

      G.     <u>Non-Convertible Files</u>. Common system and program files as defined by the NIST library (which is commonly used by e-discovery vendors to exclude system and program files from document review and production) need not be processed, reviewed or produced. Examples of file types that are not conducive to conversion into .TIFF or .TIF format include but are not limited to: *.exp *.ilk *.res *.trg *.tlh *.idb *.pdb *.pch *.opt *.lib *.cab *.swf *.psp *.chi *.chn *.com. *.dll

\*.exe \*.hlp \*.ivi \*.ivt \*.ix \*.msi \*.nls \*.obj \*.ocx \*.rmi \*.sys \*.tmp \*.ttf \*.vbx \*.wpg \*.iso \*.pdb \*.mpg \*.ram \*.rm \*.psd \*.ai \*.aif \*.bin \*.bqx \*. snd \*.mpe \*.xfd \*.db \*.bat \*.xnk \*.qtl \*. kob \*.mso \*. dat \*.m4a \*.bak \*.xll \*.blank \*.wdf \*.cdo \*.snp \*.rename \*.mdi \*.sda \*.ren \*.001 \*.crf \*.dtf \*.eds \*.exl \*.fdf \*.pcl \*.wmf \*.wps \*. fpage \*.odttf \*.cas \*.ldl \*.wm \*.m4p \*.dex \*.3g2 \*.sss \*.xyz. The Parties agree to meet and confer regarding a reasonable format for production of any such files to the extent necessary.

H.    <u>Password-Protected or Encrypted Documents</u>.  The producing Party shall produce passwords for any password-protected files being produced to the extent the passwords are reasonably available.  To the extent the producing Party is unable to do so, the Parties agree to produce a single slipsheet for each file branded with the text "Password-Protected or Encrypted Document" along with the corresponding Bates number and confidentiality designation.

I.    <u>Voice Mail</u>.  The Parties agree that voice mail need not be produced unless it is maintained and stored in a digital, searchable format and is under the control of the producing Party.  If a Party is aware of responsive voice mail under its control but not stored in a digital, searchable format, the Parties shall meet and confer with respect to its production.

J.    <u>Deduplication</u>.  A party is only required to produce a single copy of a responsive Document and shall globally deduplicate responsive ESI (based on MD5 or SHA-1 hash values at the parent level) across custodians.  However, hard copy Documents shall not be eliminated as duplicates of responsive ESI.  In addition, if deduplication is performed, the identity of the other custodians of deduplicated items must be listed in the "All Custodians" metadata field of the copy of the single record that is produced.

K.    <u>Email Threading</u>.  In order to limit the volume of duplicative content produced from email threads, the Parties may utilize email-threading analytics software to exclude "non-

inclusive" emails or email families wholly contained and reviewed within later-in-time "inclusive" emails or email families, provided that the producing Party (1) treats all emails or email families that have unique content or attachments as inclusive email families that will not be excluded from production and (2) retains all non-inclusive emails or email families which are excluded from production in its review database, so that such messages can be produced upon a specific request by the Receiving Party for good cause shown.

L.    <u>Attachments</u>.  If any original, responsive ESI has attachments, the Parties will produce copies of that ESI with the parent Document and all attachments unless privileged.  Each email attachment must be mapped to its parent by the Document or Production number and shall be produced immediately following the parent Document.  The Parties agree to produce responsive Documents family-complete except for the redaction/withholding of privileged and protected information which can be slipsheeted.  When an attachment is combined with its parent Document, then "BeginAttach" and "EndAttach" fields listing the unique beginning and end number for each attachment must be included.

M.    <u>Embedded Objects</u>.  Some Microsoft Office and .RTF files may contain embedded objects.  Such objects typically are the following file types: Microsoft Excel, Word, PowerPoint, Project, Outlook, Access and PDF.  Subject to claims of privilege and immunity, as applicable, objects with those identified file types shall be extracted as separate files and shall be produced as attachments to the file in which they were embedded except such embedded files need not be separately produced if (1) the parent file containing the embedded object is produced in native format or (2) the substantive, responsive content of such embedded files is reviewable within images produced for the parent file containing the embedded object.

N.    <u>Preservation of Native Files</u>.  When ESI is produced, the producing Party will maintain a separate file as a Native File and, in that separate file, it will not modify the Native File in a manner that materially changes the File and the Metadata.

O.    <u>Encryption</u>.  The producing Party may encrypt all production data.  Such encryption should only be implemented in a manner that would not preclude the reasonable use of ESI. Encryption should be applied using True Crypt software or via hardware encryption using hardware encrypted drives.  The producing Party shall transmit the encryption key or password to the receiving Party, under separate cover, contemporaneously with sending the encrypted media.

P.    <u>Chain of Custody</u>.  The producing Party shall ship encrypted media and/or data electronically via FTP transfer (or the like), or physically via delivery service (*e.g.*, UPS) and provide tracking numbers for all shipments to ensure proper chain of custody.

Q.    <u>Archived Materials</u>.  To the extent ESI is stored on back-up systems, and it is merely duplicative of Documents on live systems, the Parties shall not be required to preserve, collect, or search such systems.  If responsive Documents are likely to be found only on back-up systems, the producing Party must inform the requesting Party as soon as practicable and the Parties will meet and confer to discuss the burden, expense, and benefits of searching and collecting Documents from such systems.  If the Parties cannot come to an agreement on whether back-up systems will be searched, any Party may file an appropriate motion for determination by the Court.

R.    <u>Preservation Not Required for Not Reasonably Accessible ESI</u>.  The Parties agree that the Parties need not preserve, search for, or produce (a) deleted computer files, whether fragmented or whole; (b) temporary or cache files (or other ephemeral data), including internet history, web browser cache, and cookie files; (c) server, system, or network logs; (d) data stored

on photocopiers, scanners, and fax machines; (e) data in metadata fields that are frequently updated automatically, such as last-opened dates; (f) logs of calls made from cellular or land-line phones; (g) computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, and file fragments; and (h) other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business. For the avoidance of doubt, the fact that any source is not listed in this paragraph shall not be interpreted as implying that any particular source is reasonably accessible.

**V.      PRIOR PRODUCTIONS**.

In an effort to streamline discovery, to the extent a producing Party has served production sets and responsive Documents or information in other litigations that are responsive to discovery requests served in this Action, a Party is not obligated to re-run or re-validate those production sets or responsive information and is not obligated to re-collect the Documents that form the basis for that production for the purpose of obtaining additional information as described in Section III, Section IV(D) and Table 1 or for the purpose of complying with this Stipulation. The Party may instead produce such Documents in the same manner in which they were produced in the other litigation, provided, however, that should the requesting Party come forward with a particularized need for additional Metadata as to a specific Document, the Parties will meet and confer to discuss reasonable efforts to locate and recollect such information.

**VI.     PRIOR PARTY COMMUNICATIONS.**

In an effort to streamline discovery and reduce the volume of certain productions, to the extent a Producing Party has exchanged communications related to claim(s) notices and responses thereto with another party or parties and such communications and/or Document(s) attached thereto are responsive and non-privileged, the Producing Party is not obligated to re-run, re-

14

validate or re-collect such communications and/or Document(s) attached thereto for the purpose of obtaining Metadata information as described in Section III, Section IV(D) and Table 1, and the Producing Party may not be obligated to produce the Metadata information as described in Section III, Section IV(D) and Table 1 with the production of such responsive and non-privileged communications and/or Document(s) attached thereto, provided, however, that such Documents and communications shall be produced with such metadata as is included in the original communications and that should the requesting Party come forward with a particularized need for additional Metadata as to a specific Document, the Parties will meet and confer to discuss reasonable efforts to locate and recollect such information.

**VII.    BATES LABELING/CONFIDENTIALITY DESIGNATIONS**

A.    <u>Labeling</u>.  Each page of all images produced must be clearly labeled with an indelible, legible, unique Bates number identifier electronically "burned" onto the image. Reasonable steps shall be taken to place the Bates number at a location that does not unreasonably obscure any information from the source Document.  In addition, to the extent any image or file is to be marked confidential, each page of the image or file to be marked confidential shall include the appropriate confidentiality designation as determined in the Protective Order separately agreed by the Parties and entered by the Court, except that, in the event that a Party produces deposition transcripts, the confidentiality designation may be made via a writing in accord with Paragraph 13 of the Confidentiality and Protective Order entered in this Action.  There shall be no other legend or stamp placed on the Document image, with the exception of redacted information due to claims of applicable privileges, protections, or immunities.

B.    <u>Consecutive Numbering</u>.  The Parties agree that a convention on Bates number ordering will help the Parties better organize production of Documents in this Action.  Therefore,

to the extent possible, Documents shall be Bates-numbered consecutively by custodian (source), maintaining all parent-child relationships. Bates prefixes for Documents produced by the Parties shall reasonably identify the Party's name by, for example, being in the format "Party Name-00000001."

C.    <u>File Names</u>.  Image file names must be unique and must correspond with the Bates number imprinted on the image.  For example, if the Bates number "B0000001" was imprinted, the image would bear the name "B0000001.tif."

D.    <u>Authenticity</u>.  No Party shall object that Documents produced pursuant to this Stipulation are not authentic based upon the file naming convention described in Section VII(C), above. The Parties otherwise reserve all rights regarding their ability (i) to make good-faith objections to the authenticity of Documents, or (ii) to argue that that Documents are deemed authentic by nature of being produced by a Party in discovery.

## VIII.  PRIVILEGE AND REDACTION LOGS

A.    The Parties agree that the following categories of Documents need not be identified on a privilege log: (i) all privileged or work-product protected Documents concerning coverage actions involving coverage for AFFF lawsuits filed against Tyco Fire Products LP, including *Tyco Fire Products LP v. Affiliated FM Insurance Company, et al.*, No. 2022-CP-40-05289 (S.C. Ct. C.P. Richland Cnty.), this Action, *Century Indemnity Company v. Tyco Fire Products LP*, Case No. 2022-CV-000283 (Wis. Cir. Ct. Marinette Cnty.), and *Travelers Casualty & Surety Co. v. Tyco Fire Products LP*, Case No. 2023CV000190 (Wis. Marinette Cty.) so long as the privileged or work-product protected Documents concerning each respective coverage action was first generated after commencement of *Tyco Fire Products LP v. Affiliated FM Insurance Company, et al.*, No. 2022-CP-40-05289 (S.C. Ct. C.P. Richland Cnty.) on October 7, 2022; (ii) all

communications between an in-house attorney or counsel of record and their respective clients concerning solely scheduling, logistical, and/or other non-substantive or ministerial matters; (iii) privileged communications regarding litigation holds or preservations, collection or review relating to any matter referenced in subsection (i), above, so long as such communications first occurred after October 7, 2022; (iv) all communications which are subject to a common interest among any parties to any matter referenced in this subsection (i), so long as such communications first occurred after October 7, 2022; and (v) all privileged and/or work-product protected Documents generated or received by or on behalf of Tyco Fire, including such Documents shared between and among co-defendants concerning the action captioned *In re: Aqueous Film-Forming Foam Products Liability Litigation*, MDL No. 2873 (D.S.C.), any lawsuit consolidated in the foregoing action, or any other lawsuit filed against Tyco Fire seeking damages based on alleged property damage or bodily injury caused by aqueous film-forming foam or asbestos, so long as such Documents were generated after the filing of the lawsuit to which such Documents relate and with the understanding that Tyco Fire and TFP QSF LLP will not seek to rely on such Documents in this Action. For the avoidance of doubt, the provisions of this paragraph do not preclude the parties from negotiating further exemptions.

B.      In an effort to avoid unnecessary expense and burden, the Parties agree that, for Documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine, and/or any other applicable privilege, the producing Party will provide a log or logs within forty-five (45) days after producing Documents in response to a request for production to which the privileged Documents are responsive or by such other date as may be agreed upon by the Parties, but in no event later than the date for completion of fact discovery as set out in the

Order dated October 30, 2023 (ECF 111) or any amendment thereto containing the following information:

1.    the beginning and ending Bates number of the Document, if applicable, or other unique identifier;

2.    identify the nature of the privilege (including work product) which is being claimed;

3.    the type of Document, *e.g.*, letter or memorandum;

4.    the general subject matter of the Document;

5.    the date of the Document;

6.    the author of the Document, the addressees of the Document, and any other recipients; and

7.    where not apparent, the relationship of the author, addressees, and recipients to each other when necessary to evaluate the claim of privilege (*e.g.*, identifying the attorney when the attorney-client privilege is claimed).    If the requesting Party requires further information, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each Document for which it seeks this information. Within fourteen (14) days of such a request, the Producing Party must either (i) provide the requested information, or (ii) challenge the request.  If a Party challenges a request for further information, the Parties shall meet and confer within three (3) business days to try to reach a mutually agreeable solution.  If they cannot agree, the Parties must request a conference with the Court before any motions may be filed.

C.    <u>Group Privilege Entries</u>. The Parties recognize that there may be instances where there are categories or groups of Documents or ESI in which all items are privileged and that,

because of the large number of individual items in such a category or group, it would be a great burden to separately identify on a privilege log each individual Document or item of ESI included in that group.  The Parties agree that in such instances, in accordance with The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production, comment 3(c) (2007 ed.), and as appropriate, instead of separately identifying each Document or item of ESI on a Party's privilege log, it may instead identify categories or groups of privileged Documents or privileged ESI.  In so doing, the Party shall describe in its privilege log the category or group of privileged Documents or ESI (including, without limitation, the criteria and method of delimiting the category or group), the factual basis for a reasonable belief that all Documents or ESI in the category or group are privileged, and the legal basis for the assertion of a privilege as to all Documents or ESI in the category or group.  A Party may request further information relating to categories or groups identified on another Party's privilege log.  When such a request is made, the producing Party must provide, within ten (10) business days, information sufficient for the requesting Party to evaluate the claims of privilege.  If the requesting Party still believes in good faith that it does not have sufficient information to evaluate the claims of privilege, it may request that individual privilege log entries, in accordance with Section VIII(B), be provided by the producing Party.  If such request is made, the Parties will agree to meet and confer regarding the basis for the requesting Party's belief and, to the extent that they cannot resolve the requesting Party's concerns within seven (7) business days of meeting and conferring, the Parties will submit a joint letter to the Court to seek judicial resolution.

       D.    <u>Redactions</u>.  If the producing Party is redacting information from a page, the producing Party shall electronically "burn" the word "Redacted" onto the page at or reasonably

near to the location of the redaction(s) along with the basis for the Redaction, such as "Redacted – Privilege" or "Redacted – PII" and indicate "Yes" in the Redacted metadata field.

      E.    <u>Native Files</u>.  Recognizing that some Native Files cannot be redacted, producing Parties shall undertake reasonable efforts to produce Native Files in redacted form consistent with the principles contained in this Stipulation.

**AND IT IS SO ORDERED.**

<u>s/Richard Mark Gergel</u>
Richard Mark Gergel
United States District Court

Dated: November 17, 2023

Charleston, South Carolina

**Dated:** November 10, 2023

## TABLE 1

| Field Name | Example / Format | Description |
|---|---|---|
| **BEGNO** | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| **ENDNO** | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| **BEGATTACH** | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| **ENDATTACH** | ABC0000008 (Unique ID Parent-Child Relationships) | The Document associated with the last page of the last attachment. |
| **GROUP IDENTIFIER** | ABC0000001 | Identifier of a document's family group. |
| **PAGES** | 3 (Numeric) | The number of pages for a document. |
| **MEDIA VOLUME** | VOL001 | The name of CD, DVD, or Hard Drive (vendor assigns). |
| **RECORDTYPE** | Options: e-mail, attachment, hard copy, loose e-file | The record type of a document |
| **SENTDATE/TIME** | MM/DD/YYYY HH:MM | The date and time the email was sent. **NOTE:** For attachments to e-mails, this field should be populated with the date sent of the e-mail transmitting the attachment. |
| **CREATEDATE/TIME** | MM/DD/YYYY HH:MM | The date and time the non-email ESI document was created. |
| **LASTMODDATE/TIME** | MM/DD/YYYY HH:MM | The date and time the non-email ESI document was last modified. |
| **RECEIVEDDATE/TIME** | MM/DD/YYYY HH:MM | The date and time the document email was received. |
| **TIME ZONE** | EST | Eastern Standard Time |

| Field Name | Example / Format | Description |
|---|---|---|
| **FILEPATH** | *e.g.*, Joe Smith/E-mail/Inbox Joe Smith/E-mail/Deleted Items Joe Smith/Loose Files/Accounting/... Joe Smith/Loose Files/Documents and Settings/... | Location of the original document.  The source should be the start of the full path. |
| **FILE SIZE** | 1000 | Size of the file in bytes. |
| **AUTHOR** | Jsmith | The author of a document from entered metadata.<br><br>*The Parties acknowledge that the Author field may not actually reflect the author of the document. |
| **ALL_CUSTODIANS** | Jsmith; Tjones | Name(s) of All Custodians associated with the record including where documents have been removed as a duplicate, if possible. |
| **FROM** | Joe Smith <jsmith@email.com> | The display name and e-mail of the author of an e-mail.  If only e-mail is given, then just list the e-mail address.  An e-mail address should always be provided for every email author of an email document. |
| **TO** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the recipient(s) of an e-mail.  If only e-mail is given, then just list the e-mail address.  An e-mail address should always be provided for every email recipient in an email document. |
| **CC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the copyee(s) of an e-mail.  If only e-mail is given, then just list the e-mail address.  An e-mail address should always be provided for every email copyee of an email document. |
| **BCC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and e-mail of the blind copyee(s) of an e-mail.  If only e-mail is given, then just list the e-mail address.  An e-mail address should always be provided for every email blind copyee of an email document. |
| **SUBJECT** | | The subject line of the e-mail. |

| Field Name | Example / Format | Description |
|---|---|---|
| DOCTITLE | | The extracted document title of a non-email ESI document. |
| FILENAME | FILENAME.doc | Original filename of native file.  Contains subject of e-mail message for e-mail records. |
| MD5 HASH | | MD5 Hash algorithm to uniquely identify file. |
| CONVERSATION INDEX | | ID used to tie together e-mail threads. |
| NUMBER OF ATTACHMENTS | (Numeric) | The number of attachments for the record. |
| REDACTED | Yes or No | Populated Yes or No indicating whether or not a document contains redactions. |
| NATIVELINK | | The relative path to a native copy of any document. |
| FULL TEXT | | The path to the full extracted text or OCR of the document.  There should be a folder on the deliverable, containing a separate text file per document.  These text files should be named with their corresponding bates numbers. |
| UNREAD | Y or N | Y if an e-mail is unread, N if it has been read.  This value is blank for attachments and non e-mail documents. |
| IMPORTANCE | High Importance, Low Importance, Normal, etc. | E-mail Importance Flag |
| CONFIDENTIALITY | Confidential or Highly Confidential | Populate with any confidentiality designation |