UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TYCO FIRE PRODUCTS LP, *Plaintiff*, v. AIU INSURANCE COMPANY, *et al.* *Defendants*. | Civil Action No. 2:23-cv-02384-RMG Hon. Richard M. Gergel |

**PLAINTIFF TYCO FIRE PRODUCTS' OMNIBUS RESPONSE IN OPPOSITION TO INSURERS' MOTIONS FOR RECONSIDERATION OR, IN THE ALTERNATIVE, TO CERTIFY AN INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B) AND TO STAY PROCEEDINGS**

December 1, 2023

RIKARD & PROTOPAPAS, LLC

Peter Protopapas (SC Bar 68304)
Brian M. Barnwell (SC Bar 10624)
2110 N. Beltline Boulevard
Columbia, South Carolina 29204
Tel:    (803)-978-6111
Email: pp@rplegalgroup.com

COVINGTON & BURLING LLP

Allan B. Moore (admitted *pro hac vice*)
Timothy D. Greszler (admitted *pro hac vice*)
Alexis N. Dyschkant (admitted *pro hac vice*)
850 Tenth Street, NW
Washington, DC 20001
Tel:    (202) 662-5575
Email: abmoore@cov.com

*Counsel for Tyco Fire Products LP*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 3

ARGUMENT ......................................................................................................................... 6

I.      The Court Should Deny Reconsideration. ....................................................................... 6

        A.      Insurers' Attempts to Re-Argue Their Motions to Dismiss are Improper and Unavailing. ........................................................................................... 7

                1.      South Carolina's "Door-Closing" Statute Does Not Bar This Action. .......................................................................................... 7

                2.      The Court Has Personal Jurisdiction Over Insurers. ................................... 9

                3.      Abstention Is Not Warranted. ................................................................... 11

        B.      The Case Schedule Does Not Deprive Insurers of Due Process. .......................... 14

II.     The Court Should Not Certify An Interlocutory Appeal Or Grant A Stay. ...................... 17

        A.      The Court Should Not Certify an Interlocutory Appeal. ...................................... 18

                1.      The Court's Door-Closing Ruling Is Well-Grounded in Precedent. ................................................................................................ 18

                2.      The Court Applied a Familiar Personal Jurisdiction Analysis. ...................................................................................................... 19

                3.      The Court's Abstention Ruling Adhered to Traditional Principles. ................................................................................................. 20

        B.      The Court Should Not Grant a Stay. ................................................................... 21

CONCLUSION .................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aqueous Film-Forming Foams Prods. Liab. Litig.*,
    357 F. Supp. 3d 1391 (JPML 2018)...............................................................................8

*Brillhart v. Excess Insurance Co.*,
    316 U.S. 491 (1942).......................................................................................11, 13

*Carlson v. Boston Sci. Corp.*,
    856 F.3d 320 (4th Cir. 2017) ...........................................................................1, 6

*Central Wesleyan Coll. v. W.R. Grace & Co.*,
    6 F.3d 177 (4th Cir. 1993) ...............................................................................8, 18

*Chase Brexton Health Servs. v. Maryland*,
    411 F.3d 457 (4th Cir. 2005) ...........................................................................12

*Colo. River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976).......................................................................................8, 11

*Consulting Eng'rs Corp. v. Geometric Ltd.*,
    561 F.3d 273 (4th Cir. 2009) ...........................................................................10

*Coopers & Lybrand v. Livesay*,
    437 U.S. 463 (1978).......................................................................................18

*ESAB Group, Inc. v. Zurich Ins. PLC*,
    685 F.3d 376 (4th Cir. 2012) ...........................................................................10

*Farmer v. Monsanto Corp.*,
    353 S.C. 553 (2003).......................................................................................9, 18

*FDIC v. Cashion*,
    720 F.3d 169 (4th Cir. 2013) ...........................................................................14

*Flexi-Van Leasing, Inc. v. Travelers Indemnity Co.*,
    2017 WL 11707321 (D.S.C. Dec. 7, 2017) ..........................................................9

*Hortonville Joint Sch. Dist. v. Hortonville Educ. Ass'n*,
    426 U.S. 482 (1976).......................................................................................9

*Jones v. Thorne*,
    132 F. App'x 150 (9th Cir. 2005) ....................................................................15

*Kruse v. Snowshoe Co.*,
    715 F.2d 120 (4th Cir. 1983) .................................................................................11, 12

*Landis v. N. Am. Co.*,
    299 U.S. 248 (1936).................................................................................................21

*Maryland v. Universal Elections*,
    729 F.3d 370 (4th Cir. 2013) ...................................................................................21

*Med. Mut. Ins. Co. of N.C. v. Littaua*,
    35 F.4th 205 (4th Cir. 2022) ....................................................................................13

*Miranda v. Garland*,
    34 F.4th 338 (4th Cir. 2022) ....................................................................................15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983)....................................................................................................12

*Mraovic v. Elgin, J. & E. R. Co.*,
    897 F.2d 268 (7th Cir. 1990) ...................................................................................14

*Proctor & Schwartz, Inc. v. Rollins*,
    634 F.2d 738 (4th Cir. 1980) .................................................................................7, 9

*Regan v. City of Charleston, S.C.*,
    40 F. Supp. 3d 698 (D.S.C. 2014)..........................................................................6, 7

*Russell v. Absolute Collection Servs.*,
    763 F.3d 385 (4th Cir. 2014) ...................................................................................14

*S. Cal. Edison Co. v. Lynch*,
    307 F.3d 794 (9th Cir. 2002) ...................................................................................15

*Saudi v. Northrop Grumman Corp.*,
    427 F.3d 271 (4th Cir. 2006) ...................................................................................14

*Swint v. Chambers County Comm'n*,
    514 U.S. 35 (1995)..................................................................................................18

*Szantay v. Beech Aircraft Corp.*,
    349 F.2d 60 (4th Cir. 1965) .......................................................................7, 8, 18, 19

*United Prop. & Cas. Ins. v. Couture*,
    2022 WL 2067882 (D.S.C. June 8, 2022).................................................................6

*VonRosenberg v. Lawrence*,
    781 F.3d 731 (4th Cir. 2015) ..............................................................................12, 13

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)........................................................................................................11

**Statutes**

28 U.S.C. § 1292(b) ............................................................................................1, 2, 18, 21

28 U.S.C. § 1407......................................................................................................................8

S.C. Code Ann. § 15-5-150................................................................................................7, 9

**Other Authorities**

Fed. R. Civ. P. 1 ......................................................................................................................2

Fed. R. Civ. P. 54(b) ..........................................................................................................6, 7

8 Moore's Federal Practice—Civil § 40.02 (3d ed. 2023)............................................15

Wright & Miller et al., *Federal Practice & Procedure* § 2741 (4th ed. 2023)............................17

iv

Plaintiff Tyco Fire Products LP ("Tyco") respectfully submits this Omnibus Opposition to (1) the Motion for Reconsideration or, in the Alternative, to Certify an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) and to Stay Proceedings filed in this action by the AIG Defendants ("AIG") (ECF 154), and (2) the parallel motions and joinders in AIG's motion filed by Affiliated FM (ECF 157) and the Zurich Defendants (ECF 172, 173)—all of the foregoing, collectively, the "Insurers," as more specifically identified in Appendix A hereto.[1]

## PRELIMINARY STATEMENT

In keeping with AIG's previous statements that Tyco should be content to pay for its defense and any AFFF liabilities without its insurance assets and then "*chase its insurers*," ECF 24-2 at 20 (emphasis added)—and that "any result here will not result in the availability of funds to Tyco to settle *anytime soon*" *id.* at 21 (emphasis added)—Insurers now seek to delay this case by re-litigating questions that the Court recently decided and by pursuing the extraordinary remedy of an interlocutory appeal and a stay of this proceeding.

Insurers offer nothing of substance to justify these requests. They simply repeat arguments that the Court has just rejected, and they fail to identify any law or facts that were not available to Insurers when their prior motions were considered and denied. Insurers also fail to identify any error of law—let alone a "clear error causing manifest injustice," as a motion for reconsideration generally requires. *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). Insurers likewise fail to clear the high bar for certifying an order for interlocutory appeal and for staying this proceeding, as they have failed to identify any controlling question of law as to which "there is substantial ground for difference of opinion" and for which "an immediate

---

[1] Tyco understands the Zurich Defendants to have filed the same motion papers twice—first in both this action and in the AFFF MDL (ECF 172), and then solely in this action (ECF 173).

appeal from the order may materially advance the ultimate termination of the litigation."
28 U.S.C. § 1292(b).

Insurers complain about the Court's case schedule (which was adopted with their input), but they cite no case holding that a case schedule similar to the one the Court entered—particularly when issued after reasoned consideration—exceeds a district court's discretion or violates Constitutional due process requirements. That is not surprising: the Court's discretion is at its apex when it comes to case management and discovery issues, and district courts in the Fourth Circuit (including the Eastern District of Virginia's famous "rocket docket") regularly set case schedules that provide for expedited resolution of disputes, consistent with the foundational mandate of the Federal Rules. *See, e.g.*, Fed. R. Civ. P. 1 (the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

Insurers are large and sophisticated insurance companies that committed themselves to handle large litigation exposures for Tyco, and they likewise have significant resources they can bring to bear on insurance coverage claims and litigation when they wish to do so. In fact, these very insurance companies *agreed to and jointly moved for* a case schedule in the related coverage action currently pending in Marinette County, Wisconsin (the "Wisconsin Action"), which, among other things, provides for the conclusion of fact discovery in that action on March 26, 2024—just over three weeks after the scheduled close of fact discovery in this action. Dyschkant Decl. Ex. 1.

The Court did not err in its prior rulings, and should deny Insurers' unsubstantiated motions.

## BACKGROUND

The Court is familiar with the background of this case, which is set forth in more detail in Tyco's Omnibus Response in Opposition to Insurer Defendants' Motions to Dismiss, which Tyco incorporates in full by reference herein. *See* ECF 86 at 5–10 ("Tyco's Opp."). Tyco provides only a short recap here.

Through this action, Tyco seeks to obtain the full benefit of primary, umbrella, and excess commercial general liability ("CGL") insurance policies that provide coverage to Tyco in connection with thousands of ongoing aqueous film-forming foam ("AFFF") product liability suits brought nationwide (the "AFFF Suits"). The AFFF multi-district litigation ("AFFF MDL") that this Court has supervised for five years—to which this insurance coverage action unquestionably relates—includes more than more than 4,000 cases, from 50 states and multiple territories, encompassing more than 10,000 plaintiffs. A bellwether trial for claims asserted by certain water providers is quickly approaching in August 2024.

Against this backdrop, Insurers have waged a monthslong campaign to avoid this Court's jurisdiction. Tyco filed its original complaint on May 31, 2023, which the Insurer Defendants named therein moved to dismiss on July 31, 2023. *See, e.g.*, ECF 24, 26. Tyco filed its operative Amended Complaint, as of right, on August 14, 2023, ECF 32, adding certain additional insurers as defendants and adding a claim for damages for breach of contract against AIG, who are Tyco's primary and umbrella insurers for most of the policy years at issue and who have the largest share of the coverage at issue. Each of the current Insurers then moved to dismiss this action on jurisdictional and venue grounds and, in the alternative, requested that the Court abstain from exercising jurisdiction under federal abstention doctrines. *See, e.g.*, ECF 44, 47, 60.

While resisting the proceedings in this Court, AIG and some other insurers sought to accelerate the proceedings in the Wisconsin Action, which was initiated by certain insurance

companies affiliated with Chubb (collectively, "Chubb"), after Tyco filed a prior coverage lawsuit in South Carolina state court and which that court later dismissed without prejudice.[2] At the time that Tyco filed this lawsuit in May 2023, the Wisconsin Action was principally focused on Chubb's claim for a declaration that Tyco had released certain Chubb policies in a 2011 settlement agreement. *See, generally*, Tyco's Opp., ECF 86 at 6–10.[3]

On October 13, 2023, Tyco and the Insurers (among others) submitted a joint Proposed Amended Case Management Order in the Wisconsin Action, which contemplates that all fact discovery will be completed in that action by March 26, 2024, and that the parties in that action will file dispositive motions by no later than August 13, 2024. *See* ECF 89-2 (providing a copy of the proposed order). The court in the Wisconsin Action has since signed and entered that order. Dyschkant Decl. Ex. 1. The current movants—i.e., AIG, Affiliated FM, and all of the Zurich Defendants (with the exception of Defendant American Zurich Insurance Company)— each *consented to and joined in submitting* the Proposed Amended Case Management Order in the Wisconsin Action that the court there has adopted.[4]

---

[2] Insurers take every opportunity to accuse Tyco of improper forum-shopping in the filing of this action, but as the Court is aware, the Wisconsin Action was filed by Chubb after, and in response to, Tyco's prior choice of a South Carolina forum.

[3] Tyco has since agreed not to contest Chubb's position on the policies expressly encompassed by the 2011 settlement in question, but Tyco is pursuing coverage in the Wisconsin Action under other Chubb policies that Tyco and Chubb agree are not encompassed by that release. Certain London Market Companies recently moved for partial summary judgment against Tyco in the Wisconsin Action arguing that a separate 2011 settlement agreement between them and Tyco released certain London policies. The Wisconsin court recently denied that motion, agreeing with Tyco that the settlement release at issue was narrower in scope.

[4] Defendant American Zurich Insurance Company was not a party to the Wisconsin Action at the time that this proposed order was submitted, and was added as a party by Tyco on October 16, 2023.

On October 17, 2023, this Court issued its 21-page Order and Opinion on Insurers' motions to dismiss Tyco's amended complaint. ECF 103 ("Order"). The Court's ruling (1) severed this action from the AFFF MDL; (2) determined that all of the Insurer Defendants in this action are subject to specific personal jurisdiction in this Court; (3) denied the Insurer Defendants' motions to dismiss under South Carolina's so-called "door-closing statute"; (4) denied the Insurer Defendants' motions to abstain or stay this action in favor of the Wisconsin Action; and (5) directed the parties to submit a proposed case schedule that would allow for the completion of briefing on dispositive motions on or before June 1, 2024 (i.e., before the August 2024 water provider bellwether trial in the AFFF MDL, and approximately two-and-one-half months sooner than such briefing will be completed in the Wisconsin Action).

Tyco and AIG jointly submitted a proposed, fully agreed case schedule pursuant to the Court's direction, *see* ECF 109, and on October 30, 2023, the Court issued its Scheduling Order establishing the case schedule for this action, ECF 111 ("Scheduling Order"). Among other things, as Tyco and AIG jointly proposed, the Scheduling Order provides that all fact discovery shall be completed by March 1, 2024, and that briefing of dispositive motions shall be completed by June 1, 2024. *Id.* The Court emphasized that "[t]he June 1, 2024 deadline in this scheduling order will not be extended," and made clear that "[t]he Parties must devote sufficient resources to complete discovery and briefing within the timeline provided herein." *Id.* at 5.

Despite the Court's unequivocal Order and its ensuing Scheduling Order, Insurers now seek reconsideration of the October 17 Order denying their motions to dismiss or, in the alternative, certification of an interlocutory appeal and a stay of this proceeding.[5] If granted, of

---

[5] Insurers' motions seek reconsideration of the Court's Order (ECF 103) but do not purport to seek reconsideration of the Scheduling Order (ECF 111).

course, certification of the interlocutory appeal that Insurers seek, together with an accompanying stay, would obliterate the case schedule that the parties negotiated and the Court just entered, wholly irrespective of the merits of any appealed issue. The moving Insurers, however, constitute only a subset of the insurers who are parties in this case: of the 22 Insurer Defendants, less than half (i.e., 10) have filed or joined the present motions for reconsideration.

## ARGUMENT

### I.    The Court Should Deny Reconsideration.

Insurers bring their motions for reconsideration under Rule 54(b) of the Federal Rules of Civil Procedure.[6] The Court of Appeals has identified three criteria that guide a district court's exercise of its discretion in hearing a motion for reconsideration of an interlocutory order. None are present here.

"[A] court may revise an interlocutory order under the same circumstances in which it may depart from the law of the case: (1) a subsequent trial producing substantially different evidence; (2) a change in applicable law; or (3) clear error causing manifest injustice." *Carlson*, 856 F.3d at 325. Insurers do not argue that either of the first two circumstances applies here. Insurers' argument is limited to the third circumstance—that this Court's interlocutory order denying their motions to dismiss constitutes "clear error causing manifest injustice." *See* AIG Mem., ECF 154 at 7. "A motion for reconsideration is not, however, an opportunity to relitigate

---

[6] As Insurers' motions recognize, courts in the Fourth Circuit consider motions for reconsideration of interlocutory orders under the legal standard of Rule 54(b). *See, e.g.*, AFM Mem., ECF 157 at 2 (citing *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017)); AIG Mem., ECF 154 at 6 (citing *United Prop. & Cas. Ins. v. Couture*, 2022 WL 2067882, at *6 (D.S.C. June 8, 2022)); Zurich Mem., ECF 172 at 2 (citing *Regan v. City of Charleston, S.C.*, 40 F. Supp. 3d 698, 701–02 (D.S.C. 2014)); *see also Regan*, 40 F. Supp. 3d at 701 (where a prior order is an interlocutory order, a motion for reconsideration is "appropriately considered in the context of the Court's inherent power to reconsider and revise any interlocutory order, as recognized by Rule 54(b).").

issues already ruled upon simply because a party is dissatisfied with the outcome"; nor may it be "used to raise arguments or introduce evidence that could have been addressed or presented previously." *Regan*, 40 F. Supp. 3d at 702.

Insurers have not shown that the Court's interlocutory order is legally erroneous at all—let alone that it meets the standard for Rule 54(b) reconsideration. Nor have they articulated any other persuasive reason for the Court to depart from its prior rulings.

## A.     Insurers' Attempts to Re-Argue Their Motions to Dismiss are Improper and Unavailing.

Insurers' first three grounds for reconsideration simply repeat arguments that the parties already briefed extensively in connection with Insurers' motions to dismiss. These arguments all fail for reasons that the Court already explained at length in its thorough Order. Tyco incorporates by reference its previous response in opposition to Insurers' prior motions, *see* Tyco's Opp., ECF 86, and only briefly addresses their recycled arguments here.

### 1.     South Carolina's "Door-Closing" Statute Does Not Bar This Action.

The Court correctly concluded that South Carolina's door-closing statute does not bar this lawsuit. Section 15-5-150 of the South Carolina Code provides that "a plaintiff not a resident of" South Carolina *may* sue a foreign corporation in South Carolina *state court* (i.e., the courthouse door is open) "when the cause of action shall have arisen or the subject of the action shall be situated within this State."

In 1980, the Court of Appeals observed that "a South Carolina federal court exercising diversity jurisdiction must apply § 15-5-150 'unless there are affirmative countervailing federal considerations.'" *Proctor & Schwartz, Inc. v. Rollins*, 634 F.2d 738, 739–40 (4th Cir. 1980) (quoting *Szantay v. Beech Aircraft Corp.*, 349 F.2d 60, 64 (4th Cir. 1965)). Here, as the Court recognized, "affirmative countervailing federal considerations" render the door-closing statute

7

inapplicable. Moreover, even if the state's statute did apply to this federal action, the subject of this action is situated within South Carolina, thereby keeping the door open to this action.

Congress has established a strong federal policy favoring "coordinated or consolidated pretrial proceedings" when multiple "civil actions involving one or more common questions of fact are pending in different districts." 28 U.S.C. § 1407. This kind of federal policy interest supports displacement of the door-closing statute. Thus, for example, the Court of Appeals has recognized that there exists "a countervailing federal policy in favor of consolidating asbestos litigation." *Central Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 186 n.3 (4th Cir. 1993); *cf. Szantay*, 349 F.2d at 66 (concluding that federal policy encouraging joinder overrode door-closing statute). A similar interest is present in the AFFF litigation that provides the backdrop for this action, particularly as this same Court is presiding over both the AFFF MDL and this action, and it has a five-year record of familiarity with the underlying facts. *See* Order, ECF 103 at 2, 14; *see also In re Aqueous Film-Forming Foams Prods. Liab. Litig.*, 357 F. Supp. 3d 1391, 1394 (JPML 2018) (identifying common issues among the AFFF Suits, many of which also implicate the current insurance coverage dispute).

As detailed below, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). And the Court has properly found—and Insurers' motions do not dispute—that the Court has proper subject matter jurisdiction. Moreover, under *Central Wesleyan College*, *Colorado River*, and other binding precedent, this Court properly concluded that the "strong" federal interest in efficient and coordinated litigation suffices to displace the door-closing statute

here, given that "this coverage dispute relates to and advances the potential resolution of [the AFFF] litigation." Order, ECF 103 at 14.[7]

But even if South Carolina's door-closing statute applied, this lawsuit would meet its requirements. As noted above, the door-closing statute permits a non-resident plaintiff to sue a foreign corporation in a South Carolina court "when the cause of action shall have arisen or the subject of the action shall be situated within this State." S.C. Code Ann. § 15-5-150. As the Court correctly recognized, the decision in *Flexi-Van Leasing, Inc. v. Travelers Indemnity Co.*, 2017 WL 11707321 (D.S.C. Dec. 7, 2017), provides persuasive support for the proposition that, when an underlying tort dispute is situated in South Carolina (as is the case for more than 80 of the AFFF Suits), the door-closing statute allows follow-on insurance litigation in South Carolina courts. Insurers' recitation of their unquestionably less apposite and less persuasive cases does not change the outcome. *See* Tyco's Opp., ECF 86 at 25–28.

### 2. The Court Has Personal Jurisdiction Over Insurers.

The Court correctly determined that it has personal jurisdiction over Insurers.

When a state's long-arm statute authorizes the exercise of personal jurisdiction over a foreign corporation, a three-part test governs the inquiry into whether specific jurisdiction comports with constitutional due process: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's

---

[7] Although federal courts in South Carolina have applied the door-closing statute when sitting in diversity, *see Rollins*, 634 F.2d at 739–40, the South Carolina Supreme Court has explained that the door-closing statute "applies only to actions brought in the [state] circuit court," and "the statute clearly does not apply to federal suits." *Farmer v. Monsanto Corp.*, 353 S.C. 553, 558 (2003). Federal courts are "bound to accept the interpretation of [state] law by the highest court of the State." *Hortonville Joint Sch. Dist. v. Hortonville Educ. Ass'n*, 426 U.S. 482, 488 (1976). Tyco thus respectfully submits that the Court's Order could have rested on the alternative ground that this South Carolina statute, as interpreted by the South Carolina Supreme Court, has no application in federal cases.

claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 391–92 (4th Cir. 2012). In their motions, Insurers dispute only the Court's application of the third element of this test: the constitutional reasonableness of exercising specific personal jurisdiction. But the Court plainly considered this element, *see* Order, ECF 103 at 12–13, and its determination on the question is legally sound.

The Order reflects the Court's careful consideration of the factors that inform the reasonableness inquiry. As the Order demonstrates, at least three of the applicable factors counsel in favor of exercising specific personal jurisdiction. First, "Plaintiff has a strong interest in obtaining a convenient, timely, and effective forum to adjudicate its coverage claims," and the District of South Carolina provides such a forum. Order, ECF 103 at 12. Second, because Insurers "provided nationwide insurance coverage to Tyco," they will not be "unduly burdened by litigating the coverage issues in the District of South Carolina since they routinely litigate complex coverage and other matters in courts in state and federal courts across the nation." *Id.* Third, because another of the factors is "the shared interest of *the states* in obtaining efficient resolution of disputes," *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009) (emphasis added), the Court also was justified in invoking the "strong interest" of "the federal judicial system . . . in promoting the resolution of the voluminous pending cases against Tyco in the MDL"—an interest that the Court has already determined will be advanced by timely resolution of this suit. Order, ECF 103 at 13.

The Court was not required to find that every factor favored the exercise of personal jurisdiction. Rather, the Court properly inquired into whether the litigation would be gravely difficult or inconvenient for Insurers, and fairly determined that it would not.[8]

### 3.    Abstention Is Not Warranted.

As noted above, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them" in cases of this kind. *Colo. River Water Conservation Dist.*, 424 U.S. at 817. Accordingly, abstention is appropriate only in exceptional circumstances. The Court properly determined that those exceptional circumstances are not present here, whether one applies the standard set forth in *Colorado River* or the *Brillhart-Wilton* doctrine.[9]

The standard under *Colorado River* is demanding, and whether to abstain under that standard "is generally committed to the discretion of the district court." *Kruse v. Snowshoe Co.*, 715 F.2d 120, 122 (4th Cir. 1983). While recognizing that litigation is pending in the Wisconsin Action that "contains overlapping issues with claims made by the parties in this action," the Court also correctly recognized that this factor is not dispositive and, in a well-considered opinion, determined that the *Colorado River* factors collectively do not warrant abstention from the exercise of federal jurisdiction. Order, ECF 103 at 16. Among other things, as the Court correctly observed, this federal forum is not inconvenient for the Insurers, given their nationwide

---

[8] In its earlier Response in Opposition to Defendants' Motions to Dismiss, Tyco argued that Insurers consented to personal jurisdiction in South Carolina when they each agreed to appoint the South Carolina Director of Insurance as an agent through which they could be found in the state for service of a summons. Tyco's Opp., ECF 86 at 16–19. Although the Court rejected that argument, Order, ECF 103 at 8–10, Tyco respectfully submits that it provides an additional ground for affirming the Court's conclusion that the Court has personal jurisdiction over Defendants.

[9] This doctrine is named for two abstention cases handed down by the Supreme Court: *Brillhart v. Excess Insurance Co.*, 316 U.S. 491 (1942), and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995).

coverage commitments and frequent litigation across federal (and state) courts. Order, ECF 103 at 12 ("Defendants . . . are not unduly burdened by litigating the coverage issues in the District of South Carolina since they routinely litigate complex coverage and other matters in courts in state and federal courts across the nation."). There is also an undeniably strong nexus between the underlying AFFF Suits to which this insurance coverage action relates and the District of South Carolina. Order, ECF 103 at 12, 16.

Insurers evidently disagree with the way the Court balanced the factors and its decision to honor its "virtually unflagging obligation" to proceed. But that balancing is an exercise committed by the United States Supreme Court to this Court's *discretion*, and Insurers' disagreement with the Court's exercise of its discretion is not a sufficient basis for reconsideration. *See Kruse*, 715 F.2d at 122. The Court's ruling also unquestionably gives effect to the Court of Appeals' instruction that "abstention should be the exception, not the rule." *Chase Brexton Health Servs. v. Maryland*, 411 F.3d 457, 464 (4th Cir. 2005) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)).

Insurers further err in contending that the *Brillhart-Wilton* framework governs here. *Brillhart-Wilton* applies when a plaintiff seeks only declaratory relief from a federal court. *See VonRosenberg v. Lawrence*, 781 F.3d 731, 735 (4th Cir. 2015). In their motions to dismiss, Insurers conceded, as they must, that Tyco has asserted a claim for money damages. *See, e.g.*, ECF 47-1 at 21. This claim for coercive relief operates under the circumstances to remove this case from the ambit of *Brillhart-Wilton*. *See VonRosenberg*, 781 F.3d at 735. Insurers nevertheless take issue with Tyco's addition of its money damages claim in the Amended Complaint, referring once again solely to their prior, denied motions, where they resorted to the Court of Appeals' inapplicable dictum in *VonRosenberg*. *See* AIG Mem., ECF 154 at 13;

*VonRosenberg*, 781 F.3d at 735 & n.3 ("The only *potential* exception to [the] general rule" that actions for coercive relief trigger the *Colorado River* standard "arises when a party's request for injunctive relief is either frivolous or is made solely to avoid application of the *Brillhart* standard"—in other words, only where there has been a "perfunctory inclusion of nondeclaratory requests for relief" might an exception to *Colorado River* exist (emphasis added)).

But Tyco's breach-of-contract claim for money damages is not frivolous or perfunctory, nor was it made solely to avoid *Brillhart-Wilton*. On the contrary, Tyco had every right to add this important claim because the AIG Defendants who are the subject of this claim have repudiated and breached their obligations by denying coverage; indeed, if anything is frivolous, it is the suggestion that Tyco has no valid breach of contract claim against these AIG Defendants.

In any event, as the Court correctly concluded, abstention is not warranted under the *Brillhart-Wilton* test either. In cases applying *Brillhart-Wilton*, "federal courts weigh considerations of federalism, efficiency, and comity to choose whether to retain jurisdiction over the case" when a parallel state case is pending. *Med. Mut. Ins. Co. of N.C. v. Littaua*, 35 F.4th 205, 208 (4th Cir. 2022). The Fourth Circuit has instructed courts to consider four factors in determining whether to abstain in these cases: "(1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal courts; and (4) whether the federal action is mere procedural fencing, in the sense that the action is merely the product of forum-shopping." *Id.* at 208–09.

All four factors favor the exercise of jurisdiction, as Tyco showed in its prior brief. Tyco's Opp., ECF 86 at 33–35. Insurers' recycled arguments do not change that fully-considered and amply-supported result.

**B.    The Case Schedule Does Not Deprive Insurers of Due Process.**

Insurers' final argument—that the Court's case schedule violates the United States Constitution—is as unavailing as it is extreme. Insurers baldly assert that this Court "designed" the current case schedule (which is closely based upon a joint proposal from Tyco and AIG) "to benefit Tyco and harm [them] by depriving them of their due process rights." AIG Mem., ECF 154 at 15 (header); *see also id.* at 17 (asserting the same).

These accusations, which seem calculated to try to provoke and inflame, are offered without basis and bear little connection to the rather mundane mechanics of case management to which they relate. District courts have "broad discretion . . . to supervise discovery . . . as part of their case-management authority." *Russell v. Absolute Collection Servs.*, 763 F.3d 385, 396 (4th Cir. 2014). Thus, where litigants seek to challenge a district court's decisions on such matters, those decisions are reviewed under a highly deferential "abuse of discretion" standard, not by reference to the Due Process Clause of the Constitution. *See FDIC v. Cashion*, 720 F.3d 169, 173–74 (4th Cir. 2013); *see also Mraovic v. Elgin, J. & E. R. Co.*, 897 F.2d 268, 270–71 (7th Cir. 1990) ("When reviewing challenges for abuse of discretion in district court scheduling, we have concluded that matters of trial management are for the district judge; we intervene only when it is apparent that the judge has acted unreasonably. The occasions for intervention are rare."). Review for abuse of discretion in these challenges "is guided by the necessary deference owed to district courts in the context of trial management." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2006). The case schedule adopted by the Court here represents a reasonable

14

exercise of the Court's broad discretion to manage its docket, and does not violate the Due Process Clause.

In a due process challenge, the core inquiry is whether the litigant has "receive[d] the fundamental features of due process—notice and an opportunity to be heard." *Miranda v. Garland*, 34 F.4th 338, 362 (4th Cir. 2022). There is no question that Insurers had notice and an opportunity to present their positions, now and going forward. Further, due process challenges to case management schedules must be considered against the backdrop of district courts' "'inherent power' to control their dockets." *Jones v. Thorne*, 132 F. App'x 150, 152 (9th Cir. 2005) (quoting *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 807 (9th Cir. 2002)). That is because district courts have a duty to "strike a balance between the needs of judicial efficiency and the rights of litigants." 8 Moore's Federal Practice—Civil § 40.02 (3d ed. 2023).

The Court struck this balance in a reasonable way. It designed the schedule for this case to accommodate the extremely demanding circumstances of this litigation, including an impending bellwether trial next August on Tyco's liability for claims by certain water providers in the AFFF MDL. As the Court noted, the purpose of the case schedule is to "facilitate[] the adjudication of the major coverage issues in advance of the bellwether trial," in order to help both sides obtain "what they claim they seek": a timely resolution of their dispute. Order, ECF 103 at 17, 19. This decision, and the underlying rationale, plainly fall within the Court's discretion.

Insurers cite no cases that support a contrary conclusion. Indeed, many of the authorities Insurers rely upon have nothing to do with case management or discovery issues at all. And the authorities they cite that do touch upon such issues simply highlight that there is no deprivation of due process here. For example, in *Freehill v. Lewis*, the district court *granted* permission for a

15

plaintiff's interlocutory appeal, which the Court of Appeals accepted and expedited, and while that appeal was pending the district court nonetheless ordered that "*all* pretrial processes" be completed in three months. 355 F.2d 46, 47 (4th Cir. 1966) (emphasis added). The district court then declined even to hear a request by plaintiffs' sole counsel (who was involved in another case with expedited discovery) for an extension of time to complete a deposition that was already in progress. *Id.* at 48. The Court of Appeals *refused* to grant plaintiff a writ of mandamus, and instead the court remanded with the observations that the district court "was apparently unaware that the taking of depositions had been noticed much earlier" and that the court should hold a hearing to weigh "all relevant circumstances." *Id.* at 49.

Here, by contrast, the Scheduling Order allows for seven months to complete the presentation of pretrial dispositive issues; Insurers have deployed a veritable army of lawyers; and there is no question that the Court has carefully weighed the needs of the case and scheduling factors, while fully hearing and considering Insurers' position.

As for Insurers' other authorities: In *Long Island Lighting Company v. Barbash*, the Second Circuit held that a district court exceeded its discretion when it held a hearing 16 days after the complaint was filed; directed a defendant to bring requested documents *to that hearing*; and then, without prior notice, ordered the plaintiff to examine the defendant under oath *at that same hearing* without having previously been allowed to review the documents. 779 F.2d 793, 795 (2d Cir. 1985). The matter of *Bell v. Farmers Insurance Exchange* involved whether a defendant was improperly prevented from presenting a defense to the plaintiffs' proof of damages, when the defendant had earlier acquiesced to a trial management plan allowing statistical proof of damages. 9 Cal. Rptr. 3d 544, 580 (Ct. App. 2004). *Cooper v. Stender* involved whether the court should compel a defendant to disclose the limits of its motor vehicle

insurance policy. 30 F.R.D. 389, 393 (E.D. Tenn. 1962). And Insurers' citation of Wright & Miller's federal practice treatise is to a section addressing the sufficiency of a Rule 56(d) affidavit. *See* Wright & Miller et al., *Federal Practice & Procedure* § 2741 (4th ed. 2023).

Moreover, Insurers' due process arguments are belied by their agreement to a similarly accelerated case schedule in the Wisconsin Action. In that case, Insurers have agreed to a schedule pursuant to which "[a]ll fact discovery shall be completed by March 26, 2024." Dyschkant Decl. Ex. 1 at ¶ 3. This Court set a case schedule in which all fact discovery must be completed by March 1, 2024. The difference—less than a month—does not come close to even suggesting a violation of Insurers' due process rights. And although expert discovery and briefing of dispositive motions in this action are on a marginally faster schedule than in the Wisconsin Action (again, by only a matter of a couple months), those aspects of the schedule likewise are not sufficiently different to constitute a due process violation. Indeed, briefing of dispositive motions principally will involve *attorney* time, which Insurers (who professionally manage large-scale coverage litigation every day) have significant capacity to secure.[10]

## II.     The Court Should Not Certify An Interlocutory Appeal Or Grant A Stay.

Alternatively, Insurers ask the Court to certify its Order for an interlocutory appeal and to stay further proceedings in this Court. Insurers utterly fail, however, to demonstrate that an interlocutory appeal is appropriate here, and a stay would likewise be improper.

---

[10] Insurers' due process argument is also betrayed by another stubborn fact: the majority of the Insurer Defendants in this action have not filed or joined in the present motions. If similarly situated and motivated insurers who must adhere to the same case schedule perceive no egregious violation of their rights, and are not motivated to join in the present motions, even after having had the benefit of seeing them and without needing to bear virtually any costs for simply joining in them, it is difficult to give much credit to the movants' complaints.

**A.      The Court Should Not Certify an Interlocutory Appeal.**

A district judge may certify an interlocutory order for appeal when "such order [1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and . . . [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b) (brackets added). As the statute reflects, Congress "chose to confer on district courts the first line discretion to allow interlocutory appeals." *Swint v. Chambers County Comm'n*, 514 U.S. 35, 47 (1995). Interlocutory appeals are strongly disfavored, as they can promote piecemeal appellate litigation, and they represent "a departure from the basic policy of postponing appellate review until after the entry of a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978), *superseded on other grounds by* Fed. R. Civ. P. 23(f).

Interlocutory review is not appropriate here because Insurers have failed to demonstrate that there are substantial grounds for a difference of opinion on a controlling legal question, for which immediate appellate review may materially advance the ultimate termination of the litigation. The Court's Order applies settled legal principles in a well-reasoned and well-supported manner.

**1.      The Court's Door-Closing Ruling Is Well-Grounded in Precedent.**

In declining to apply South Carolina's door-closing statute, the Court undertook a fact-specific application of the legal principles regarding federal venue and the state statute in question. The Court then reached a conclusion consistent with both (a) the South Carolina Supreme Court's own assessment of that state statute in *Farmer* and (b) the teachings of the Fourth Circuit in considering the presence of countervailing federal interests in *Central Wesleyan College* and *Szantay. See Cent. Wesleyan Coll.*, 6 F.3d at 187; *Szantay*, 349 F.2d at 66; *see also* Tyco's Opp., ECF 86 at 25–28.

Insurers assert that the Court "made its finding [of a countervailing federal interest] without citation to any authority." AIG Mem., ECF 154 at 20. But the Court cited both *Central Wesleyan College* and *Szantay*, understandably reasoning from these similar precedents that proceeding forward with this case, in light of its close relation to the AFFF MDL, qualifies as an appropriately countervailing federal interest. Order, ECF 103 at 13–14. Nothing about that conclusion is remarkable, let alone supportive of the extraordinary step of an interlocutory appeal.

### 2.    The Court Applied a Familiar Personal Jurisdiction Analysis.

The Court also broke no new ground when it found that it has specific personal jurisdiction over Insurers. As noted above, settled precedent establishes a tripartite framework for federal courts in answering this question. The Court applied this framework to the facts of this case, arriving at a fact-bound conclusion for which an interlocutory appeal would be inappropriate. On the third element of the jurisdictional analysis—the only element that Insurers challenge—Insurers have not identified a legal question that admits of reasonable dispute. Rather, they take issue with the way that the Court balanced a set of factors. That grievance does not remotely provide grounds for an interlocutory appeal.

Insurers also appear to misunderstand the scope of the inquiry. After acknowledging that one of the factors is "the plaintiff's interest in obtaining convenient and effective relief," Insurers oddly question why the Court "confusingly considered the Due Process rights of Tyco." AIG Mem., ECF 154 at 21. As discussed above, the Court also considered the other factors that are appropriate to determining the constitutional reasonableness of personal jurisdiction, and it reasonably determined that litigating in this Court would not unduly burden Insurers and that a federal interest favored exercising jurisdiction.

19

### 3.    The Court's Abstention Ruling Adhered to Traditional Principles.

As with personal jurisdiction, Insurers' issue with the Court's holding on abstention boils down to dissatisfaction with the Court's discretionary balancing of a set of factors—the sort of grievance that is inappropriate for interlocutory review. In seeking certification of an interlocutory appeal, Insurers take issue with what they characterize as the Court's "belief that the expedited Wisconsin court schedule would not result in an adjudication of the major coverage issues in advance of a presently-scheduled August 23, 2024 bellwether trial in the MDL." AIG Mem., ECF 154 at 22–23. Insurers argue that this determination "has nothing to do with any of the factors this Court was bound to consider under settled precedent in analyzing whether abstention was warranted." *Id.* at 23. But that is incorrect.

To begin, the question whether to abstain is not simply one of case scheduling. Rather, the question is whether the Court should accept a "virtually unflagging obligation" to exercise its jurisdiction, where (as here) such jurisdiction has been properly vested, over the case in all its dimensions. In applying this *Colorado River* standard, courts consider whether or not to proceed with a case *at all*. Here, the Court reasonably evaluated the *Colorado River* factors and exercised its discretion to proceed. But even when narrowed to the question of case schedule, the Court's ruling reasonably considered what would likely be most efficient and appropriate under the *Colorado River* factors; balanced the factors; and reasonably exercised and explained its discretion accordingly. Order, ECF 103 at 15–19.

The same is true of Insurers' complaint about the effect of the Wisconsin Action on the abstention analysis. *See* AIG Mem., ECF 154 at 23. The Court acknowledged that pending action, and the Court balanced the totality of the factors in view of it. Order, ECF 103 at 15–19. Insurers' disagreement with how the Court balanced the factors does not meet the standard for an interlocutory appeal.

B.       **The Court Should Not Grant a Stay.**

Finally, the Court should deny Insurers' request for a stay. Indeed, that request gives away the game: Insurers seek to delay the litigation in this Court by any means possible. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Maryland v. Universal Elections*, 729 F.3d 370, 379 (4th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Staying these proceedings, particularly given the upcoming bellwether trial and the carefully crafted case schedule that now governs this action, would undermine the considerations that have animated this Court's denial of Insurers' requests for abstention and the Court's overall, measured approach to the disposition of this lawsuit.

## CONCLUSION

For the foregoing reasons, Tyco respectfully requests that the Court (1) deny Insurers' Motions for Reconsideration, and (2) deny Insurers' Motions to Certify an Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) and to Stay Proceedings.

Dated: December 1, 2023                    COVINGTON & BURLING LLP


                                           By: /s/ Allan B. Moore
                                           Allan B. Moore (admitted *pro hac vice*)
                                           Timothy D. Greszler (admitted *pro hac vice*)
                                           Alexis N. Dyschkant (admitted *pro hac vice*)
                                           850 Tenth Street, NW
                                           Washington, DC 20001
                                           Tel:    (202) 662-5575
                                           Email:  abmoore@cov.com


                                           RIKARD & PROTOPAPAS, LLC

                                           Peter Protopapas (SC Bar 68304)
                                           Brian M. Barnwell (SC Bar 10624)
                                           2110 N. Beltline Boulevard
                                           Columbia, South Carolina 29204
                                           Tel:    (803)-978-6111
                                           Email: pp@rplegalgroup.com

                                           *Counsel for Tyco Fire Products LP*

**Appendix A**
**Insurers' Motions Addressed in Omnibus Response**

| Insurer Defendant Group | Motion |
|---|---|
| **AFM**: Affiliated FM Insurance Company | ECF 157 |
| **AIG Defendants**: AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa., and New Hampshire Insurance Company | ECF 154 |
| **Zurich Defendants**: American Guarantee and Liability Insurance Company, American Zurich Insurance Company, and Zurich American Insurance Company | ECF 172, 173 |