IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Tyco Fire Products LP, | ) | C/A. No. 2:23-2384-RMG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| AIU Insurance Company, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the Court is the Partial AIG Insurers' motion for reconsideration or, in the alternative, motion to certify an interlocutory appeal (Dkt. Nos. 154, 194). Defendant Affiliated FM Insurance Company joins the Partial AIG Insurers' motion. (Dkt. Nos. 157, 195). Defendants American Guarantee and Liability Insurance Company ("AGLIC"), Zurich American Insurance Company ("ZAIC") and American Zurich Insurance Company ("AZIC") (collectively "Zurich") join the Partial AIG Insurers' motion. (Dkt. No. 173). Plaintiff filed a response in opposition. (Dkt. No. 193).

Rule 54(b) provides the following:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

*Id.* Under Rule 54(b), the "district court retains the power to reconsider and modify its interlocutory judgments ... at any time prior to final judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 (1983) (noting that "every order short of a final decree is subject to reopening at the discretion of the district judge").

The Fourth Circuit has offered little guidance on the standard for evaluating a Rule 54(b) motion, but has held motions under Rule 54(b) are "not subject to the strict standards applicable to motions for reconsideration of a final judgment." *Am. Canoe Ass'n*, 326 F.3d at 514; *see also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1472 (4th Cir. 1991) (the Court found it "unnecessary to thoroughly express our views on the interplay of Rules 60, 59, and Rule 54"). In this regard, district courts in the Fourth Circuit, in analyzing the merits of a Rule 54 motion, look to the standards of motions under Rule 59 for guidance. *See U.S. Home Corp. v. Settlers Crossing, LLC*, C/A No. DKC 08-1863, 2012 WL 5193835, at *2 (D. Md. Oct. 18, 2012); *R.E. Goodson Constr. Co., Inc. v. Int'l Paper Co.*, C/A No. 4:02-4184-RBH, 2006 WL 1677136, at *1 (D.S.C. June 14, 2006); *Akeva L.L.C. v. Adidas Am., Inc.*, 385 F. Supp. 2d 559, 565–66 (M.D.N.C. 2005). Therefore, reconsideration under Rule 54 is appropriate on the following grounds: (1) to follow an intervening change in controlling law; (2) on account of new evidence; or (3) to correct a clear error of law or prevent manifest injustice. *Beyond Sys., Inc. v. Kraft Foods, Inc.*, C/A No. PJM-08-409, 2010 WL 3059344, at *2 (D. Md. Aug. 4, 2010) ("This three-part test shares the same three elements as the Fourth Circuit's test for amending an earlier judgment under Rule 59(e), but the elements are not applied with the same force when analyzing an[ ] interlocutory order.") (citing *Am. Canoe Ass'n*, 326 F.3d at 514).

First, the Partial AIG Insurers object that the Court failed to properly apply the South Carolina Door Closing Statute. (Dkt. No. 154 at 13).

In the Court's order denying the Partial AIG Insurers' motion to dismiss, the Court held that the Door Closing Statute did not bar the Court from hearing this action. (Dkt. No. 103 at 13-14). The Court held that (1) a strong countervailing federal interest existed in "consolidating actions in multi-district litigation, and this coverage dispute relates to and advances the potential resolution of that litigation" and (2) this action, in part, arises out of at least 80 cases pending in the AFFF MDL which identified South Carolina as a home venue or which were removed from state court in South Carolina. (*Id.* at 14) (citing *Flexi-Van Leasing, Inc. v. Travelers Indem. Co.*, No. 2:15-cv-1787-DCN, 2017 WL 11707321 (D.S.C. Dec. 7, 2017)).

The Partial AIG Insurers argue the fact 80 cases against Tyco arise from South Carolina is "irrelevant." (Dkt. No. 154 at 13). The Partial AIG Insurers argue *Flexi-Van* is "riddled with mistakes" and that reliance on it was "error." (*Id.* at 14). The Partial AIG Insurers also argue that "countervailing federal considerations" are limited to instances in which "the plaintiff does not have an alternative forum to assert his claims." (*Id.* at 15) (citing *Boisvert v. Techtronic Indus. N. Am., Inc.*, 56 F. Supp. 3d 750, 752 (D.S.C. 2014)).

The Court denies the Partial AIG Insurers' motion on this point. The fact 80 cases have been filed in South Carolina is, despite the Partial AIG Insurers' conclusory statement to the contrary, relevant to finding that the insurance coverage issues in Plaintiff's complaint arise, in part, out of South Carolina based claims, rendering the Door Closing Statute inapplicable. *See Flexi-Van*, 2017 WL 11707321, at *4. Further, while certain district courts cases interpret Fourth Circuit case law as standing for the proposition that *Szantay* balancing is limited "to situations in which a plaintiff has no other available forum in which to bring its action," *see California Buffalo*

3

*v. Glennon-Bittan Grp., Inc.*, 910 F. Supp. 255, 257 (D.S.C. 1996), the Partial AIG Insurers cite no Fourth Circuit case itself holding as much. Accordingly, the Partial AIG Insurers' motion is denied on this point. *See Commissioners of Pub. Works of City of Charleston v. Costco Wholesale Corp.*, No. 2:21-CV-42-RMG, 2021 WL 5908758, at *10 (D.S.C. Dec. 13, 2021) (countervailing federal interest existed in consolidating "flushable wipes actions").

Second, the Partial AIG Insurers argue that the Court erred by finding that exercising specific jurisdiction over them in South Carolina was constitutionally reasonable. (Dkt. No. 154 at 16). The Partial AIG Insurers argue the Court ignored whether defending the instant action in South Carolina was reasonable as to *Defendants* and instead addressed only Plaintiff's interests in having the instant matter litigated in this court.

The Court denies the Partial AIG Insurers' motion on this point. The Partial AIG Insurers misrepresent the Court's analysis, which tracked Supreme Court precedent:

> Finally, Plaintiff has demonstrated that the exercise of personal jurisdiction over the Defendants is constitutionally reasonable. Plaintiff has a strong interest in obtaining a convenient, timely, and effective forum to adjudicate its coverage claims since it faces an August 23, 2024 day certain trial in a bellwether case in the AFFF MDL which could potentially produce devastating financial consequences to the company. See (C.A. No. 2:18-2873, Dkt. No. 3665 at 7). Defendants, as insurers which provided nationwide insurance coverage to Tyco, are not unduly burdened by litigating the coverage issues in the District of South Carolina since they routinely litigate complex coverage and other matters in courts in state and federal courts across the nation. Moreover, the federal judicial system has a strong interest in promoting the resolution of the voluminous pending cases against Tyco in the MDL arising out of its manufacture and sale of AFFF. If pretrial resolution of the claims pending against Plaintiff is not accomplished, the over 4,000 pending cases against Plaintiff in the AFFF MDL will flow back to the individual district courts in all 93 federal judicial districts and could potentially result in hundreds of complex, time-consuming jury trials. A timely resolution, one way or the other, of the insurance coverage disputes between Plaintiff and its insurers, could assist in facilitating meaningful and potentially successful settlement discussions in cases pending against Plaintiff in the AFFF MDL.

4

(Dkt. No. 103 at 12-13); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (In determining whether the exercise of personal jurisdiction over an out of state defendant is constitutionally reasonable, courts should consider the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the interest of the states in furthering fundamental social policies.).

Third, the Partial AIG Insurers argue the Court abused its discretion by declining to abstain. (Dkt. No. 154 at 18). While the Court finds this is not so, for the sake of clarity, the Court further articulates under *Colorado River* why it is within its discretion to decline to abstain.

The basic notion underlying the *Colorado River* doctrine is that in certain circumstances it may be appropriate for a federal court to refrain from exercising its jurisdiction to avoid duplicative litigation. *See Colorado River Conservation Dist. v. United States,* 424 U.S. 800, 817–19 (1975); *Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 15–16 (1983). However, such abstention is the exception rather than the rule. *See Colorado River,* 424 U.S. at 817–18; *Gordon v. Luksch,* 887 F.2d 496, 497 (4th Cir.1989). The threshold question in deciding whether *Colorado River* abstention is appropriate is whether there are parallel suits. *See Romine v. Compuserve Corp.,* 160 F.3d 337, 339 (6th Cir.1998); *New Beckley Mining Corp. v. International Union, UMWA,* 946 F.2d 1072, 1073 (4th Cir.1991). If parallel suits exist, then a district court must carefully balance several factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem. Hosp.,* 460 U.S. at 16. Although the prescribed analysis is not a "hard-and-fast" one in which application of a "checklist" dictates the outcome, six factors have been identified to guide the analysis for *Colorado River* abstention: (1) whether the subject matter of the litigation involves property where the first court may assume jurisdiction to the exclusion

of others;[1] (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights. *Moses H. Cone,* 460 U.S. at 15, 19–27; *Colorado River,* 424 U.S. at 818–19; *McLaughlin,* 955 F.2d at 934–35. The above factors are not exclusive. *See McLaughlin v. United Virginia Bank*, 955 F.2d 930, 934 (4th Cir. 1992); *AMEX Assur. Co. v. Giordano*, 925 F. Supp. 2d 733, 738 (D. Md. 2013) ("If parallel suits exist, courts then balance six non-exclusive factors to determine whether exceptional circumstances compel abstention."). At bottom, abstention should be the exception, not the rule, and it may be granted only when "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone,* 460 U.S. at 28. As there are parallel proceedings, the Court proceeds to consider the above noted factors, "with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem. Hosp.,* 460 U.S. at 16.

The Court declines to abstain in this matter. While the Wisconsin Action was commenced slightly earlier than the instant one, as noted above, it is not inconvenient for Defendants, sophisticated insurer carriers, to litigate in federal court. While the source of law is state law, both lawsuits are at nearly the same stage and the instant action will proceed at a slightly quicker pace than the Wisconsin Action. As to the threat of piecemeal litigation, the overlap between this action and the Wisconsin Action is not any more problematic than it would be in any other matter involving concurrent litigation. *See Gannett Co. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 744 (4th Cir. 2002) ("The threat of inconsistent results and the judicial inefficiency inherent in parallel

---

[1] Here, this factor is irrelevant and the Court does not consider it.

breach of contract litigation, however, are not enough to warrant abstention."); *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts,* 915 F.2d 7, 16 (1st Cir.1990) ("[*Colorado River* abstention] is not warranted simply because related issues otherwise would be decided by different courts, or even because two courts otherwise would be deciding the same issues. As noted above, something more than a concern for judicial efficiency must animate a federal court's decision to give up jurisdiction."). An additional federal interest, however, which the Court discussed in its prior order tips the balance heavily in favor of this Court honoring its "virtually unflagging obligation" to exercise jurisdiction:

> The circumstances confronted by the Court in this litigation bear little similarity to the factual background of the typical abstention case. The Court has on its docket over 6,000 cases as the transferee court in the AFFF MDL, with the daunting responsibility to address pretrial issues and advance, if possible, settlement discussions among the parties. Tyco is a defendant in a majority of the pending cases in the MDL. Other major defendants, which had no reported coverage disputes with their insurance carriers, have reached a proposed settlement that may exceed $13 billion in claims asserted by public water districts. The absence of a resolution of the major coverage issues between Tyco and its liability carriers has impaired the negotiations between Tyco and the plaintiffs in the MDL.
>
> Plaintiff faces an August 2024 bellwether trial in the AFFF MDL that could potentially produce a devastating financial verdict against it. A timely resolution of those coverage issues, either by finding coverage or the absence of coverage, could provide the negotiating parties in the MDL critical information needed to reach a negotiated settlement.

(Dkt. No. 103 at 16). Here, denying a federal forum does not "clearly serve an important countervailing interest." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). Accordingly, reconsideration is denied on this point.

Fourth, the Partial AIG Insurers argue that the scheduling order issued by the Court is designed to "harm" them and would deny them of their "due process rights." (Dkt. No. 154 at 21). The Partial AIG Insurers neither cite nor discuss case law supporting that contention. Nor do the

7

Partial AIG Insurers provide specific examples of how the scheduling order must be amended to provide them "sufficient time" to prepare the instant case. The Partial AIG Insurers also argue that the Court stated or implied in its prior order that, by the end of dispositive briefing, it would definitively rule on whether there was a duty to indemnify Plaintiff in the upcoming Telomer Bellwether trial and other AFFF litigation. (Dkt. No. 154 at 22). When this matter reaches dispositive briefing, the Court will address those matters which the parties present it and which are ripe for adjudication. To imply otherwise as the Partial AIG Insurers do in their motion is to misrepresent the Court's prior order.

Last, the Partial AIG Insurers ask for a stay of this litigation and that the Court certify its order for interlocutory review pursuant to 28 U.S.C. § 1292(b).

Interlocutory appeal is disfavored because it promotes piecemeal litigation. *Myles v. Laffitte*, 881 F.2d 125, 127 (4th Cir. 1989) (noting interlocutory appeal should be "be used sparingly and ... its requirements must be strictly construed"). A district court, in its discretion, may certify a question for interlocutory review where (1) there is a controlling question of law; (2) "there is substantial ground for difference of opinion" on the issue; and (3) an immediate appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). In the unusual circumstance where interlocutory review is appropriate, it normally involves "a pure question of law" that can be decided "quickly and cleanly" and does not involve issues of fact requiring the appellate court to "delve beyond the surface of the record in order to determine the facts." *United States v. Agape Senior Community, Inc.*, 848 F.3d 330, 340-41 (4th Cir. 2017).

The Court has carefully considered the Partial AIG Insurers' request for interlocutory review and denies their motion on this final point. As explained at length in the prior order and the instant one, the Partial AIG Insurers do not present controlling questions of law for which there is

substantial ground for difference of opinion. This Court has personal jurisdiction over Defendants and the Court is within its discretion to decline to abstain under *Colorado River.*

For the reasons set forth above, Defendants' various motions for reconsideration are **DENIED** (Dkt. Nos. 154, 157, 173).

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel  
Richard Mark Gergel  
United States District Judge

December 18, 2023  
Charleston, South Carolina