UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TYCO FIRE PRODUCTS LP, <br> *Plaintiff*, <br><br> v. <br><br> AIU INSURANCE COMPANY, *et al.* <br><br> *Defendants.* | Civil Action No. 2:23-cv-02384-RMG <br><br><br> Hon. Richard M. Gergel |

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST AIG AND TIG REGARDING CERTAIN "POLLUTION EXCLUSIONS"**

March 18, 2024

WILLS MASSALON & ALLEN LLC

Christy Ford Allen (SC Bar 07549)
Post Office Box 859
Charleston, South Carolina 29402
Tel:    (843) 727-1144
Email:  callen@wmalawfirm.net

COVINGTON & BURLING LLP

Allan B. Moore (admitted *pro hac vice*)
Timothy D. Greszler (admitted *pro hac vice*)
Alexis N. Dyschkant (admitted *pro hac vice*)
850 Tenth Street, NW
Washington, DC 20001
Tel:    (202) 662-5575
Email:  abmoore@cov.com

*Counsel for Plaintiff Tyco Fire Products LP*

TABLE OF CONTENTS

INTRODUCTION...................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

LEGAL STANDARD ............................................................................................................... 4

ARGUMENT............................................................................................................................ 6

I.      The "Named Perils" and the "Blended Pollution Exclusion" Endorsements Do Not Bar
        Coverage for the AFFF Claims. ................................................................................... 6

        A.      The Paragraph 1 Exclusions for "Premises" and "Waste" Are Inapplicable.................. 6

        B.      The Paragraph 2 Exclusions for "Cleanup" Costs Are Likewise Inapplicable. ..............10

II.     The "Named Peril and Time Element Pollution Endorsement" Does Not Bar Coverage
        for the AFFF Claims. ...................................................................................................16

III.    The "Named Peril and Time Element Pollution Self Insured Retention Endorsement
        (Products-Completed Operations Hazard Version)" Does Not Bar Coverage for the AFFF
        Claims. ........................................................................................................................17

        A.      The Exclusion in Paragraph 1 Does Not Apply.......................................................17

        B.      The Exclusion in Paragraph 2 Also Do Not Apply...................................................18

CONCLUSION.........................................................................................................................19

# TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*Badiali v. N.J. Mfrs. Ins. Grp.*,
    107 A.3d 1281 (N.J. 2015) ................................................................................5

*Beal Sav. Bank v. Sommer*,
    865 N.E.2d 1210 (N.Y. 2007) ...........................................................................14

*Burlington Ins. Co. v. NYC Transit Auth.*,
    79 N.E.3d 477 (N.Y. 2017) ................................................................................5

*Cape Cod Mech. Sys., Inc. v. Cent. Mut. Ins. Co.*,
    2008 WL 11511471 (D. Mass. June 13, 2008) .................................................12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ...........................................................................................5

*Chubb Custom Ins. Co. v. Standard Fusee Corp.*,
    2 N.E.3d 752 (Ind. Ct. App. 2014) .....................................................................8

*Cont'l Cas. Co. v. Amerisure Ins. Co.*,
    886 F.3d 366 (4th Cir. 2018) ..............................................................................5

*Day v. Allstate Indem. Co.*,
    798 N.W.2d 199 (Wis. 2011) ............................................................................16

*Donaldson v. Urban Land Interests, Inc.*,
    564 N.W.2d 728 (Wis. 1997) ..............................................................................5

*Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*,
    132 F.3d 526 (9th Cir. 1997) ..............................................................................4

*Gohde v. MSI Ins. Co.*,
    679 N.W.2d 835 (Wis. 2004) ............................................................................14

*Greenville Cty. v. Ins. Reserve Fund*,
    443 S.E.2d 552 (S.C. 1994) ................................................................................5

*Hussey Copper, Ltd. v. Arrowood Indem. Co.*,
    391 F. App'x. 207 (3d Cir. 2010) ......................................................................12

*Kappers v. Progressive N. Ins. Co.*,
    835 N.W.2d 290 (Wis. Ct. App. 2013) .............................................................15

*Keggi v. Northbrook Prop. & Cas. Ins. Co.*,
    13 P.3d 785 (Ariz. Ct. App. 2000) ....................................................................13

*Kimber Petroleum Corp. v. Travelers Indem. Co.*,
   689 A.2d 747 (N.J. Super. Ct. App. Div. 1997)............................................................8

*NFL Enters. LLC v. Comcast Cable Commc'ns, LLC*,
   851 N.Y.S.2d 551 (N.Y. App. Div. 2008) .................................................................15

*Richard Bldg. Supply I, LLC v. N. River Ins. Co.*,
   2017 WL 5624468 (N.D. Ill. Nov. 22, 2017) ...........................................................12

*Richardson v. Nationwide Mut. Ins. Co.*,
   826 A.2d 311 (D.C. 2003) ..........................................................................................4

*Ross Dev. Corp. v. Fireman's Fund Ins. Co.*,
   910 F. Supp. 2d 828 (D.S.C. 2012) .............................................................................8

*Spriggs v. Diamond Auto Glass*,
   242 F.3d 179 (4th Cir. 2001)...................................................................................4, 5

*Thompson v. Potomac Elec. Power Co.*,
   312 F.3d 645 (4th Cir. 2002)........................................................................................5

*W. Am. Ins. Co. v. Tufco Flooring E., Inc.*,
   409 S.E.2d 692 (N.C. Ct. App. 1991).........................................................................4

*W. Bend Mut. Ins. Co. v. Calumet Equity Mut. Ins. Co.*,
   926 N.W.2d 510 (Wis. 2019).....................................................................................14

*Walker v. Erie Ins. Co.*,
   178 N.Y.S.3d 650 (N.Y. App. Div. 2022) .................................................................15

*Westport Ins. Corp. v. Appleton Papers Inc.*,
   787 N.W.2d 894 (Wis. 2010)......................................................................................5

*Williams v. Gov't Emps. Ins. Co.*,
   762 S.E.2d 705 (S.C. 2014) .........................................................................................5

## INTRODUCTION

For decades, AIG—far and away Tyco's largest insurer in this litigation—received tens of millions of dollars in premiums from Tyco Fire Products LP and its predecessors ("Tyco") in exchange for insurance policies expressly designed to provide coverage for product liability claims. Now that Tyco requires the benefit of the coverage that it purchased for thousands of underlying claims related to the use of its Aqueous Film-Forming Foam (the "AFFF Claims"), AIG has refused to make good on its promises and, instead, has spared no expense in seeking to evade its coverage obligations, thereby adding to Tyco's losses. To date, AIG has refused to pay Tyco a penny under any of the scores of AIG policies implicated by the AFFF Claims, forcing Tyco to "chase" AIG for what it promised.

Tyco now respectfully moves for a partial summary judgment ruling against AIG[1] declaring that several "pollution exclusions" contained in over a dozen of AIG's Primary and Umbrella Policies do not bar coverage for the AFFF Claims. Tyco also moves with respect to a 1997 policy issued by TIG Insurance Company, which contains a substantively identical pollution exclusion to that contained in the AIG Primary Policies. Resolution of this issue, which requires no more than application of the policy language to the underlying allegations of the AFFF Claims, will substantially advance an overall resolution of this case.

The Court can and should resolve this issue now, as a matter of law, because these particular pollution exclusions were written to expressly *preserve coverage* granted under the main policy form for claims alleging bodily injury and property damage caused by the "release" of "pollutants" in all but a narrow set of circumstances not presented here—e.g., where the

---

[1] For purposes of this motion, "AIG" includes Defendants National Union Fire Insurance Company of Pittsburgh, Pa., American Home Assurance Company, and New Hampshire Insurance Company.

"release" occurred at the policyholder's own "premises" or in connection with "waste" activities, which are the traditional and widely known focus of pollution exclusions in policies of this kind.

The AFFF Claims thus do not fall within the narrow categories of "pollution" claims barred by these exclusions, and the Court thus should find that they do not bar coverage.

## BACKGROUND

*The Insurance Policies*.  AIG issued to Tyco primary and umbrella general liability insurance policies for more than 23 years, from June 1, 1990 through October 1, 2013 (collectively, the "AIG Policies").  The AIG Policies consist of primary commercial general liability ("CGL") policies (the "Primary Policies") and umbrella liability policies (the "Umbrella Policies").  The Primary and Umbrella Policies provide Tyco's first line of defense against product liability claims triggering those Policies for bodily injury and property damage. Collectively, these AIG Policies afford aggregate, per-occurrence product liability limits of more than $730 million.[2]  TIG Insurance Company issued Policy No. XLX 914 12 65 for the policy period July 1, 1997 through July 1, 1998 providing $30 million in excess coverage.

This Motion concerns coverage for product liability claims against Tyco under a discrete subset of Policies—namely, (1) Primary Policies issued to Tyco by AIG in the 1990s and 2000s that contain the "Named Perils Endorsement" or "Blended Pollution Exclusion;" (2) Umbrella Policies issued by AIG to Tyco containing the "Named Peril and Time Element Pollution Endorsement" for the four period years between 1999 through 2003, as well as the "Named Peril and Time Element Pollution Self Insured Retention Endorsement (Products-Completed Operations Hazard Version)" for the three policy years between 2005 and 2008; and (3) the

---

[2] The AIG Insurers and other AIG affiliates issued additional general liability policies to Tyco and its predecessors, including numerous excess policies.  The combined aggregate limits of these additional policies, as well as the AIG Policies subject to this Motion, exceed $3 billion.

"Pollution Exclusion Amendatory Endorsement (E) Named Perils Exception" contained in TIG Insurance Company Policy No. XLX 914 12 65 for the policy period July 1, 1997 through July 1, 1998 ("TIG Policy"). The full policy language contained in each of the Endorsements at issue in this Motion is excerpted in Exhibits 1 through 5 to the Declaration of Ryan M. Buschell ("Buschell Decl.").

*The AFFF Claims*. The AFFF Claims involve thousands of complaints, which have largely been consolidated in a multi-district litigation pending in this Court and captioned, *In re Aqueous Film-Forming Foams Products Liability Litigation*, No. 2:18-mn-02873 (the "MDL"). The plaintiffs in those actions generally allege that AFFF contains or breaks down into PFAS compounds and that AFFF caused property damage and/or bodily injury after it was purchased by Tyco's customers and used to fight fires, both in emergencies and training. As the Court knows well, there are four general categories of AFFF Claims:

- Firefighter Claims: Firefighters have alleged bodily injury from direct exposure to Tyco's AFFF product during firefighting or training activities.

- Water Provider Claims: Water Provider entities have alleged that the sale and use as intended of Tyco's AFFF product to fight fires, both in emergencies and training, caused property damage to drinking-water aquifers in their respective regions.

- State Attorney General Claims: Attorneys General of a number of states have alleged that the sale and use as intended of Tyco's AFFF product to fight fires, both in emergencies and training, caused property damage to drinking water aquifers and other resources in their states.

- Private Party Claims: Various individuals have alleged that the sale and use as intended of Tyco's AFFF product to fight fires, both in emergencies and training, caused bodily injury, property damage and loss of property value as a result of AFFF and/or AFFF byproducts allegedly entering into and harming soil and/or drinking water in their communities.

The gravamen of the AFFF Claims is that Tyco's AFFF is a defective product. While Tyco disputes these claims, it is clear that these are *product liability* claims, which, of course, are

3

a core focus of coverage under general liability policies sold to manufacturers like Tyco and are birds of a wholly different feather from *pollution* claims, which traditionally target industrial waste, discharges, and emissions.[3] In addition to express product liability claims, plaintiffs in the AFFF Claims—regardless of whether they are private parties or governmental entities—also seek damages from Tyco for bodily injury and property damage allegedly caused by Tyco's AFFF products under common law causes of action (such as negligence, trespass, and public or private nuisance).[4]

## LEGAL STANDARD

Summary judgment is appropriate where admissible evidence and pleadings demonstrate "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "material" only if it "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (citation and quotations omitted). A dispute concerning a material fact qualifies as

---

[3] *See, e.g., Richardson v. Nationwide Mut. Ins. Co.*, 826 A.2d 311, 325, 336 (D.C. 2003) (holding that pollution exclusions apply only to damage caused by waste "byproducts of the manufacturing process" and statutory cleanup liability, not to injuries resulting from a faulty furnace, which have "no conceivable connection with waste dumps or government-mandated cleanup costs"); *W. Am. Ins. Co. v. Tufco Flooring E., Inc.*, 409 S.E.2d 692, 6998 (N.C. Ct. App. 1991) (holding that pollution exclusion applies to "unwanted or waste material," not "any raw material brought upon the premises by the insured for the purpose of normal business activity which accidentally resulted in property damage or bodily injury"); *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 530-531 (9th Cir. 1997) (language of the pollution exclusion sends "unmistakable message to the reasonable reader that the exclusion deals with environmental-type harms").

[4] Among the thousands of AFFF Claims, a small subset of complaints also assert causes of action under state or federal environmental statutes or request injunctive relief potentially compelling Tyco, among other defendants, to conduct investigation or remediation, in addition to asserting products liability and common law causes of action for bodily injury and/or property damage. *See, e.g.,* Buschell Decl., Ex. 6 (Third Amended Complaint, *State of New York v. 3M Co., et al.*, 2:19-cv-01022-RMG (D.S.C.)), 35. For clarity, this Motion concerns only the products liability and common law causes of action for bodily injury and/or property damage that are common to all AFFF Claims.

genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citation and quotations omitted). Once a prima facie showing has been made, the non-moving party can avoid summary judgment only by demonstrating that specific, material facts exist that give rise to a genuine issue. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the non-moving party's] case." *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Summary judgment is often appropriate in insurance coverage cases because the interpretation of insurance policy language is a question of law. *See Cont'l Cas. Co. v. Amerisure Ins. Co.*, 886 F.3d 366, 370 (4th Cir. 2018). Where, as here, the relevant facts and policy language are not in dispute, the interpretation of policy language can and should be determined as a matter of law on summary judgment. *See Williams v. Gov't Emps. Ins. Co.*, 762 S.E.2d 705, 710 (S.C. 2014); *Westport Ins. Corp. v. Appleton Papers Inc.*, 787 N.W.2d 894, 907 (Wis. 2010); *Badiali v. N.J. Mfrs. Ins. Grp.*, 107 A.3d 1281, 1288 (N.J. 2015); *Burlington Ins. Co. v. NYC Transit Auth.*, 79 N.E.3d 477, 481 (N.Y. 2017).

Further, this Motion presents no choice-of-law issue because there is no potential conflict of law here. The law of any potentially applicable jurisdiction will enforce the policy language as written and will construe the standard-form exclusionary language at issue narrowly, and strictly against the insurer, resolving any reasonable ambiguities in favor of coverage. *See, e.g., Donaldson v. Urban Land Interests, Inc.*, 564 N.W.2d 728, 731 (Wis. 1997) ("[A]mbiguities in a policy's terms are to be resolved in favor of coverage, while coverage exclusion clauses are narrowly construed against the insurer."); *Greenville Cty. v. Ins. Reserve Fund*, 443 S.E.2d 552, 553 (S.C. 1994) (similar).

5

# ARGUMENT

Tyco's insurance program consists of hundreds of insurance policies (including scores issued by AIG) spread across four decades. The present Motion, however, is concerned with only a handful of the "pollution exclusions" contained in some of AIG's policies and the TIG policy. These policies were issued to Tyco with narrowly-drafted endorsements that specifically preserve coverage for most bodily injury and property damage claims (particularly, product liability claims) arising from the "release" of "pollutants." There is no plausible argument that the AFFF Claims fall into the narrow categories of claims for which these exclusions were written to bar coverage, *even assuming for the sake of argument* that AFFF is a "pollutant" (as defined in the exclusions) or that its use to fight fires as intended, either in emergencies or training, qualifies as an "escape" or "release" of "pollutants"—two propositions which Tyco vigorously disputes. Accordingly, the Court can and should apply the plain language of the exclusions now, and hold that they do not preclude coverage for the AFFF Claims. Doing so will promote resolution of Tyco's AFFF coverage dispute.

## I.    The "Named Perils" and the "Blended Pollution Exclusion" Endorsements Do Not Bar Coverage for the AFFF Claims.

The AIG policies containing the "Named Perils" and "Blended Pollution Exclusion" Endorsements, and the TIG policy, bar coverage for "releases" of "pollutants" only in certain narrow circumstances. Each exclusion consists of two paragraphs, neither of which plausibly applies to the AFFF Claims.

### A.    The Paragraph 1 Exclusions for "Premises" and "Waste" Are Inapplicable.

The first paragraph in each of these exclusions ("Paragraph 1") bars coverage for "bodily injury" and "property damage" arising out of "the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape" (hereinafter, "release") of "pollutants," but

expressly and only where the "release" of the pollutants occurs from the *insured's premises* or from certain *waste disposal* activities. Specifically, Paragraph 1 bars coverage for "bodily injury or "property damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:"

(a)     At or from *any premises*, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b)     At or from *any premises*, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of *waste*;

(c)     Which are or were at any time transported, handled, stored, treated, disposed of, or processed as *waste* by or for any insured or any person or organization for whom you may be legally responsible; or

(d)     At or from *any premises* site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations

(i)     If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii)    If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

*E.g.*, Buschell Decl., Ex. 1 (Excerpt of AIG Primary Policy No. RMGL 612-36-20 (7/10/00–10/1/01)), Named Perils End., at 1 (emphases added). [5]

---

[5] The pollution exclusion in the "Blended Pollution Exclusion" Endorsement is materially the same, but contains additional exceptions not relevant here that *restore* coverage for certain releases that would otherwise fall within the above categories. *See* Buschell Decl., Ex. 2 (Excerpt of Primary Policy No. GL 159-54-15 (6/29/07–6/29/08)), Blended Pollution Exclusion

None of these provisions bars coverage for the AFFF Claims. To the contrary, this exclusion was manifestly written to exclude (and has been repeatedly held to bar coverage for) traditional environmental pollution claims—which are not at issue here—arising from the policyholder's own operations, alleging damage caused by "pollutants" released as industrial waste from the insured's own facilities. *See, e.g.*, *Ross Dev. Corp. v. Fireman's Fund Ins. Co.*, 910 F. Supp. 2d 828, 835–36 (D.S.C. 2012) (disposal of pyrite slag byproduct from fertilizer manufacturing operations); *Chubb Custom Ins. Co. v. Standard Fusee Corp.*, 2 N.E.3d 752, 762–63 (Ind. Ct. App. 2014) (discharge of perchlorate from insured's flare-manufacturing facilities); *Kimber Petroleum Corp. v. Travelers Indem. Co.*, 689 A.2d 747, 755–56 (N.J. Super. Ct. App. Div. 1997) (gasoline contamination from insured's service station).

The AFFF Claims present a wholly different scenario to which none of the four exclusionary prongs listed above applies. Here, all of the underlying complaints include product liability allegations that AFFF caused bodily injury and property damage as a result of its use by *Tyco's customers* in firefighting or training activities, *after* it was manufactured and sold and *after* it had entered the stream of commerce and left any of the "premises" mentioned in Paragraph 1. Such allegations do not fall into the limited set of circumstances—i.e., a release from the insured's own "premises" or "operations," or as "waste" disposal—to which these pollution exclusions could even potentially apply. Neither part of this conclusion is reasonably subject to dispute.

*The "Premises" Requirement*. The AFFF Claims allege that Tyco is liable for damage or injury unconnected to any *premises* identified in Paragraphs 1(a), (b), and (d) of the exclusion,

---

End., at 2. Accordingly, with respect to the AFFF Claims, the same analysis applies to both the "Named Perils" and "Blended Pollution Exclusion" Endorsements.

as just quoted. The allegations in the AFFF Claims involve fire training facilities, airports, and military bases—not Tyco's premises or premises on which Tyco's contractors or subcontractors were performing any operations, or landfills or waste storage, handling, treatment, or disposal sites. For example, in two of the cases selected for the Telomer AFFF Bellwether Program, the plaintiffs allege that Tyco is liable for damage resulting from the use of AFFF at the Nassau County Fire Training Center (Buschell Decl., Ex. 7 (Second Amended Complaint, *Village of Farmingdale v. 3M Co.*, No. 2:19-cv-00564-RMG (D.S.C.)), ¶¶ 11, 153), and as "a result of the use of the Defendants' Fluorosurfactant Products for their intended purpose" at or near plaintiffs' property—including an airport, fire station, and a fire training center (*id.*, Ex. 8 (Plaintiff's Original Complaint, *City of Watertown v. 3M Co.*, No. 2:21-cv-1104-RMG (D.S.C.)), ¶¶ 3, 9–10). These allegations do not concern a release of pollutants from the insured's premises or from waste disposal sites. Paragraphs 1(a), (b), and (d) of the pollution exclusion thus do not apply.

   ***The "Waste" Requirement***. The AFFF Claims allege bodily injury or property damage unrelated to the *activities* identified in Paragraph 1(c) of the exclusion—namely, waste transport, handling, storage, treatment, disposal, or processing by Tyco or others for whom Tyco is legally responsible. Tyco and any parties for whom Tyco may be legally responsible *manufactured, sold, and distributed* AFFF into the *stream of commerce* as a highly effective, *property-saving and lifesaving product*. Tyco is now being sued for product liability by AFFF end users and others in connection with *their use* of AFFF for firefighting purposes, not for *Tyco's (or any Tyco contractor's) waste treatment and disposal practices*. For example, in *Andrews v. 3M Company, et al.*, the plaintiff alleges that he is "a resident and citizen of Portland, Oregon," who "regularly used, and was thereby directly exposed to, AFFF in training and to extinguish fires during his working career as a military and/or civilian firefighter," and suffered "kidney cancer

9

and loss of [his] left kidney as a result." *Id.*, Ex. 9 (First Amended Complaint, *Andrews v. 3M Co.*, No. 2:20-cv-01255-RMG (D.S.C.)), ¶¶ 10–11.

Other claimants make similar allegations. *See, e.g.*, Buschell Decl., Ex. 10 (Complaint, *Muzzin v. 3M Co.*, No. 2:23-cv-03553-RMG (D.S.C.)), ¶¶ 6–7 ("Plaintiff was exposed to Defendants' fluorochemical products through his nearly 27 years long employment as a firefighter for the City of Oxnard, California," including "AFFF products used to fight fires and in firefighting training"); *id.*, Ex. 11 (Third Amended Complaint, *Crow v. 3M Co.*, No. 2:18-cv-03403-RMG (D.S.C.)), ¶ 359 ("Due to these training operations, AFFF was released into the surrounding air, soil, and groundwater at locations including but not limited to the current fire training area ("FTA") (1991 to date)"). These allegations have nothing to do with waste management or disposal—let alone by *Tyco* or anyone for whom *Tyco* is legally responsible. Paragraph 1(c) of the exclusion therefore does not apply.

These facts cannot "genuinely" be disputed, and because a "genuine" dispute of fact is needed to defeat a motion for summary judgment, coverage is not precluded by Paragraph 1 of the Primary Policies' pollution exclusion, and summary judgment on this point is warranted.

**B.    The Paragraph 2 Exclusions for "Cleanup" Costs Are Likewise Inapplicable.**

The second paragraph of these pollution exclusions ("Paragraph 2") likewise does not apply. Paragraph 2 bars coverage for "loss, cost or expense" incurred for environmental response obligations under state or federal law, *not* for bodily injury and property damage claims like those asserted in the AFFF Claims. Paragraph 2 in applies to "[a]ny loss, cost or expense arising out of any":

(a)    Request, demand or order that any insured or others *test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants*; or

> (b)   Claim or suit by or on behalf of *a governmental authority* for damages because of *testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of pollutants.*

*E.g.*, *id.*, Ex. 1 (Excerpt of AIG Primary Policy No. RMGL 612-36-20 (7/10/00–10/1/01)), Named Perils End., at 2 (emphasis added). [6]

As a matter of plain language, these provisions do not apply to the AFFF Claims at issue in this Motion, namely product liability or common law causes of action seeking damages for personal injury and property damage. These product liability and common law claims are not claims to recoup cleanup costs or to require Tyco to undertake environmental remediation or response activities.

Further, as prior courts have recognized, the plain language of Paragraph 2 bars coverage only for liability for remediation under federal or state environmental laws such as CERCLA, a situation not presented by the AFFF Claims. As one court has observed in interpreting identical policy language in another insurer's pollution exclusion, the two clauses of Paragraph 2 mirror the bases of liability under the federal Superfund law:

> That the pollution exclusion provision would contain one clause addressing private remediation of pollution and a separate clause addressing remediation by governmental authorities is not surprising. The Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") itself addresses these two categories of costs in distinct subsections, one of which makes potentially responsible polluters liable for "all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan," and the other of which makes potentially responsible polluters liable for "any other

---

[6] Paragraph 2 of the pollution exclusion in the "Blended Pollution Exclusion" Endorsement is identical, except that Paragraph 2(a) refers to a "[r]equest, demand, order or *statutory or regulatory requirement*" to respond to pollutants. *See* Buschell Decl., Ex. 2 (Excerpt of Primary Policy No. GL 159-54-15 (6/29/07–6/29/08)), Blended Pollution Exclusion End., at 2.

> necessary costs of response incurred by any other person [*i.e.*, not a governmental entity] consistent with the national contingency plan." 42 U.S.C. §§ 9607(a)(4)(A)–(B). [The] pollution exclusion provision simply tracks CERCLA in separating out these two categories of liability.

*Hussey Copper, Ltd. v. Arrowood Indem. Co.*, 391 F. App'x. 207, 210 (3d Cir. 2010).

In other words, the first clause of Paragraph 2 excludes coverage for costs arising from a demand pursuant to environmental laws compelling the policyholder or a third party to take certain *environmental response actions*, while the second clause bars coverage for the recoupment of such costs in suits by "a governmental authority" (such as the EPA) where the government itself has taken response actions. The focus of both is on environmental response costs incurred for testing and remediation under environmental laws. The AFFF Claims assert covered product liability and common law causes of action for bodily injury or property damage (the express focus of Paragraph 1).

Decisions by courts across the country support this interpretation, holding that the terms "request, demand, or order" (with and without the additional reference to "statutory or regulatory requirement" that appears in the "Blended Pollution Exclusion" Endorsement) describe response action or remediation under environmental statutes regardless of whether such action or remediation is demanded by a governmental or non-governmental entity; these terms do not refer to private money damages claims—such as those asserted in the AFFF Claims here—for bodily injury or property damage. *See, e.g.*, *Richard Bldg. Supply I, LLC v. N. River Ins. Co.*, 2017 WL 5624468, at *2–3 (N.D. Ill. Nov. 22, 2017) (construing "[r]equest, demand, order or statutory or regulatory requirement" as describing "a demand by a regulatory agency to clean up, remove, or respond to the effects of pollutants") (citation and quotations omitted); *Cape Cod Mech. Sys., Inc. v. Cent. Mut. Ins. Co.*, 2008 WL 11511471, at *6 (D. Mass. June 13, 2008) (finding

"request, demand or order" requires threat of liability to regulators under environmental statute); *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 791 (Ariz. Ct. App. 2000) ("These provisions appear to be intended to preclude coverage for clean-up operations ordered under RCRA, CERCLA, and other federal or state environmental laws.").

Indeed, in another case, AIG itself characterized an exclusion for "loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement" in exactly this way, arguing that such language constituted "an exclusion for governmental mandated cleanup costs" that bars coverage for "costs to comply with statutory requirements or governmental directives to investigate and/or cleanup pollution." Def.'s Mem. in Opp'n to Pl.'s Mot. for Partial Summ. J. at 2, 10, 31, *Coffeyville Res. Refin. & Mktg., LLC v. Liberty Surplus Ins. Co.*, 2008 WL 5561172 (D. Kan. 2008) (attached as Ex. 12 to Buschell Decl.).

Tyco anticipates AIG will contend, contrary to its representation in *Coffeyville*, that this language somehow bars coverage for *any* amounts Tyco could be liable to pay to address "pollutants," without any of the limitations found in Paragraph 1—i.e., the paragraph that excludes coverage for the "release" of "pollutants" only from the policyholder's premises or its waste disposal activities. Indeed, not content to argue that Paragraph 2 excludes coverage for billions of dollars spent on government-mandated cleanup costs at various sites around the country under CERCLA, AIG would give Paragraph 2 an even broader scope—sweeping in the situations where coverage is specifically *preserved* in Paragraph 1. This reading would take Paragraph 2 beyond its plain language, beyond what other courts have found, beyond what AIG has argued in other cases, and beyond any reading that could harmonize Paragraphs 1 and 2 of the exclusion.

AIG's overbroad interpretation of Paragraph 2 would impermissibly render Paragraph 1 superfluous. Insurance policies, like all other contracts, must be read as a whole. *See, e.g.*, 2 Couch on Ins. § 21:19 (3d. 2023) ("the expressed intent of the parties is to be ascertained by examining the contract or policy as a whole"); *Gohde v. MSI Ins. Co.*, 679 N.W.2d 835, 838 (Wis. 2004) (similar); *Beal Sav. Bank v. Sommer*, 865 N.E.2d 1210, 1214 (N.Y. 2007) (similar). An interpretation of one provision that renders another provision meaningless or superfluous is not reasonable and should not be adopted. *See, e.g.*, Couch, *supra*, at § 22:43 (interpretation that "entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction"); *W. Bend Mut. Ins. Co. v. Calumet Equity Mut. Ins. Co.*, 926 N.W.2d 510 (Table), 510 (Wis. 2019) ("[W]e do not read a policy so as to render any of its terms superfluous."); *Beal*, 865 N.E.2d at 1213 ("A reading of the contract should not render any portion meaningless.").

Paragraph 1 of the pollution exclusion in the Primary Policies is carefully drafted to preserve coverage for "bodily injury" and "property damage" caused by the release of "pollutants" away from the insured's premises and not arising from waste disposal activities. *See* Buschell Decl., Ex. 1 (Primary Policy No. RMGL 612-36-20 (7/10/00–10/1/01)), Named Perils End., at 1. These carefully-drafted, coverage-preserving limitations would be rendered meaningless if the terms "loss, cost or expense" in Paragraph 2 — and the references to environmental response and cleanup activities in Paragraph 2 — were interpreted to apply to all liability, including product liability, arising from claims for "bodily injury" and "property damage" that are the subject of Paragraph 1. Paragraph 2 would, under this reading, exclude from coverage the very claims expressly carved out of the exclusion in Paragraph 1 and so render Paragraph 1 surplusage in violation of basic rules of contract interpretation. AIG's interpretation is thus not reasonable and should be rejected by the Court as a matter of law.

14

Further, Paragraph 2 cannot reasonably be interpreted to apply to claims for "property damage" or "bodily injury" because the terms do not even appear in Paragraph 2; they only appear in Paragraph 1. Paragraph 1 is expressly written to exclude only certain amounts that Tyco might be liable to pay for "bodily injury" and "property damage" allegedly caused by certain releases of "pollutants." In contrast, Paragraph 2 is written to exclude amounts that Tyco would have to pay for certain "loss, cost or expense" spent or incurred for testing, clean up, and related environmental response activities. AFFF Claims include causes of action seeking money damages from Tyco for bodily injury or property damage allegedly caused by exposure to AFFF, which are entirely distinct from having Tyco engage in, or pay for, "loss, cost or expense" incurred for cleanup under environmental laws.

Paragraph 2's omission of the terms "bodily injury" and "property damage" can only reasonably be read as purposefully leaving out claims for "bodily injury" and "property damage" from the scope of Paragraph 2 and limiting that part of the exclusion to the referenced form of liability. *See, e.g.*, *NFL Enters. LLC v. Comcast Cable Commc'ns, LLC*, 851 N.Y.S.2d 551, 557 (N.Y. App. Div. 2008) (use of similar but different terms in same contract "strongly implies that the terms are to be accorded different meanings"); *Kappers v. Progressive N. Ins. Co.*, 835 N.W.2d 290 (Table), ¶ 75 (Wis. Ct. App. 2013) (different terms in same provision "must mean something different" or insurer "would not have included both terms"). If AIG intended Paragraph 2 of the exclusion to apply to the same type of "bodily injury" and "property damage" claims as Paragraph 1, it was incumbent on AIG to say so expressly when writing and issuing its policy. *See, e.g.*, *Walker v. Erie Ins. Co.*, 178 N.Y.S.3d 650, 654 (N.Y. App. Div. 2022) (insurer bears "'heavy burden' of establishing that the exclusion is expressed in clear and unmistakable

15

language"); *Day v. Allstate Indem. Co.*, 798 N.W.2d 199, 206 (Wis. 2011) (a court may only "enforce exclusions that are clear from the face of the policy").

In short, because the AFFF Claims seek damages for bodily injury and property damage for purposes of Paragraph 1 of the Primary Policies' pollution exclusions, not Paragraph 2, and because Paragraph 1, by its terms, does not apply, these exclusions do not bar coverage for such claims as a matter of law.

## II.    The "Named Peril and Time Element Pollution Endorsement" Does Not Bar Coverage for the AFFF Claims.

The four AIG Umbrella Policies issued to Tyco during the 1999-2003 policy periods contain a straightforward exception to *both* Paragraphs 1 and 2 of the exclusion for the type of product liability claims at issue in the AFFF Claims. The "Named Peril and Time Element Pollution Endorsement" provides that "*this exclusion does not apply* to Bodily Injury, Property Damage, or Personal Injury arising out of . . . *The Products – Completed Operations Hazard.*" Buschell Decl., Ex. 3 (Excerpt of Umbrella Policy No. BE 8713678 (10/01/01–10/1/02)), Named Peril and Time Element Pollution End., at 1 (emphasis added).

As AIG well knows (and as is generally understood in the insurance world), the "Products – Completed Operations Hazard" is a reference, in relevant part, to the broad coverage grant that policies like those at issue here provide for product liability claims. Because the AFFF Claims arise from the sale and intended use of Tyco's AFFF products, they plainly fall within these policies' "Products – Completed Operations Hazard," and thus, there can be no reasonable dispute that the "Named Peril and Time Element Pollution Endorsement" contained in the 1999-2003 Umbrella Policies does not bar coverage for the AFFF Claims as a matter of law.

III.   **The "Named Peril and Time Element Pollution Self Insured Retention Endorsement (Products-Completed Operations Hazard Version)" Does Not Bar Coverage for the AFFF Claims.**

 The pollution exclusions contained in AIG's three Umbrella Policies for the 2005-2008 policy periods also do not bar coverage for the AFFF Claims.

A.   **The Exclusion in Paragraph 1 Does Not Apply.**

 Paragraph 1 of the "Named Peril and Time Element Pollution Self Insured Retention Endorsement (Products-Completed Operations Hazard Version)" contains substantially the same exception for Products-Completed Operations Hazard, subject to the additional requirement that a covered products claim must not arise from the product's disposal or treatment as waste:

> Paragraph 1. of this exclusion will not apply to Bodily Injury or Property Damage arising out of . . . any [release] of Pollutants and included within the Products-Completed Operations Hazard provided that Your Product or Your Work has not at any time been:
>
> (a)    discarded, dumped, abandoned, thrown away; or
>
> (b)    transported, handled, stored, treated, disposed of or processed as waste; by anyone

*E.g.*, *id.*, Ex. 4 (Excerpt of Umbrella Policy No. BE 2979931 (10/01/05–10/1/06)), Named Peril and Time Element Pollution Self Insured Retention Endorsement (Products-Completed Operations Hazard Version), at 1.

 This requirement largely mimics the waste-related language in the "Named Peril" and "Blended Pollution Exclusion" Endorsements, and so the AFFF Claims do not fall under the exclusion in these Umbrella Policies for the same reasons discussed in Section I.A, above. The AFFF Claims allege that Tyco's customers used AFFF for firefighting and training purposes and that such use of AFFF resulted in bodily injury and property damage for which the underlying plaintiffs seek damages. *See id.* The three Umbrella Policies for the 2005-2008 period thus

17

*expressly* preserve coverage for the alleged bodily injury and property damage at issue in these claims.

**B.    The Exclusion in Paragraph 2 Also Do Not Apply.**

The "Named Peril and Time Element Pollution Self Insured Retention Endorsement (Products-Completed Operations Hazard Version)" contains the exact same Paragraph 2 language as the "Blended Pollution Exclusion," only formatted as paragraph numbers 2 and 3 instead of 2(a) and 2(b):

> This insurance does not apply to . . .
>
> 2.    Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the Insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of Pollutants; or
>
> 3.    Any loss, cost or expense arising out of any claim or Suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of Pollutants.

*E.g.*, Buschell Decl., Ex. 4 (Excerpt of Umbrella Policy No. BE 2979931 (10/01/05–10/1/06)), Named Peril and Time Element Pollution Self Insured Retention Endorsement (Products-Completed Operations Hazard Version), at 1.

AIG's overbroad reading of this language fails for all of the same reasons as its overbroad reading of the same language in the "Blended Pollution Exclusion." *See* Section I.B., above. Like in the "Blended Pollution Exclusion," Paragraph 2 uses the terms "loss, cost or expense" to express the limited scope of Paragraph 2 to environmental cleanup costs, not to claims for damages for "property damage" or "bodily injury." That distinction manifestly has, and must be given, meaning. *See id*. In addition, interpreting the terms "loss, cost or expense" to include the damages sought through claims for "property damage" or "bodily injury" would

render all of the exceptions to Paragraph 1 (and Paragraph 1 itself) meaningless. *See id*. AIG's interpretation is no more reasonable when applied to this language than when applied to the identical language in the "Blended Pollution Exclusion." These provisions simply do not bar coverage for the AFFF Claims as a matter of law.

## CONCLUSION

For all of the foregoing reasons, the Court should grant Tyco's Motion for Partial Summary Judgment hold, as a matter of law, that the pollution exclusions at issue in this Motion do not preclude coverage for the product liability and common law causes of action alleging bodily injury and property damage asserted in the AFFF Claims.

Dated: March 18, 2024

WILLS MASSALON & ALLEN LLC

By: */s/ Christy Ford Allen*
Christy Ford Allen (SC Bar 07549)
Post Office Box 859
Charleston, South Carolina 29402
Tel:    (843) 727-1144
Email:  callen@wmalawfirm.net

and

COVINGTON & BURLING LLP

Allan B. Moore (admitted *pro hac vice*)
Timothy D. Greszler (admitted *pro hac vice*)
Alexis N. Dyschkant (admitted *pro hac vice*)
850 Tenth Street, NW
Washington, DC 20001
Tel:    (202) 662-5575
Email:  abmoore@cov.com

*Counsel for Tyco Fire Products LP*