# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| TYCO FIRE PRODUCTS LP, <br><br> *Plaintiff*, <br><br> v. <br><br> AIU INSURANCE COMPANY, *et al.*, <br><br> *Defendants*. | Civil Action No. 2:23-cv-02384-RMG <br><br> Hon. Richard M. Gergel |

**AIG INSURERS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEDUCTIBLES AND RETENTIONS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

ARGUMENT ....................................................................................................................... 4

    I.     IT WOULD BE PREMATURE FOR THE COURT TO ISSUE A RULING REGARDING THE OPERATION OF DEDUCTIBLES IN THE AIG PRIMARY POLICIES, WHERE INDEMNITY OBLIGATIONS HAVE YET TO BE TRIGGERED, AND WHERE THERE IS A DISPUTE REGARDING WHETHER COVERAGE IS AVAILABLE. ................................ 4

    II.    THE SIRS CONTAINED IN THE NAMED PERIL AND TIME ELEMENT ENDORSEMENTS IN THE POST-1999 UMBRELLA POLICIES ARE TO BE APPLIED BY THEIR PARTICULAR TERMS AND CONDITIONS. ........................................................................................ 5

        A.     Tyco Mischaracterizes the Named Peril and Time Element Endorsements as Exclusions Only, Directly Disregarding the Plain Language of the Endorsements. ................................................................. 6

        B.     Tyco's Interpretation of the Drop-Down Provisions Within the Umbrella Policies Erroneously Negates Applicability of the SIRs under the Named Peril and Time Element Endorsements. ......................... 9

        C.     The SIR Provisions in the Named Peril and Time Element Endorsements in the 1999-2002 Umbrella Policies Reinforce the AIG Insurers' Position as to the Applicability of the SIR Provisions in the 2003-2007 Umbrella Policies ........................................................ 11

    III.   THE 2001-2007 UMBRELLA POLICIES EACH HAVE AN OPERATIVE RETAINED LIMIT ENDORSEMENT SETTING AN ATTACHMENT POINT ABOVE WHICH COVERAGE MAY APPLY ...................................... 12

CONCLUSION .................................................................................................................. 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A.S. Abell Co. v. Chell*,
 412 F.2d 712 (4th Cir. 1969) ..................................................................................................4

*Cooper Indus. v. Liberty Mut. Ins. Co.*,
 No. H-91-3158, 1994 U.S. Dist. LEXIS 21731 (S.D. Tex. Jan. 3, 1994).........................13, 14

*Hale v. Am. Family Mut. Ins. Co.*,
 639 N.W.2d 802 (Wis. Ct. App. 2001) ....................................................................................9

*Marks v. Bedford Underwriters, Ltd.*,
 2015 WI App 44, 866 N.W.2d 393 ........................................................................................10

*Md. Arms Ltd. P'ship v. Connell*,
 2010 WI 64, 786 N.W.2d 15..................................................................................................10

*Permanent Gen. Assurance Corp. v. Moore*,
 341 F. Supp. 2d 579 (D.S.C. 2004).........................................................................................5

**STATUTES**

28 U.S.C. § 1292(b) .......................................................................................................................15

**OTHER AUTHORITIES**

1 New Appleman on Insurance Law ..............................................................................................5

Defendants AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa., and New Hampshire Insurance Company (collectively, the "AIG Insurers"), by and through its undersigned counsel, respectfully submit this Opposition to Plaintiff's Motion for Partial Summary Judgment Against AIG on Deductibles and Retentions ("Tyco's Retention Motion").

## INTRODUCTION

As Tyco notes in both of its partial summary judgment motions, the AIG Insurers issued to Tyco and its subsidiaries dozens of different policies over the course of decades. Those policies come in many different varieties, sit at different layers in Tyco's insurance coverage program, and, most importantly, are each subject to specific and often distinct terms, conditions, and provisions concerning the coverage provided or excluded thereunder. Tyco's Retention Motion seeks to ignore such specific policy provisions, and in doing so, would have the Court re-write insurance policies that were negotiated and agreed upon by the AIG Insurers, Tyco's risk management department, and Tyco's sophisticated insurance brokers many years ago. However, it is blackletter law and a bedrock principle of contractual interpretation (which applies to insurance contracts) that the plain and unambiguous terms of the policies dictate the coverage provided and the conditions upon which such coverage attaches.

Turning to Tyco's actual substantive arguments – *first*, the AIG Insurers do not disagree with Tyco on its first argument: that payment of a deductible erodes a policy's limits. That is commonly understood in the insurance industry and AIG has not disputed it in this litigation. The only policies with deductibles at issue in this litigation are primary layer policies. The umbrella and excess policies under which Tyco seeks coverage sit above those primary policies and do not

get triggered until exhaustion of the underlying primary policies. While payment of deductibles erodes a portion of those primary policies' limits, Tyco has not presented any evidence that it has actually satisfied such deductibles. Nor has Tyco provided any evidence that remaining limits on the primary policies, after erosion via deductibles, have been exhausted by payment of indemnity. That is not surprising, because no liability for the AFFF Suits has been imposed on Tyco.[1] And even if such liability existed, the AIG Insurers dispute that coverage exists at all under any of the primary policies due to various provisions and exclusions. Thus, coverage under any higher layer excess and umbrella policies has not been triggered. There is no reason for the Court to weigh in on how hypothetical losses may erode the limits of policies that only hypothetically (at best) provide coverage for such losses. Tyco's motion is thus premature.

*Second*, even if the higher layer AIG policies were triggered, there are a number of those policies with "Named Peril and Time Element Pollution Endorsements" ("NPTE Endorsements") imposing significant self-insured retentions ("SIRs") for pollution liability. SIRs are amounts that the insured agrees to satisfy before a policy will respond at all, and thus represent the insured's decision to *retain* a portion of its risk. Tyco now attempts to nullify certain SIRs by arguing that the SIRs do not line up with Tyco's current expectations regarding how umbrella policies should work. The Court should reject Tyco's post-hoc repudiation of its agreement to retain significant portions of its pollution liability risk and apply the SIRs based on the plain and unambiguous language of the NPTE Endorsements.

Tyco's chief argument with respect to the at-issue SIRs concerns the fact that they apply to "coverage granted" under the NPTE Endorsements. Tyco argues that the SIRs cannot apply

---

[1] The AIG Insurers understand that Tyco settled with one category of underlying claimants, the municipal water providers, as of April 12, 2024. That settlement has not yet been approved by the Court, and in any event, is only applicable to one of the four principal categories of suits against Tyco.

because the NPTE Endorsements provide the policies' relevant pollution exclusions and thus coverage can be "granted" under the endorsement. Tyco's reading of these SIRs is reductive to the point of absurdity. It is true that the endorsements lay out the pollution exclusions under those umbrella policies. Those endorsements, however, also provide *exceptions* to the pollution exclusion that *allow* coverage for pollution liability arising out of "named perils" (such as products liability) or for certain "time element" losses (*i.e.*, sudden accidents). In other words, the exceptions *give back coverage* under the NPTE Endorsements for pollution liability that would otherwise be excluded. Tyco's argument that coverage cannot be granted under the NPTE Endorsements should be rejected, and the SIRs therefore apply to the AFFF Suits (to the extent there is even coverage under the policies, which AIG disputes).

*Third*, Tyco argues that the retained limits imposed in certain Retained Limit Endorsements can be satisfied by the exhaustion of underlying insurance. Based on the language of such endorsements, the AIG Insurers do not disagree regarding the operation of such language of the Retained Limits Endorsements, at least in the abstract. However, Tyco argues that the Retained Limit Endorsements in two umbrella policies do not apply at all because those endorsements are incomplete in the copies produced by the AIG Insurers. Tyco ignores that the only copies able to be located by the AIG Insurers are "archive" copies that would not necessarily contain completed schedules in such endorsements. Whether those endorsements were properly filled out in other copies of the policies, such as those issued to Tyco and its brokers, is a material question of fact that is not appropriately decided on summary judgment. But, if the Court does decide that issue, it can reasonably assume, based on Tyco's own arguments, that the retained limits in those two umbrella policies equals the underlying primary policies' limits, as is the case with every other umbrella policy at issue.

Thus, for the reasons outlined above and discussed further below, Tyco's position that this Court should deny Tyco's motion for partial summary judgment.

## ARGUMENT

I. **IT WOULD BE PREMATURE FOR THE COURT TO ISSUE A RULING REGARDING THE OPERATION OF DEDUCTIBLES IN THE AIG PRIMARY POLICIES, WHERE INDEMNITY OBLIGATIONS HAVE YET TO BE TRIGGERED, AND WHERE THERE IS A DISPUTE REGARDING WHETHER COVERAGE IS AVAILABLE**

Tyco correctly points out that many of the AIG primary policies contain deductibles ranging from $500,000 to $7.5 million. The AIG Insurers agree with Tyco that payment of a deductible erodes a policy's limits. That is how deductibles are intended to work. With that said, it would be premature for the Court to issue a ruling at this time regarding the operation of primary policy deductibles.

Specifically, as set forth in the AIG Insurers' counterclaims, coverage has not yet attached under the primary policies or the higher-layer excess and umbrella policies because the AFFF Suits against Tyco may not exceed the primary policies' deductible amounts. In fact, no indemnity is owed yet under any of Tyco's policies, because no liability has been imposed in the underlying AFFF Suits. Tyco has recognized as much in its discovery responses in the parallel coverage action pending in Wisconsin state court. *See* Byers Declaration, Ex. A at 5 (acknowledging "PFAS Suits that have not resulted in Tyco Fire Products paying damages through settlement or judgment"). And even if liability is ultimately imposed in the AFFF Suits, the AIG Insurers dispute that coverage exists at all under any of the policies at issue due to various provisions and exclusions. Accordingly, Tyco's motion is premature—there is no reason for the Court to weigh in on how yet-to-be-incurred losses may erode the limits of policies that do not even provide coverage for the AFFF Suits (as will be ultimately proven by the AIG Insurers in this litigation). *See A.S. Abell*

*Co. v. Chell*, 412 F.2d 712, 719 (4th Cir. 1969) ("[A] declaratory judgment may not be given for a purely hypothetical situation [or as] … an advisory opinion."); *Permanent Gen. Assurance Corp. v. Moore*, 341 F. Supp. 2d 579, 581 (D.S.C. 2004) (declaratory judgment regarding bad faith was "premature because a judgment ha[d] not been entered in the underlying cases that expose[d] [the insured] to a verdict in excess of the insurance policy limits").

Indeed, if Tyco ultimately proceeds to trial in the underlying AFFF litigations and prevails, there will never be a settlement or judgment to erode even a single primary policy deductible. Thus, any ruling at this stage regarding the operation of primary policy deductibles would be premature. The Court should wait to address primary policy deductibles until (i) there is a judgment against Tyco or final settlement in an underlying AFFF Suit; and (ii) the question of whether coverage exists for that judgment or settlement under the at-issue AIG policies has been resolved.

## II. THE SIRS CONTAINED IN THE NAMED PERIL AND TIME ELEMENT ENDORSEMENTS IN THE POST-1999 UMBRELLA POLICIES ARE TO BE APPLIED BY THEIR PARTICULAR TERMS AND CONDITIONS.

Even if the primary policies were exhausted by the payment of deductibles and indemnity coverage, there are a number of umbrella policies sitting above the primary policies that impose significant self-insured retentions or "SIRs." SIRs are amounts that the insured agrees to satisfy before a policy will respond at all, and thus represent the insured's decision to *retain* a portion of its risk. *See e.g.,* 1 New Appleman on Insurance Law Library Edition § 1A.02 (2024) ("An SIR represents the amount of risk (defense and indemnity) that the insured retains before true coverage applies."). Tyco attempts to nullify certain large SIRs associated with pollution liability imposed in certain policies by advancing willfully obtuse and patently unreasonable policy interpretations and wholly unsupported contrivances concerning Tyco's expectations. The Court should reject

Tyco's post-hoc repudiation of its agreement to retain significant portions of potentially covered pollution risks and apply the SIRs based on the policies' plain and unambiguous language.

### A. Tyco Mischaracterizes the Named Peril and Time Element Endorsements as Exclusions Only, Directly Disregarding the Plain Language of the Endorsements.

The "Named Peril and Time Element" Endorsements (the "NPTE Endorsements") in the 2000s umbrella policies issued to Tyco contain the SIRs in dispute. Tyco's arguments concerning the SIRs are fundamentally flawed from the outset because Tyco ignores the fact that the policies are not identical. Even among the umbrella policies issued in the 2000s, the NPTE Endorsements are different and impose SIRs in separate manners.

The 1999-2002 umbrella policies' NPTE Endorsements apply an SIR to any pollution occurrence that is covered under the umbrella policy, but is excluded from coverage in the underlying primary policy:

> It is further agreed that solely as respects any coverage granted by this endorsement, the following shall apply to an occurrence which is covered by this policy but not covered by the underlying policies listed in the Schedule of Underlying Insurance or any other underlying insurance providing coverage to the Insured due to an exclusion(s) contained therein:. . .

*See* Byers Declaration, Ex. B, Policy No. 7394784, Endorsement #2, Named Peril and Time Element Pollution Endorsement.

Tyco relies on this language to assert that the SIRs in these 1999-2002 umbrellas should not apply because Tyco contends the primary policies do not exclude coverage for the AFFF Suits. By the plain language of the endorsement, it is clear that the SIRs as to the 1999-2002 umbrella policies *only* apply when: (1) coverage is granted by the endorsement; and (2) the occurrence is covered by the umbrella policy but is not covered under the primary policies. The AIG Insurers' do not dispute these clear and unambiguous terms of the endorsement. However, Tyco's contention that coverage is not excluded for the AFFF Suits under the primary policies is an issue that *is*

-6-

heavily disputed. As discussed above, the fact that liability has not been determined under the primary policies prevents this Court from being able to determine the applicability of the SIRs in these NPTE Endorsements at all, and a summary judgment motion on this issue is premature.

Tyco further ignores the fact that the NPTE Endorsements contained in the 2003-2007 umbrella policies represent a clear and intentional departure from their predecessors. Specifically, the 2003-2007 NPTE Endorsements provide in relevant part: "The above Self-Insured Retention applies *whether or not* there are any available policies listed in the Schedule of Underlying Insurance or other insurance providing coverage to the Insured." *See* Byers Declaration, Ex. C Policy No. 9835073, Endorsement No. 10, Named Peril and Time Element Pollution Self-Insured Retention Endorsement (emphasis added). Ignoring this key difference between the two sets of umbrella policies, Tyco relies entirely on disputed material issues of fact concerning the parties' overall understanding of Tyco's coverage program at the time it was put in place. Tyco has not provided any evidence supporting these factual contentions and cannot obtain summary judgment on such a basis.

Moreover, Tyco's chief argument with respect to all of the NPTE Endorsements and the SIRs imposed therein concerns the fact that, under each such endorsement, the SIRs apply to each occurrence that is rendered covered by the terms of the endorsements. Tyco argues that the SIRs cannot apply because the NPTE Endorsements provide the policies' relevant pollution exclusions and thus no occurrence can be "granted" coverage by the endorsement. However, Tyco's argument incorrectly characterizes the NPTE Endorsements. While the NPTE Endorsements certainly work to exclude pollution-related liability under the umbrella policies, they also provide *exceptions* which provide for coverage arising out of certain "named perils" (such as products liability) or certain "time element" losses (i.e., sudden accidents). This is consistent with the very name of the

endorsement—Named Peril and Time-Element Endorsement. By its plain language the title refers to what is *covered* under that particular endorsement, not what is excluded. Putting aside the AIG Insurers' non-pollution related coverage defenses, the only means by which Tyco could possibly obtain coverage under these umbrella policies for the AFFF Suits against them is via the named peril exception for products-completed operations, because the exclusionary language would otherwise prohibit coverage entirely.[2]

Tyco knows this is the case: in its companion motion for partial summary judgment on pollution exclusions, Tyco moved on each of the 2000s umbrella policies *except* for the two umbrella policies with Named Peril and Time Element Endorsements that clearly do not have any potentially applicable exceptions whatsoever (the 2003 and 2004 umbrella policies). In turn, Tyco has implicitly acknowledged its own recognition that if there is to be any coverage for the AFFF Suits under the 2000s umbrella policies, it will have to be found in a named peril exception to the pollution exclusion. Where that is the case, the SIRs apply by clear and unambiguous terms.

Moreover, it is particularly relevant that, by clear and unambiguous language, these SIRs apply separately to *each* occurrence for which coverage is sought. That is so because Tyco asserts that the choice of law here is irrelevant because any potentially implicated jurisdictions' laws are in agreement. However, according to Tyco itself, that cannot be true. Judge Morrison, in the parallel action between Tyco and its carriers in Wisconsin, has already held that, under Wisconsin law, each implicated water provider claimants' contamination is a separate occurrence. Based on that ruling, under the 2000s umbrella policies, a separate SIR would apply to the liability awarded

---

[2] As explained in the AIG Insurers' Opposition to Tyco's Motion for Partial Summary Judgment Against AIG and TIG Regarding Certain Pollution Exclusions (hereinafter, "AIG Insurers' Pollution Exclusion Opposition"), it is the AIG Insurers' position that these exceptions do not reinstate coverage, in whole or in part depending on the specific policy, for the AFFF Suits.

to each water provider. Meanwhile, Tyco argued in its now-dismissed South Carolina state court action before Judge Toal that under South Carolina law, all of the water provider suits should be considered as arising out of a single occurrence. If that were the case, only one SIR would apply to all of Tyco's potential water provider liability. Clearly, then, the choice of law is critical here.[3]

Tyco's sweeping generalizations that the NPTE Endorsements operate solely as exclusions is just another example of Tyco's disregard of the actual policy terms as well as an attempt to sidestep applicable SIRs. The Court should not accept such an absurd reading of the NPTE Endorsements and deny the motion for summary judgment.

> **B.    Tyco's Interpretation of the Drop-Down Provisions Within the Umbrella Policies Erroneously Negates Applicability of the SIRs under the Named Peril and Time Element Endorsements.**

Tyco asserts that the alleged "inapplicability" of the SIRs in the NPTE Endorsements is supported by the "nature" of umbrella policies and the "typical manner" in which those policies operate. However, such reliance on the general nature and purpose of umbrella policies exceeds the bounds of the plain language of the policies at issue. At the end of the day, the nature, purpose, or function of umbrella policies has no bearing or influence on what the actual terms and conditions of the relevant policies say. Where the policy language is unambiguous, as it is here, the plain language applies, and no extrinsic evidence should be considered to change the meaning of that language and contra preferentem does not apply. *See Hale v. Am. Family Mut. Ins. Co.*, 639 N.W.2d 802, at *6 (Wis. Ct. App. 2001) ("where the intent of the parties is made clear by the language and the nature of the agreement, *we do not resort to extrinsic evidence to determine that intent*.") (emphasis added). Further, the terms, conditions and limitations of the policies at

---

[3] As explained in the AIG Insurers' Pollution Exclusion Opposition, Wisconsin law should be applied to the interpretation of the policies at issue.

issue including the umbrella policies were the result of decades of negotiations between sophisticated parties, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Moreover, Tyco contends that somehow, the language and the structure of the policies support it reading the relevant SIR clause out of existence. *See e.g.,* Tyco Pl. Mot. Summ. J., Dkt. # 257 at 13. This argument is completely untethered from the language of the policies. While there is no dispute that the umbrella policies will drop down pursuant to their relevant drop down provisions, those provisions in no way negate the plain language as to when and how the SIRs apply. With respect to the NPTE Endorsements, the SIRs clearly and unambiguously apply for "[e]ach [occurrence] ([a]s respects all damages arising out of any discharge, dispersal, seepage, migration, release or escape of [p]ollutants covered under these endorsements]." *See* Byers Declaration, Ex. C, Policy No. 9835073, Endorsement No. 10, Named Peril and Time Element Pollution Self-Insured Retention Endorsement. Tyco cannot credibly claim that the Court should disregard these clear policy terms by virtue of the fact that it appears in an umbrella policy. This argument contravenes blackletter law as to insurance contract interpretation—the same principles put forth by Tyco itself in other briefing. *See* Tyco Pl. Mot. Summ. J., Dkt. # 256; *Md. Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶45, 786 N.W.2d 15, 25 ("When possible, contract language should be construed to give meaning to every word, 'avoiding constructions which render portions of a contract meaningless, inexplicable or mere surplusage.'"); *Marks v. Bedford Underwriters, Ltd.*, 2015 WI App 44, ¶26, 866 N.W.2d 393, 403 ("[A] contract is to be construed so as to give a

reasonable meaning to each provision of the contract, and that courts must avoid a construction which renders portions of a contract meaningless, inexplicable or mere surplusage…insurance policies should be given a reasonable interpretation and not one which leads to an absurd result."). The only logical reading is that the umbrella policies at issue cover a wide array of risks, including, *potentially* pollution from products, but the AIG Insurers and Tyco agreed to cede a portion of that risk back to Tyco through imposition of an SIR.

Tyco's arguments with respect to the interplay between the drop down provisions of the umbrella policies and the SIRs contained within the NPTE Endorsements amount to saying that when Tyco's primary polices are exhausted, the umbrella policies merely fill in the gap, following form to all of the terms, conditions and exclusions of the primary policies. Not a single umbrella policy at issue is a follow form policy. All of the relevant umbrella policies provide in one way or another that "[v]arious provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." *See* Byers Declaration, Ex. C, Policy No. 9835073. In the case of the umbrella policies, part of the contract includes meeting the SIRs contained within the NPTEs. If AIG had intended any of the umbrella policies to follow form, it would have expressly done so, as it has done with other policies issued to Tyco.

**C.     The SIR Provisions in the Named Peril and Time Element Endorsements in the 1999-2002 Umbrella Policies Reinforce the AIG Insurers' Position as to the Applicability of the SIR Provisions in the 2003-2007 Umbrella Policies.**

With respect to the 1999-2002 Umbrella Policies, if coverage is not excluded in the underlying primary policies and such policies are exhausted, then the SIRs contained in the NPTE Endorsements for the 1999 to 2002 policies are *only*, by their plain terms, inapplicable to the underlying AFFF Suits. However, this determination cannot be made at this stage, as the Court has not yet decided whether coverage for the AFFF Suits is excluded in the underlying primary policies

-11-

– *e.g.*, because of certain pollution exclusions in the primary policies as well as other coverage defenses such as whether the AFFF Suits allege an "occurrence" and whether Tyco expected or intended the alleged harm. Indeed, although not appropriate for this motion, the AIG Insurers have adduced significant evidence showing that Tyco turned a blind eye to the fact that its AFFF product degraded into PFAS and knew that it was polluting the environment and causing bodily harm. As explained in the AIG Insurers' Pollution Exclusion Opposition, it is thus not surprising that the "Request" and "Governmental Authority" exclusions in the AIG primary policies apply to preclude coverage for the AFFF Suits.

The language in the NPTE Endorsements in the 2003-2007 umbrella policies is markedly different. Application of the SIRs in the 2003-2007 NPTE Endorsements does not hinge on whether there is coverage under the primary policies. Instead, under the plain terms, the retention always applies irrespective of whether there is coverage under the primary policies. This difference reflects that Tyco is to bear a greater portion of risk for potentially covered pollution risks, under the 2003-2007 policy years. This change in language between the two sets of policies must be given effect.

### III.   THE 2001-2007 UMBRELLA POLICIES EACH HAVE AN OPERATIVE RETAINED LIMIT ENDORSEMENT SETTING AN ATTACHMENT POINT ABOVE WHICH COVERAGE MAY APPLY.

The 2001-2007 AIG umbrella policies each include a Retained Limit Endorsement specifying an attachment point (i.e., "Retained Limit") above which coverage may potentially apply. The AIG Insurers do not dispute that, *if coverage were available* for the AFFF Suits under the AIG primary policies, then any "[a]mounts received through such policies" would apply to reduce or exhaust the Retained Limits in the corresponding umbrella policies. That is in fact, what the umbrella policies say. AIG does, however, disagree that coverage is available for the AFFF

Suits under the AIG primary policies for a number of reasons, several of which have nothing to do with application of pollution exclusions (*e.g.*, because the AFFF Suits do not allege a covered "occurrence" and because Tyco expected or intended the harm alleged). The AIG Insurers' position, therefore, is that any liability ultimately imposed in the underlying AFFF Suits will not trigger indemnity obligations under the AIG primary policies and, in turn, there cannot possibly be any "amounts received" under such policies that could apply to reduce or exhaust any Retained Limits in the 2001-2007 AIG umbrella policies.

Tyco also argues that the Retained Limit Endorsements in two umbrella policies – specifically the 2001 and 2002 AIG umbrella policies – do not apply at all because those endorsements are missing the Schedule of Retained Limits in the copies produced by the AIG Insurers. Tyco seeks to completely wipe out the Retained Limit from the 2001 and 2002 umbrella policies, in contrast to structure of the other 2001-2007 AIG umbrella policies. But as Tyco itself argues, the limits of the underlying AIG primary policies "typically mirror the Retained Limit." *See* Tyco Pl. Mot. Summ. J. at 18, Dkt. # 256. Thus, the only reasonable conclusion, in light of the structure of the other AIG umbrella policies issued between 2001-2007, is that the Retained Limits in the 2001 and 2002 umbrella policies equals the underlying primary policies' limits, as is the case with every other umbrella policy at issue.

In any event, this issue is not appropriate for summary judgment at this stage. Tyco fails to mention that the only copies of the 2001 and 2002 umbrella policies that have been located by the AIG Insurers are "archive" copies that would not necessarily contain completed schedules in such endorsements. Whether the Schedule of Retained Limits was properly included with the Retained Limit Endorsement in other copies of the policies, such as those issued to Tyco and its brokers, is a material question of fact that is not appropriately decided on summary judgment. *See, e.g.,*

*Cooper Indus. v. Liberty Mut. Ins. Co.*, No. H-91-3158, 1994 U.S. Dist. LEXIS 21731, at *13 n.4 (S.D. Tex. Jan. 3, 1994) ("A fact issue exists as to whether such an endorsement was part of the lost policies and plaintiffs will bear the burden of proving its existence at trial.").

## CONCLUSION

For the foregoing reasons, the AIG Insurers respectfully request that the Court deny Tyco's Motion for Partial Summary Judgment as against the AIG Insurers.

Respectfully submitted,

**COLLINS & LACY, P.C.**

*/s/ Christian Stegmaier*
Christian Stegmaier (S.C. Bar No. 68648)
1330 Lady Street, 6th Floor
Columbia, South Carolina 29201
cstegmaier@collinsandlacy.com
Telephone: (803) 256-2660

**ALSTON & BIRD LLP**

Adam J. Kaiser (admitted *pro hac vice*)
Alexander S. Lorenzo (admitted *pro hac vice*)
Matthew B. Byers (admitted *pro hac vice*)
90 Park Avenue, 15th Floor
New York, New York 10016
adam.kaiser@alston.com
alexander.lorenzo@alston.com
matt.byers@alston.com
Telephone: (212) 210-9400

April 15, 2023
Columbia, South Carolina.

*Counsel for Defendants AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa., and New Hampshire Insurance Company*

-14-

**CERTIFICATE OF SERVICE**

I hereby certify that on April 15, 2023, I electronically filed the foregoing DEFENDANTS AIU INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., AND NEW HAMPSHIRE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEDUCTIBLES AND RETENTIONS using the Court's CM/ECF system, which will automatically send notification of such filing to all counsel of record.

**COLLINS & LACY, P.C.**

*/s/ Christian Stegmaier*
Christian Stegmaier (S.C. Bar No. 68648)
1330 Lady Street, 6th Floor
Columbia, South Carolina 29201
cstegmaier@collinsandlacy.com
Telephone: (803) 256-2660

*Counsel for Defendants AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa., and New Hampshire Insurance Company*