**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| TYCO FIRE PRODUCTS LP, | Civil Action No. 2:23-cv-02384-RMG |
| *Plaintiff*, | Hon. Richard M. Gergel |
| v. | |
| AIU INSURANCE COMPANY, *et al.*, | |
| *Defendants*. | |

**AIG INSURERS' OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AGAINST AIG AND TIG REGARDING
CERTAIN "POLLUTION EXCLUSIONS"**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................- 1 -

FACTUAL BACKGROUND ..................................................................................- 5 -

ARGUMENT ........................................................................................................- 7 -

I.  WISCONSIN LAW APPLIES TO RESOLUTION OF THE ISSUES PRESENTED BY TYCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT ...............................................................................................- 7 -

II.  THE POLLUTION EXCLUSIONS ARE NOT LIMITED TO TRADITIONAL ENVIRONMENTAL POLLUTION. .............................- 9 -

    A.  Tyco's Contention That The Pollution Exclusions Are Intended to Apply Only to "Traditional Environmental Pollution" Is Contrary to the Plain Language of the Pollution Exclusions. .............................................- 9 -

    B.  To the Extent the Court Looks Beyond the Plain Language of the Policies, Extrinsic Evidence Refutes Tyco's Claims Regarding the Underwriting Intent of the Pollution Exclusions....................................................- 12 -

III.  THE "NAMED PERIL" AND "BLENDED POLLUTION EXCLUSION" ENDORSEMENTS BAR COVERAGE FOR THE AFFF SUITS .............................- 16 -

    A.  The Paragraph 1(b) Exclusion Applies Because AFFF Is a Waste at the Time it Causes Injury.......................................................................- 16 -

    B.  The Exclusionary Language in Paragraph 2 Applies to Preclude Coverage. ...- 19 -

IV.  COVERAGE FOR PRODUCTS LIABILITY CLAIMS UNDER THE NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENTS IN THE 1999-2003 AIG UMBRELLA POLICIES IS SUBJECT TO SIGNIFICANT PER-OCCURRENCE SELF INSURED RETENTIONS. ..................................................- 24 -

V.  THE "NAMED PERIL AND TIME ELEMENT POLLUTION SELF INSURED RETENTION ENDORSEMENT" IN THE 2005-2008 AIG UMBRELLA POLICIES EXCLUDES COVERAGE FOR THE AFFF SUITS. ...............................- 25 -

CONCLUSION..................................................................................................- 26 -

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Cape Cod Mech. Sys., Inc. v. Cent. Mut. Ins. Co.*,
    No. 06cv10673-NG, 2008 WL 11511471 (D. Mass. June 13, 2008) .....................................22

*Century Indemnity Company, et al. v. Tyco Fire Products LP, et al.*,
    No. 2022CV000283 ..............................................................................................................8

*City of Sioux Falls v. 3M Co. et al.*,
    No. 2:19-cv-01806 (D.S.C.) ...................................................................................................5

*Coffeyville Res. Refin. & Mktg., LLC v. Liberty Surplus Ins. Co.*,
    No. 608CV01204, 2008 WL 5561172 (D. Kan. 2008) .........................................................23

*Donnelly v. 3M Co., et al.*,
    No. 2:20-cv-00209 (D.S.C.) ...................................................................................................6

*Evanston Ins. Co. v. AJ's Elec. Testing & Serv., LLC*,
    No. 1:15-cv-01843-JMC, 2016 U.S. LEXIS 8144 (D.S.C. Jan. 26, 2015) .............................8

*First Horizon Nat'l Corp. v. Hous. Cas. Co.*,
    No. 2:15-cv-2253-SHL-dkv, 2016 U.S. Dist. LEXIS 142330 (W.D. Tenn. Oct. 5,
    2016) ....................................................................................................................................23

*Gentile v. 3M Co., et al.*,
    No. 2:20-cv-02318 (D.S.C.) ................................................................................................5, 6

*Great Am. Ins. Co. v. Ace Am. Ins. Co.*,
    325 F. Supp. 3d 719 (N.D. Tex. 2018) .................................................................................18

*Hale v. Am. Family Mut. Ins. Co.*,
    639 N.W.2d 802 (Wis. Ct. App. 2001) ...................................................................................9

*Hirschhorn v. Auto-Owners Ins. Co.*,
    2012 WI 20, 809 N.W.2d 529 ..............................................................................................11

*In re Wash. Mut. Mortg. Backed Sec. Litig.*,
    No. C09-37 MJP, 2011 U.S. Dist. LEXIS 99452 (W.D. Wash. Sep. 2, 2011) .....................23

*Integon Nat'l Ins. Co. v. Gomez*,
    No. 2:19-cv-02958-DCN, 2020 U.S. Dist. LEXIS 219237 (D.S.C. Apr. 21, 2020) .................8

*Jensen v. Selective Ins. Co.*,
    Civil Action No. 4:12-cv-02133-RBH, 2013 U.S. Dist. LEXIS 85856 (D.S.C. June
    18, 2013) ................................................................................................................................1

*Lapolla Indus., Inc. v. Aspen Specialty Ins. Co.*,
    566 Fed. Appx. 95 (2d Cir. 2014) ........................................................................11

*Nautilus Ins. Co. v. SER Trucking, Inc.*,
    No. CV 11-00172 ..................................................................................................18

*Pa. Manufacturers' Ass'n Ins. Co. v. R.E. Michael Co.*,
    No. WMN-08-541, 2008 U.S. LEXIS 129204 (D. Md. Aug. 13, 2008) .................11

*Park-Ohio Industries, Inc. v. Home Indem. Co.*,
    975 F.2d 1215 (6th Cir. 1992) .............................................................................11

*Peace v. Nw. Nat'l Ins. Co.*,
    228 Wis. 2d 106 (1999) ....................................................................................10, 11

*Preisler v. Gen. Cas. Ins. Co.*,
    2014 WI 135, 857 N.W.2d 136..............................................................................17

*Richardson v. Nationwide Mut. Ins. Co.*,
    826 A.2d 311 (D.C. 2003) ....................................................................................11

*Russell v. McGrath*,
    135 F. Supp. 3d 427 (D.S.C. Sept. 25, 2015)......................................................7, 8

*Trustgard Ins. Co. v. Collins*,
    942 F.3d 195 (4th Cir. 2019) ..................................................................................2

*Wilson Mut. Ins. Co. v. Falk*,
    2014 WI 136, 857 N.W.2d 156,171..................................................................11, 20

*Wisconsin v. 3M Co., et al.*,
    No. 2:23-cv-00028 (D.S.C.)....................................................................................6

*Zogenix, Inc. v. Federal Insurance Co.*,
    No. 4:20-cv-06579-YGR, 2022 U.S. Dist. LEXIS 158481 (N.D. Cal. May 26, 2022)...........21

**STATUTES**

S.C. Code Ann Code § 36-61-10 .................................................................................7

S.C. Code Ann. § 38-61-10...................................................................................7, 8

Defendants AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa., and New Hampshire Insurance Company (collectively, the "AIG Insurers"), by and through its undersigned counsel, respectfully submit this Opposition to Plaintiff's Motion for Partial Summary Judgment Against AIG and TIG Regarding Certain Pollution Exclusions.

## INTRODUCTION

Tyco seeks insurance coverage for thousands of lawsuits alleging that Tyco's product, AFFF, releases PFAS, a group of toxic chemicals, and that such toxic chemicals have been discharged or released into the environment, causing widespread pollution resulting in bodily injury or property damage (the "AFFF Suits"). In their complaints, the underlying claimants demand that Tyco pay damages to address the costs and expenses of responding to the various effects of such chemicals. Tyco seeks insurance coverage under policies issued by the AIG Insurers, including those issued from June 1, 1990 through October 1, 2013 (the "AIG Policies"). However, many of the AIG Policies under which Tyco seeks coverage expressly preclude insurance coverage for the exact sort of pollution alleged in the AFFF Suits.

As an initial matter, the AIG Insurers dispute that coverage exists at all due to Tyco's inability to prove that there has been a covered occurrence due to Tyco's longstanding knowledge of the harms of AFFF. It is Tyco's initial burden to show that coverage exists in the first place, before any discussion of the application of exclusions can be had. *Jensen v. Selective Ins. Co.*, Civil Action No. 4:12-cv-02133-RBH, 2013 U.S. Dist. LEXIS 85856, at *6 (D.S.C. June 18, 2013) ("It is the insured's burden to establish that a claim falls within the coverage of an insurance contract."). Moreover, it is Fourth Circuit law that any decision on the AIG Insurers' indemnity

obligations is premature where no underlying liability against Tyco has been established. *See Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019) ("[S]uits about the duty to indemnify—unlike the duty-to-defend suits—would ordinarily be advisory when the insured's liability remains undetermined.").[1]

      As to the AIG Policies at issue, and the pollution exclusions therein, Tyco now moves for partial summary judgment regarding a subset of the pollution exclusions contained in the AIG Policies – namely, (i) the "Named Perils Endorsement" or "Blended Pollution Exclusion" found in primary policies issued to Tyco by the AIG Insurers in the 1990s and 2000s; and (ii) the "Named Peril and Time Element" pollution exclusion endorsements contained in umbrella policies issued to Tyco by the AIG Insurers in the 1990s and 2000s (collectively the "Pollution Exclusions"). In seeking a declaration that the Pollution Exclusions do not bar coverage for the AFFF Suits, Tyco goes to great lengths to avoid their plain language, relying on extrinsic evidence to add words that simply do not appear in the language of the provisions. Although Tyco cloaks its motion as a request for the Court to "apply the plain language" of the exclusions, in reality Tyco's motion relies almost solely on arguments about the underwriting intent that go well beyond the actual words used in the Pollution Exclusions. Thus, at best, Tyco has highlighted materially disputed factual issues between the parties while simultaneously failing to provide any evidence supporting Tyco's position.[2]

---

[1] The AIG Insurers understand that Tyco settled with one category of underlying claimants, the municipal water providers, as of April 12, 2024. That settlement has not yet been approved by the Court, and in any event, is only applicable to one of the four principal categories of suits against Tyco.

[2] As discussed below, Tyco was unable to provide a competent witness to discuss the negotiation of the policies at issue from Tyco's perspective. More importantly, Tyco's broker, Marsh, has refused to respond to the AIG Insurers' subpoenas for documents concerning Marsh's procurement of the policies on behalf of Tyco. Accordingly, any extrinsic evidence currently available tells only half the story.

Specifically, Tyco's Motion for Partial Summary Judgment should be denied for several reasons.  First, Tyco contends as a factual matter that the Pollution Exclusions, regardless of their actual terms, were only intended to apply to "traditional environmental pollution claims."  Tyco similarly asserts that "traditional environmental pollution claims" are commonly understood to be those related to contamination from waste arising out of an insured's manufacturing operations.  In making these factual assertions, Tyco completely disregards the plain language of the pollution exclusions: "actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of pollutants…."  Notably absent is any mention of "traditional environmental pollution" or "manufacturing operations."  Indeed, Wisconsin law (which should apply to this dispute) has rejected this very argument.  Seeking to sidestep the plain language of the Pollution Exclusions, Tyco makes assertions regarding the underwriting intent at the time of their drafting, stating that the Pollution Exclusions were "manifestly written" to apply only to "traditional environmental pollution" as defined by Tyco.  To be clear, the language of the pollution exclusions at issue is clear and unambiguous, and the Court should reject Tyco's attempt to limit their scope to "traditional environmental pollution" *as a matter of law*.  However, to the extent that the Court looks to extrinsic evidence to determine underwriting intent, there is a factual dispute on this issue. Notably, the evidence demonstrates that Tyco abandoned any reasonable expectation of coverage for pollution under the AIG policies at issue, even if arising from products-liability, ████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████ These affirmative pollution policies mirror the language in the AIG Policies' Pollution Exclusions, but rather than excluding coverage, they grant pollution coverage under that same language. ██████████████████████████████ █████████████████████████████████████████ Tyco cannot have reasonably expected that

the commercial general liability AIG Policies it purchased would also cover pollution. Accordingly, summary judgment cannot be granted for Tyco at this stage.

Second, with respect to the bulk of the AFFF Suits asserted against Tyco, the event giving rise to the harm is the degradation of AFFF into PFAS and the resulting spread of PFAS throughout groundwater. This happens *after* Tyco's AFFF has been used as intended and has subsequently been discarded and abandoned on the ground, or disposed of into municipal sewer systems—i.e., the disposal of the leftover waste after the product was used. The contamination does not arise out of the initial use of Tyco's product, but rather out of the degradation of the product after it has been abandoned on the ground and disposed of as "waste." Because the "Paragraph 1" exclusionary language contained in the Pollution Exclusions bars coverage for pollution resulting from the disposal of waste—by *anyone*, not just Tyco—coverage is barred for the AFFF Suits.

Third, the "Paragraph 2" exclusionary language, by its plain terms is broad, and applies to preclude coverage for all of the AFFF Suits—not just claims arising under state or federal environmental statutes as Tyco contends. Again, Tyco's attempt to have the Court read in non-existent, limiting language based on what it asserts is the underwriting intent cuts against basic insurance contract interpretation principles. At a minimum, there is a factual dispute regarding the underwriting intent at the time the Paragraph 2 language was drafted.

Based on the reasons outlined above and as explained further below, Tyco's motion for partial summary judgment should be denied.

## FACTUAL BACKGROUND

The AFFF Suits are comprised of four main categories: (i) water provider suits, (ii) firefighter suits, (iii) indirect exposure suits, and (iv) natural resource damage ("NRD") suits brought by state attorneys general or other governmental authorities.  *See* Tyco Pl. Mot. Summ. J. Dkt. # 257 at 3.

The water provider suits allege that PFAS from Tyco's AFFF "entered the ground, peculated through it and entered various aquifers and or surface water sources, thus contaminating th[e] water sources" used by plaintiffs "who supplied domestic drinking water."  *See* Byers Declaration, Ex. A at 3.  For example, in *City of Sioux Falls v. 3M Co. et al.*, No. 2:19-cv-01806 (D.S.C.), which Tyco itself has represented is a "representative" water provider suit, the City of Sioux Falls alleges that Tyco's AFFF "release[s]" PFAS, a "toxic chemical," "into the environment, whereby the compounds migrate through the subsurface and contaminate Plaintiff's Property."  *See* Byers Declaration, Ex. B ¶¶ 44, 28, 77.  In addition, the City alleges that Tyco "knew, or should have known, that use of AFFF by Plaintiff and others in its intended manner would result in the spillage, discharge, disposal, or release of PFOA and/or PFOS [two types of PFAS] into or onto land with associated migration to groundwater."  *Id.* ¶ 47.  In terms of relief, the City seeks, among other things, the costs and expenses of testing, treating, and installing monitoring mechanisms for the PFAS contamination.  *Id.* at Prayer for Relief.

In the next category, the firefighter suits, civilian and military firefighters allege that they were exposed to PFAS from Tyco's AFFF in their line of work.  *See* Byers Declaration, Ex. C at 35.  Again, Tyco itself has identified *Gentile v. 3M Co., et al.*, No. 2:20-cv-02318 (D.S.C.) as a "representative" firefighter suit.  *See* Byers Declaration, Ex. B ¶ 41.  In that suit, Mr. Thomas J. Gentile alleges that during his "employment as a firefighter, he was exposed to significantly

elevated levels of PFAS," which he alleges are "toxic chemicals," "as a result of regular contact with and use of Defendants' [including Tyco's] AFFF[.]."  Byers Declaration, Ex. D ¶¶ 1, 16.  Mr. Gentile also alleges that Tyco "designed, manufactured, marketed, distributed, and sold AFFF products containing PFOS, PFOA, and/or their chemical precursors that were . . . discharged[] and/or disposed by Plaintiffs."  *Id.* ¶ 72.  According to Mr. Gentile, Tyco knew that "these toxic compounds would be released into the environment during fire protection, training, and response activities."  *Id.* ¶ 5.

In the third category, the indirect exposure suits, private individuals allege bodily injury and property damage due to contamination by PFAS from Tyco's AFFF.  *See* Exhibit C at 35.  For example, in *Donnelly v. 3M Co., et al.*, No. 2:20-cv-00209 (D.S.C.) the plaintiff, Mr. Brock L. Donnelly, alleges that he was personally exposed to PFAS from Tyco's AFFF and that his private property was damaged due to contamination by "hazardous PFAS chemicals" from Tyco's AFFF.  *See* Byers Declaration, Ex. E ¶¶ 13-20.  Mr. Donnelly also alleges that types of PFAS from Tyco's AFFF were "applied, discharged, disposed of, or otherwise released onto land" and thus have "cause[d] extensive and persistent environmental contamination."  *Id.* ¶ 74.

Finally, in the NRD suits, state attorneys general and other governmental authorities allege property damage due to contamination by PFAS from Tyco's AFFF.  *See* Tyco Pl. Mot. Summ. J. Dkt. # 257 at 3.  One representative suit is *Wisconsin v. 3M Co., et al.*, No. 2:23-cv-00028 (D.S.C.).  *See* Byers Declaration, Ex. F.   In that suit, the State of Wisconsin alleges "widespread contamination of Wisconsin's property and natural resources with toxic [PFAS]," which "are a class of synthetic chemicals," from Tyco's AFFF.  *Id.* ¶¶ 1, 2.  The State also alleges that Tyco "spilled, leaked, released, or otherwise caused the discharge of PFAS Products into the environment, when [it] knew or reasonably should have known: (i) [its] conduct would readily

release PFAS into the environment; (ii) when released, PFAS would persist in the environment and not break down; [and] (iii) PFAS would contaminate State natural resources and property, including soils, sediments, groundwater, surface waters, wildlife, and drinking water supplies." *Id.* ¶ 288(c). In terms of relief, the State seeks, among other things, the costs of testing and monitoring for PFAS and equitable relief compelling Tyco to abate its nuisance and trespass through an abatement fund to "investigate, remove, treat, remediate, clean up, and otherwise mitigate PFAS contamination in Wisconsin." *Id.* at Prayer for Relief.

**ARGUMENT**

I. **WISCONSIN LAW APPLIES TO RESOLUTION OF THE ISSUES PRESENTED BY TYCO'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

South Carolina courts historically "follow[] the rule of *lex loci contractus* and appl[y] the law of the state where the application for insurance was made, the policy delivered, and the contract formed." *Russell v. McGrath,* 135 F. Supp. 3d 427, 430 (D.S.C. Sept. 25, 2015). Here, there can be no reasonable dispute that all of those things occurred in Wisconsin and that, as a result, Wisconsin law applies under the *lex loci contractus* doctrine. *See* Tyco's Amended Complaint and Demand for Jury Trial, Dkt. # 32 ¶ 11.

South Carolina's traditional rule of *lex loci contractus,* however, was modified by statute at S.C. Code Ann. Code § 36-61-10, which provides that: "[a]ll contracts of insurance on property, lives, or interests in this State are to be considered made in the State and all contracts of insurance the application for which are taken within the State are considered to have been made within this State and are subject to the laws of this State." Importantly, § 38-61-10 does not automatically supplant South Carolina's traditional practice of applying *lexi loci contractus* where there is, as is the case in the present litigation, "a lack of connection, interest or nexus to South Carolina, such that it could not be said that the property, lives, or interests insured were located in South Carolina."

*McGrath*, 135 F. Supp. 3d at *431; *see also Evanston Ins. Co. v. AJ's Elec. Testing & Serv., LLC*, No. 1:15-cv-01843-JMC, 2016 U.S. LEXIS 8144, at *9-11 (D.S.C. Jan. 26, 2015) (holding that South Carolina's modification of its traditional choice of law rules via S.C. Code Ann. § 38-61-10 did not govern given that the insured was a Florida company with its principal place of business in Florida, it had no employees or property in South Carolina, and the insurance policies at issue were formed in Florida); *Integon Nat'l Ins. Co. v. Gomez,* No. 2:19-cv-02958-DCN, 2020 U.S. Dist. LEXIS 219237, at *8-9 (D.S.C. Apr. 21, 2020) (noting that § 38-61-10 only applies when "the insurance contract covers property, lives, or interest in South Carolina" and therefore Alabama law governed coverage dispute since the policy was formed, and the at-issue property was located, in Alabama). Here, Tyco is not a South Carolina corporation, the underlying injuries occurred due to Tyco's manufacture and sale of AFFF in and from Wisconsin, and none of the at-issue policies were issued in South Carolina. *See* Tyco's Amended Complaint and Demand for Jury Trial, Dkt. # 32 ¶ 11. Moreover, as the Court is aware, a second coverage action is pending in the Circuit Court of Marinette County, Wisconsin. *See Century Indemnity Company, et al. v. Tyco Fire Products LP, et al.*, No. 2022CV000283, (the "Wisconsin Action"). Notably, Tyco has not challenged application of Wisconsin law in the Wisconsin state court action and has in fact, sought summary judgment in Wisconsin with respect to allocation under AIG policies. *See* Byers Declaration, Ex. G, *Century Indemnity Company, et al. v. Tyco Fire Products LP, et al.*, No. 2022CV000283, Tyco Fire Products' Memorandum of Law in Support of its Motion for Partial Summary Judgment on Allocation of Coverage (Nov. 1, 2023). As such, this Court should reject any attempt by Tyco to cherry-pick the applicable law based on the existence of competing actions. Wisconsin law thus applies to the coverage issues in this litigation.

## II.    THE POLLUTION EXCLUSIONS ARE NOT LIMITED TO TRADITIONAL ENVIRONMENTAL POLLUTION.

Tyco erroneously contends that the Pollution Exclusions are limited to "traditional environmental" pollution.  However, this language, and other language put forth by Tyco does not appear anywhere in the provisions at issue.  At bottom, Tyco offers unsupported factual assertions regarding the underwriting intent of Pollution Exclusions.  The language of the Pollution Exclusions, however, is clear and unambiguous and plainly bars coverage for the AFFF Suits.  Thus, the Court need not consider extrinsic evidence in order to deny Tyco's Motion.  In the event the Court does decide to look beyond the plain language of the policies, ample evidence exists raising materially disputed issues concerning (i) Tyco's reasonable expectations of coverage for pollution-related liability; and (ii) the underwriting intent of the Pollution Exclusions.  Tyco's Motion for Partial Summary Judgment should therefore be denied.

### A.    Tyco's Contention That The Pollution Exclusions Are Intended to Apply Only to "Traditional Environmental Pollution" Is Contrary to the Plain Language of the Pollution Exclusions.

While on the one hand stating that the Court "should apply the plain language of the exclusions," Tyco simultaneously contends, as a *factual matter*, that the Court should consider that the Pollution Exclusions were "manifestly written to exclude . . . traditional environmental pollution claims . . . arising from the policyholder's own operations, alleging damage caused by 'pollutants' released as industrial waste from the insured's own facilities." *See* Tyco Pl. Mot. Summ. J. Dkt. # 257 at 6, 8.  Tyco's purported limitation of the scope of the Pollution Exclusions to "traditional environmental pollution" is found nowhere in their language and instead requires that the Court look beyond the plain language of the policies and consider a claimed underwriting intent, which under Wisconsin law, is impermissible where the provisions are clear and unambiguous as they are here.  *See Hale v. Am. Family Mut. Ins. Co.*, 639 N.W.2d 802, at *6 (Wis. Ct. App. 2001) ("[W]here the intent of

the parties is made clear by the language and the nature of the agreement, *we do not resort to extrinsic evidence to determine that intent*.") (emphasis added).

Here, the Pollution Exclusions plainly apply to "discharge, dispersal, seepage, migration, release or escape of pollutants" without any limitation to "traditional environmental" or "industrial" pollution. Indeed, Wisconsin courts have already rejected this argument, and held that pollution exclusions are not limited to traditional/industrial pollution, but by their plain and unambiguous terms, also bar coverage for pollution arising from use of a wide swath of undesirable substances, ingredients, and products:

> Throughout the country, injured parties and insured parties have resorted to the history of the pollution exclusion clause in an effort to show that it was intended to apply to industrial pollution … The problem in dealing with this argument is that it calls for construction of the pollution exclusion clause based on materials outside the four corners of the policy … *Because we conclude that the clause is not ambiguous, we have no duty to explore materials outside the policy*.

*Peace v. Nw. Nat'l Ins. Co.*, 228 Wis. 2d 106, 139-140 (1999) (emphasis added).



Indeed, the Pollution Exclusions speak for themselves: they contain no reference whatsoever to "traditional pollution," "industrial waste," or any other limitation to certain sources of pollution. Here, AFFF is used on a fire and (a) PFAS is released and directly exposes firefighters to bodily harm or (b) the AFFF seeps into the environment and degrades into PFAS which is then dispersed through local groundwater, and thus falls within the plain language of the Pollution Exclusion. It is irrelevant that Tyco's liability arises from use of a product rather than industrial manufacturing-based pollution—Tyco's liability nonetheless arises from the discharge, dispersal, release, or escape of a pollutant. *See Peace*, 228 Wis. 2d at 148("[W]e conclude that lead present in paint in a residential property is a pollutant.");

*Wilson Mut. Ins. Co. v. Falk*, 2014 WI 136 ¶49, 857 N.W.2d 156,171. ("[A] reasonable insured would consider manure *in a well* to be a pollutant."); *Hirschhorn v. Auto-Owners Ins. Co.*, 2012 WI 20 ¶37, 809 N.W.2d 529, 539 ("[B]at guano falls unambiguously within the term 'pollutants' as defined by Auto-Owners' insurance policy.").[3]

Courts outside of Wisconsin are in accord.  *See e.g., Lapolla Indus., Inc. v. Aspen Specialty Ins. Co.*, 566 Fed. Appx. 95, 97 (2d Cir. 2014) (holding pollution exclusion precluded coverage for product liability suits related to toxin-releasing polyurethane foam installed in homes); *Park-Ohio Industries, Inc. v. Home Indem. Co.*, 975 F.2d 1215, 1219 (6th Cir. 1992) (finding pollution exclusion precluded coverage for product liability suit related to toxin-emitting induction furnaces); *Pa. Manufacturers' Ass'n Ins. Co. v. R.E. Michael Co.*, No. WMN-08-541, 2008 U.S. LEXIS 129204, at * 16 (D. Md. Aug. 13, 2008) (pollution exclusion precluded coverage for product liability suit related to carbon-monoxide emitting water heaters).

Tyco's contention that the Pollution Exclusions are somehow limited to traditional environmental or industrial pollution where no such limitation appears in the policy language, completely disregards the plain language of the AIG Policies and should be rejected.

---

[3] Tyco relies on inapposite case law to support its reading in of non-existent, limiting language into the Pollution Exclusions.  For example, Tyco cites *Richardson v. Nationwide Mut. Ins. Co.*, 826 A.2d 311, 325, 336 (D.C. 2003) as supporting the fact that products liability claims differ from pollution claims, in that the latter "traditionally target industrial waste, discharges, and emissions." Tyco's Mot. Summ. J. Dkt. # 257 at 3-4.  First, and significantly, this opinion was vacated as moot after the parties settled the case.  Second, the court departed from settled rules of insurance policy construction, namely by, reviewing the historical and regulatory context surrounding the drafting of the provision.  *Id.* at 315 ("The pollution exclusion clause relied upon by [the insurer] . . . cannot be construed in the abstract, *i.e.,* without an understanding of the business and regulatory context in which the policy of which it is a part was written.").  Tyco also cites *Ross Dev. Corp. v. Fireman's Fund Ins. Co.*, which involved a coverage suit arising as a result of the clean-up and remediation of a site pursuant to CERCLA.  910 F. Supp. 2d 828, 835–36 (D.S.C. 2012).  In other words, the only claims at issue were ones arising under obligations under federal environmental law.  The court did not even consider products liability claims.  Even so, in applying the relevant pollution exclusions to preclude coverage for property damage caused by the insured's placement of pyrite slag into the ground at the remediation site, the court never held that the pollution exclusions were limited to "traditional environmental pollution claims."

**B.     To the Extent the Court Looks Beyond the Plain Language of the Policies, Extrinsic Evidence Refutes Tyco's Claims Regarding the Underwriting Intent of the Pollution Exclusions.**

As explained above, under a plain language interpretation, Tyco's construction of the Pollution Exclusions should be rejected.  If, however, the Court chooses to look beyond the plain language of the AIG Policies, the evidence shows that Tyco cannot possibly have had any reasonable expectation that the Pollution Exclusions are somehow limited only to "traditional environmental pollution." ███████████████████████████████████████████

████████████████████████████████████████████  ████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████  ██████████████████████

███████████████████  ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████  ████████████████████████████████████

████████████████████████████████████████████████████████

█████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████  ████████████████████████████





In addition to the foregoing, AIG has also proffered expert testimony contradicting Tyco's contentions regarding the underwriting intent of the Pollution Exclusions.  On March 22, 2024, the AIG Insurers submitted the Report of Michael L. Averill (the "Averill Report").  *See* Byers Declaration, Ex. O.  Mr. Averill was employed by the Insurance Services Office ("ISO") from June 1971 through June 1987 and assisted in drafting the pollution exclusions at issue during that time, as well as was consulted during further development of the exclusion in later years.  In his report, he recounted the development of pollution exclusions and indicated that the insurance industry would readily understand that such exclusions were meant to apply to the AFFF Suits and not limited solely to traditional environmental pollution associated with industrial activities.  Mr. Averill explained:

> Those in the insurance industry, and familiar with the industry's common custom and practice, would readily understand that the total pollution exclusions in the AIG

policies at issue unambiguously apply to the AFFF lawsuits asserted against Tyco. *Again, this is so regardless of the fact that AFFF is a product sold by Tyco, and is not merely a byproduct of industrial manufacturing*.

Byers Declaration, Ex. O at 11 (emphasis added).  At a minimum, Mr. Averill's opinions raise a factual dispute regarding the underwriting intent of the Pollution Exclusions, particularly where Tyco has not put forth any evidence to support its claims regarding the underwriting intent of the provisions.

Tyco filed its partial motions for summary judgment on March 18, 2024, four days prior to the deadline for the exchange of expert reports in this action.  Whereas Tyco's experts' opinions were not presented in its brief, should Tyco choose to rely on its experts' opinions in its reply brief, such reliance would constitute new evidence and argument to which the AIG Insurers were not able to address in this Opposition.  Thus, the AIG Insurers reserve the right to seek leave for a sur-reply should Tyco rely on its expert reports.

In any event, the AIG Insurers anticipate that Tyco will rely heavily in its reply brief on the expert report of Dennis Connolly. ███████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████To that end, Tyco has not provided any testimony or documents reflecting Tyco's understanding of or negotiation of the policies.  Meanwhile, Tyco's insurance broker, Marsh, was subpoenaed for documents relating to the same.  Marsh delayed production of those documents, missing its February 23, 2024 deadline, and only just producing the documents on the day this Opposition was due, April 15, 2024.  As such, due to the late production, the AIG Insurers have not been able to download and review these documents before having to submit this Opposition to the Court.  *See e.g.*, Declaration of Christian Stegmaier, Esquire, dated April 15,

2023 and accompanying exhibit.  While extrinsic evidence is entirely unnecessary to the interpretation of these clear and unambiguous provisions, any extrinsic evidence concerning the parties' understanding relied upon by Tyco is missing half of the story: Tyco's half.  Tyco should not be able to obtain summary judgment until it or Marsh has produced the documents necessary to answer material factual disputes concerning the parties' understanding of the effect of the various pollution exclusions at issue.

III.  **THE "NAMED PERIL" AND "BLENDED POLLUTION EXCLUSION" ENDORSEMENTS BAR COVERAGE FOR THE AFFF SUITS**

A.  **The Paragraph 1(b) Exclusion Applies Because AFFF Is a Waste at the Time it Causes Injury.**

Paragraph 1(b) of the "Named Peril" and "Blended Pollution Exclusion" Endorsements bars coverage for pollution "[a]t or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste."  *See* Byers Declaration, Ex. N at AIG INSURERS 0006050.  Thus, the exclusion is triggered if a site or location was used by the insured *or others* for the disposal of waste.  Unlike subpart (a) which limits the applicability of the exclusion to "premise[s], site[s] or location[s]" "owned or occupied by, or rented or loaned to *any insured*," subpart (b) extends beyond just the insured, and plainly applies to pollution arising from the use of AFFF by Tyco's customers, so long as they handled, stored, disposed, processed or treated AFFF as waste.  *Id.*  In its motion, Tyco ignores the distinction and acts as if subpart (b) includes a limitation to the insured when no such limitation exists.  With respect to the AFFF suits alleging property damage, that's precisely what happened with Tyco's AFFF product, so paragraph 1(b) bars coverage.

Specifically, with respect to the water provider suits, indirect exposure suits, and NRD suits against Tyco, the event giving rise to the harm is the degradation of AFFF into PFAS and the

resulting spread of PFAS throughout groundwater.  This happens *after* Tyco's AFFF has been used and has subsequently been abandoned and disposed of on the ground or disposed into municipal stormwater or sewer systems.  *See* Byers Declaration, Ex. P (Expert Rebuttal Report of James J. Connors, Ph.D., P.G., P.H. at Opinions 1 and 2).  In other words, the contamination does not arise out of the initial use of Tyco's product, but rather out of the degradation of the product after it has been abandoned on the ground and disposed of as "waste."  *Id*. at Opinion 2; *see also Preisler v. Gen. Cas. Ins. Co.*, 2014 WI 135 ¶58, 857 N.W.2d 136, 150 ("[D]ecomposing septage is a 'contaminant' and therefore, a 'pollutant' as defined in the policies *when it has decomposed* and seeps into a water supply.") (emphasis added).  ████████████████████████

████████████████████████████████████████  ████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

[4] ████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████ █████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████



.

Thus, pursuant to subpart (b), Paragraph 1 of the "Named Peril" and "Blended Pollution Exclusion" Endorsements excludes coverage for the above-referenced AFFF Suits. *See Great Am. Ins. Co. v. Ace Am. Ins. Co.,* 325 F. Supp. 3d 719, 727 (N.D. Tex. 2018) (holding that pollution exclusion precluded coverage for property damage caused by rock fines, which were "clearly waste material generated in the rock crushing process" and noting that the rock fines "became irritants or contaminants when they were discharged and dispersed where they did not belong"); *Nautilus Ins. Co. v. SER Trucking, Inc*., No. CV 11-00172 JMS-KSC, 2011 U.S. Dist. LEXIS 138288, at *18-19 (D. Haw. Nov. 8, 2011) (concluding that the pollution exclusion barred coverage for damages from disposing of tires and concrete rubble).

**B.      The Exclusionary Language in Paragraph 2 Applies to Preclude Coverage.[5]**

Paragraph 2 of the "Named Perils" and "Blended Pollution Exclusion" Endorsements precludes coverage for "[a]ny loss, cost or expense arising out of any: . . . [r]equest, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants." *See* Byers Declaration, Ex. N at AIG INSURERS 0006050.  As detailed above, the water provider suits and the NRD suits request, demand, or seek an order that Tyco must satisfy the losses, costs, and expenses of those water providers' and states' obligations to test for, monitor, clean up, and remove PFAS contaminating the local water supply and other natural resources.  Specifically, in the representative water provider suit, the plaintiff seeks to recover from Tyco, among other things, the costs and expenses of testing, treating, and installing monitoring mechanisms for PFAS contamination. *See* Byers Declaration, Ex. Z, at Prayer for Relief.  And in the representative NRD suit, the State of Wisconsin seeks, among other things, the costs of testing and monitoring for PFAS and equitable relief compelling Tyco to abate its nuisance and trespass through an abatement fund to "investigate, remove, treat, remediate, clean up, and otherwise mitigate PFAS contamination in Wisconsin." *See* Byers Declaration, Ex. F, at Prayer for Relief.  Accordingly, where the water provider and NRD suits seek nearly identical relief to that excluded from coverage under the Paragraph 2 exclusionary language, coverage is unambiguously barred for those suits.

The Wisconsin Supreme Court opinion in *Falk* is instructive, as it addressed an almost identical pollution exclusion and held that it barred coverage for the insured's pollution. *See Wilson*

---

[5] Relatedly, and to avoid unnecessary duplication, the AIG Insurers adopt and incorporate by reference TIG's arguments concerning the application of Paragraph 2 to the water provider claims, specifically sections II.A and II.B.

*Mut. Ins. Co. v. Falk,* 2014 WI 136 ¶¶ 53-63, 857 N.W.2d 156.  In *Falk,* the insureds sought coverage from their insurer after they contaminated their neighbors' wells with liquid cow manure, who in turn had to replace their wells and sought repayment from the insureds.  *See id.* ¶¶ 4-7.  The relevant pollution exclusion barred coverage for "any loss, cost, or expense arising out of any requests, demands, orders, claims, or suits that the 'insured' or others test for, monitor, clean up, remove, contain, treat, detoxify, neutralize, or in any way respond to or assess the effects of pollutants, chemicals, liquids, or gases."  *Id.* ¶ 59.  The Supreme Court held that this "pollution exclusion bars coverage for harm incurred by the contamination of the neighboring wells" because the insureds sought "coverage for a loss, cost, and expense, that arose out of requests and demands on behalf of the . . . injured parties [*i.e.*, the neighbors] that the [insureds] respond to the effects of manure."  *Id.* ¶¶ 61, 63.  The Supreme Court rejected the insureds' "argument that this pollution exclusion applies only to costs incurred as a result of remediation ordered by the government," holding that "such requests can come from any person or entity," including the neighbors.  *Id.* ¶ 63. In addition, the Supreme Court observed that "[t]he phrase 'in any way respond to' is also broad enough to include costs to redrill wells."  *Id.*

Here, just as in *Falk*, Tyco has polluted the environment, faces requests and demands from third parties (*e.g.*, water providers and state attorneys general) to pay the costs and expenses of responding to its pollution, and now seeks coverage for those requests and demands from its insurers.  Accordingly, based on the express terms of the Paragraph 2 exclusionary language and the clear holding in *Falk*, there is no coverage for the water provider suits and the NRD suits.[6]

---

[6] Paragraph 2 additionally bars coverage for "[a]ny loss, cost or expense arising out of any: . . . "claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of pollutants."  The NRD suits brought by states, cities, and towns are clearly suits brought by governmental authorities.  Second, municipal water providers should also be considered governmental authorities, as nearly all of the water provider plaintiffs with suits in the MDL are either the municipalities receiving the treated water themselves or quasi-public entities related

Tyco, continuing its pattern of reading non-existent limiting language into the AIG Policies, asserts that Paragraph 2 of the "Named Peril" and "Blended Pollution Exclusion" endorsements applies only to "loss, cost or expense" as limited by "environmental response obligations under state or federal law." Tyco Pl. Mot. Summ. J. Dkt. # 257 at 10. In other words, Tyco contends that Paragraph 2 does not apply to bodily injury or property damage claims arising from anything other than obligations under environmental law. Tyco again disregards the plain language of the policies, which makes absolutely no mention of environmental response obligations under state or federal law.

Tyco mistakenly relies on *Hussey Copper, Ltd. v. Arrowood Indem. Co.* to support its erroneous argument. 391 F. App'x. 207, 201 (3d Cir. 2010). Although the court in *Hussey* acknowledged that Paragraph 2 "tracks CERCLA" by identifying two categories of liability, private remediation and remediation by the government, nowhere in that decision did the court state that the exclusion was *limited* to environmental response costs arising under environmental laws, nor did it state that the exclusion did not apply to other theories of liability such as product liability or common law causes of action for bodily injury or property damage. Quite the opposite, the court acknowledged throughout the opinion the breadth of Paragraph 2, first noting it was "a *broad* exclusion in [the insured's] insurance policy *that limits coverage for pollution-related damages*" and later noting "[Paragraph 2] of the pollution exclusion clause is *sweeping*." *Id.* at 208, 209 (emphasis added). Significantly, the court went on to reject the insured's argument that "industry custom and usage demonstrates that the insurance industry does not regard section

---

to the municipality they serve. Indeed, courts have interpreted "governmental authority" broadly to include cities, counties, and other government entities. *See, e.g., Zogenix, Inc. v. Federal Insurance Co.*, No. 4:20-cv-06579-YGR, 2022 U.S. Dist. LEXIS 158481, at *25–26 (N.D. Cal. May 26, 2022) (holding that "cities and counties are deemed governmental authorities" and that, "given the plain language of the exclusion, . . . coverage for the Walker County Action [was] barred under the Governmental Authority Exclusion of the Products Policy.").

f.(2)(a) as applying to products-based claims." *Id.* at 210-211.  The court pointed out that the insured's argument that the "*entire* pollution exclusion provision had an industry-specific meaning" without providing any evidence as to a particular term having an idiosyncratic, industry-meaning was an "unpersuasive contention." *Id.* at 211.[7]

Tyco also points to statements made in briefs by AIG in *Coffeyville Res. Refin. & Mktg., LLC v. Liberty Surplus Ins. Co.*, No. 608CV01204, 2008 WL 5561172 (D. Kan. 2008).  As an initial matter, nowhere in its brief in that case did National Union argue that Paragraph 2 was limited to costs incurred as a result of obligations under environmental law.  Instead, National Union acknowledged that it had "issued a general liability policy which generally excludes *all pollution liability risks*." *Id.* (emphasis added).  In any event, positions taken by the AIG Insurers in unrelated actions, concerning different policies, parties, facts, and law, are wholly irrelevant to this action.  *See In re Wash. Mut. Mortg. Backed Sec. Litig.*, No. C09-37 MJP, 2011 U.S. Dist. LEXIS 99452, at *13 (W.D. Wash. Sep. 2, 2011) ("The only new 'fact' Plaintiffs trot out is the position the FDIC has taken in an unrelated case … this position is not relevant to the present

---

[7] Again, Tyco resorts to cherry-picking cases from jurisdictions outside of Wisconsin in an attempt to support its position.  Not only is the reliance of case law inappropriate in interpreting plain language of the contract, but the cases are inapplicable.  For example, *Richard Bldg. Supply I, LLC v. N. River Ins. Co.*, is distinguishable because the only underlying claim at issue was a letter issued by the Environmental Protection Agency alleging that the insured was a potentially responsible party and potentially liable under federal law for cleanup of a site. No. 16 C 9053, 2017 WL 5624468, at *2–3 (N.D. Ill. Nov. 22, 2017).  The court determined that "any response or clean-up costs that [the insured] may become obligated to pay are excluded by the policy language: they constitute expenses arising out of a demand by a regulatory agency to clean up, remove, or respond to the effect of pollutants." *Id.* at 9.  While this holding construed the letter from the EPA as constituting a demand by a regulatory agency, it in no way found that this language would have excluded claims for private money damages claims – such claims were not even at issue in the case.  The same is true for *Cape Cod Mech. Sys., Inc. v. Cent. Mut. Ins. Co.*, No. 06cv10673-NG, 2008 WL 11511471, at *6 (D. Mass. June 13, 2008) (determining that the involvement of the Massachusetts Department of Environmental Protection constituted a request as opposed to "mere encouragement" and therefore coverage was precluded with respect to for clean up and remediation costs).

With respect to, *Keggi v. Northbrook Prop. & Cas. Ins. Co.*, the facts are completely inapplicable to this case.  The court's primary basis for its holding was that the pollution exclusion did not include "bacteria." 199 Ariz. 43, 48 (2000).  The court determined that if the clause could be interpreted to include "bacteria" within the definition of "pollutants," then the clause would be ambiguous, and only then began to consider extrinsic evidence.  *Id.*  Here, there is no such concern of ambiguity in the policy language of the pollution exclusions.

litigation."); *First Horizon Nat'l Corp. v. Hous. Cas. Co.*, No. 2:15-cv-2253-SHL-dkv, 2016 U.S. Dist. LEXIS 142330, at *21-23 (W.D. Tenn. Oct. 5, 2016) ("As the Defendants maintain, the positions they took in other claims depended on the policy language and the facts of the particular case, which are necessarily different from the policies and facts of the instant case. Even if the Defendants have in fact taken conflicting positions in the past regarding the same terms at issue in this case, it would not aid the court in interpreting the policy language at issue or in determining the Defendants' intent in the instant case.").

As explained above, pursuant to the plain language of Paragraph 2, coverage is excluded for the water provider suits and the NRD suits. In the event the Court looks beyond the plain terms, the AIG Insurers have submitted evidence refuting Tyco's position that Paragraph 2 only applies to obligations under environmental law. Specifically, the AIG Insurers' expert, Mike Averill, has opined that these exclusions broadly apply to preclude coverage for pollution liability, regardless of how liability is asserted. *See* Byers Declaration, Ex. AA, Averill Rebuttal Report at 7 ("Paragraph 2 should exclude coverage for claims for costs associated with cleanup, mitigation, or any other response to the effects of pollutants – irrespective of whether such claim is brought pursuant to an environmental statute or is instead brought pursuant to a common law cause of action.").

In a further attempt to avoid the clear implications of the exclusionary language in Paragraph 2, Tyco argues that if Paragraph 2 applied to bodily injury and property damage, then Paragraph 1 would be rendered "superfluous." Tyco Pl. Mot. Summ. J. Dkt. # 257 at 14. This argument, like Tyco's attempt to limit the language to obligations under environmental statutes, misses the mark. Tyco fails to appreciate that allegations of bodily injury and property damage *must* be present, because such allegations are required to trigger the commercial general liability

insuring agreements of the AIG Policies in the first place. Thus, it is impossible for Paragraph 2 to ever apply in the manner urged by Tyco—that is, divorced from claims of bodily injury and property damage. The omission of the phrases "property damage" and "bodily injury" in the language in Paragraph 2 reflects a broad scope that precludes coverage not just for property damage and bodily injury arising out of pollution, but also for remediation costs associated with the same lawsuit or underlying claim. *See* Byers Declaration, Ex. AA at 5.

**IV.    COVERAGE FOR PRODUCTS LIABILITY CLAIMS UNDER THE NAMED PERIL AND TIME ELEMENT POLLUTION ENDORSEMENTS IN THE 1999-2003 AIG UMBRELLA POLICIES IS SUBJECT TO SIGNIFICANT PER-OCCURRENCE SELF INSURED RETENTIONS.**

Tyco correctly identifies four AIG umbrella policies containing Named Peril and Time Element Pollution Endorsements with straightforward exceptions for products liability claims. Those policies are Policy No. BE7016213 (07/01/99 - 07/01/00), Policy No. BE 7394784 (07/01/00 - 10/01/01), Policy No. BE8713678 (10/01/01 - 10/01/02), and Policy No. BE 2195412 (10/01/02 – 10/01/03). The AIG Insurers agree that the products liability exceptions in the Named Peril and Time Element Pollution Endorsements contained in aforementioned umbrella policies apply so that Paragraphs 1 and 2 of the Endorsements do not bar coverage for the AFFF Suits. With that said, AIG is certainly not conceding that coverage is available under these four umbrella policies and expressly reserves all rights. It is AIG's position that coverage is nonetheless excluded for other reasons (*e.g.*, because the AFFF Suits do not allege a covered "occurrence" and because Tyco expected or intended the harm alleged). In addition, Tyco fails to mention that any coverage preserved pursuant to the products liability exception in the Endorsements is subject to significant per-occurrence self-insured retentions. Specifically, the four Named Peril and Time Element Pollution Endorsements all contain either a $2 million or $5 million per-occurrence self-insured retention that applies with respect to "any coverage granted by [the] endorsement," where the

occurrence is covered under the AIG umbrella policy but not covered by the underlying policies. Accordingly, the Court should not issue an unqualified, blanket declaration that the Named Peril and Time Element Pollution Endorsements contained in the 1999-2003 AIG umbrella policies do not bar coverage without also recognizing the language in those Endorsements imposing per-occurrence self-insured retentions.

## V. THE "NAMED PERIL AND TIME ELEMENT POLLUTION SELF INSURED RETENTION ENDORSEMENT" IN THE 2005-2008 AIG UMBRELLA POLICIES EXCLUDES COVERAGE FOR THE AFFF SUITS.

Paragraph 1 of the "Named Peril and Time Element Pollution Self Insured Retention Endorsement (Products-Completed Operations Hazard Version)" contained in the 2005, 2006, and 2007 AIG umbrella policies broadly excludes coverage for "[a]ny Bodily Injury, Property Damage or Personal Injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of Pollutants anywhere in the world at any time."  Significantly, exception b.—for the products-completed operations hazard—does not apply to reinstate coverage.  Exception b. only gives back coverage for products-related pollution liability if the product has *not* at any time been "discarded, dumped, abandoned, thrown away" or "transported, handled, stored, treated, disposed of or processed as waste… by anyone[.]"  *Id.*  As discussed above, with respect to the water provider suits, indirect exposure suits, and NRD suits against Tyco, that is exactly what is alleged to have happened with Tyco's AFFF product, so exception b. does not give back coverage and the Paragraph 1 exclusion applies.

In addition, the "Named Peril and Time Element Pollution Self Insured Retention Endorsement (Products-Completed Operations Hazard Version)" found in the 2005, 2006, and 2007 AIG umbrella policies contains the same Paragraph 2 exclusionary language found in the "Blended Pollution Exclusion" and the Named Peril Endorsement discussed above.  For the

reasons discussed above, coverage for the water provider suits and the NRD suits would be excluded under the plain terms of that provision. Further, even if there was coverage under the endorsements under these policies, as discussed in the AIG Insurers' Opposition to Tyco's Motion for Partial Summary Judgment on Deductibles and Retentions, there would be substantial per occurrence retentions applicable to any covered occurrence.

## CONCLUSION

For the foregoing reasons, the AIG Insurers respectfully request that the Court deny Tyco's Motion for Partial Summary Judgment as against the AIG Insurers as to Certain Pollution Exclusions.

Respectfully submitted,

**COLLINS & LACY, P.C.**

/s/ Christian Stegmaier
Christian Stegmaier (S.C. Bar No. 68648)
1330 Lady Street, 6th Floor
Columbia, South Carolina 29201
cstegmaier@collinsandlacy.com
Telephone: (803) 256-2660

**ALSTON & BIRD LLP**

Adam J. Kaiser (admitted *pro hac vice*)
Alexander S. Lorenzo (admitted *pro hac vice*)
Matthew B. Byers (admitted *pro hac vice*)
90 Park Avenue, 15th Floor
New York, New York 10016
adam.kaiser@alston.com
alexander.lorenzo@alston.com
matt.byers@alston.com
Telephone: (212) 210-9400

April 15, 2023          *Counsel for Defendants AIU Insurance Company,*
Columbia, South Carolina.     *American Home Assurance Company, Granite*
*State Insurance Company, Insurance Company of*
*the State of Pennsylvania, National Union Fire*
*Insurance Company of Pittsburgh, Pa., and New*
*Hampshire Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2023, I electronically filed the foregoing DEFENDANTS AIU INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, GRANITE STATE INSURANCE COMPANY, INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., AND NEW HAMPSHIRE INSURANCE COMPANY'S OPPOSITION TO PLAINTIFF'S MOTION FOR  PARTIAL SUMMARY JUDGMENT AGAINST AIG AND TIG REGARDING CERTAIN "POLLUTION EXCLUSIONS" using the Court's CM/ECF system, which will automatically send notification of such filing to all counsel of record.

**COLLINS & LACY, P.C.**

*/s/ Christian Stegmaier*
Christian Stegmaier (S.C. Bar No. 68648)
1330 Lady Street, 6th Floor
Columbia, South Carolina 29201
cstegmaier@collinsandlacy.com
Telephone: (803) 256-2660

*Counsel for Defendants AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa., and New Hampshire Insurance Company*