IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TYCO FIRE PRODUCTS LP, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 2:23-cv-02384-RMG ) |
| AIU INSURANCE COMPANY, *et al.*, | ) ) |
| Defendants. | ) ) ) |

**AIG INSURERS' MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION TO DISMISS OR STAY**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 3

BACKGROUND ....................................................................................................................... 5

    A.     This Court Denied The Insurers' Previous Motion To Dismiss Or Stay, Reasoning That Resolving Coverage Issues Could Foster A Settlement With The Water Providers. ........................................................ 5

    B.     After This Court Denied Defendants' Motion, The Parties Litigated Under An Expedited Schedule, Coordinating All Discovery In Both Actions............................................................................. 6

    C.     The Wisconsin Action Has Materially Advanced And Judge Morrison Has Already Decided Key Coverage Questions. ......................... 8

    D.     Tyco's Settlement with the MDL Water Provider Plaintiffs Is Not Contingent On Determination Of Coverage Issues. ................................ 10

ARGUMENT ........................................................................................................................... 11

    I.     A DISMISSAL OR STAY OF THIS ACTION IS WARRANTED. ................... 11

        A.     Judicial Economy Strongly Weighs In Favor Of A Dismissal or Stay. ................................................................................ 13

        B.     Equitable Considerations Firmly Favor A Dismissal Or Stay. .................. 14

    II.     THIS COURT SHOULD RESOLVE THIS MOTION TO DISMISS OR STAY BEFORE TAKING UP TYCO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT. ..................................................................................... 15

CONCLUSION ........................................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amdur v. Lizars*,
  372 F.2d 103 (4th Cir. 1967) ................................................................................... 9, 11, 12

*Cnty. Comm'n of Fayette Cnty. v. Nat'l Grid Ne. Holdings 2 LLC*,
  2023 U.S. Dist. LEXIS 19418 (S.D. W.Va. Feb. 6, 2023) ..................................................... 10

*Cooper v. Stender*,
  30 F.R.D. 389 (E.D. Tenn. 1962) ........................................................................................ 12

*Freehill v. Lewis*,
  355 F.2d 46 (4th Cir. 1966) ................................................................................................ 12

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ............................................................................................................ 9

*Marsh v. Johnson*,
  263 F. Supp. 2d 49 (D.D.C. 2003) ....................................................................................... 9

*Stewart v. T-Mobile USA, Inc.*,
  2015 U.S. Dist. LEXIS 100061 (D.S.C. July 31, 2015) ......................................................... 9

*Van Laningham v. Allied Ins.*,
  2017 U.S. Dist. LEXIS 233333 (M.D.N.C. Mar. 15, 2018) ................................................... 9

**RULES**

Federal Rule of Civil Procedure 56(d) ..................................................................................... 12

**OTHER AUTHORITIES**

10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane,
  *Federal Practice & Procedure* § 2741 (4th ed. 2023) ........................................................... 12

Defendants AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa., and New Hampshire Insurance Company (collectively, the "AIG Insurers") respectfully request that, in light of recent developments, this Court dismiss or stay this insurance coverage action pending resolution of the first-filed, more comprehensive Wisconsin state court action pending before Judge Morrison, *Century Indemnity Co. v. Tyco Fire Products LP*, No. 2022-cv-000283 (Wis. Cir. Ct., Marinette Cnty.) (the "Wisconsin Action").

## INTRODUCTION

In 2023, Defendants moved to dismiss or stay this action pending resolution of the Wisconsin Action. This action and the Wisconsin Action involve the same insurance coverage issues. The only real difference between the actions is that there are far more insurers in the Wisconsin Action (including more AIG affiliated entities). That is because Tyco could not sue all of its insurers in this action without destroying diversity jurisdiction.[1] Defendants sought dismissal or a stay of this action because of, among other reasons, the inherent inefficiencies and risks in litigating competing, duplicative actions in two different judicial forums. This Court declined to stay or dismiss this action, ruling that it should adjudicate key coverage issues prior to a water provider bellwether trial (then set for August 2024) so that Tyco would be able to more fully assess, before that trial began, any potential settlement with the larger group of Water Provider Plaintiffs,

---

[1] The Wisconsin Action includes ACE American Insurance Company, ACE Property & Casualty Insurance Company, Century Indemnity Company, Endurance American Specialty Insurance Company, Everest Reinsurance Company, Federal Insurance Company, International Insurance Company, Lexington Insurance Company, Liberty Mutual Insurance Company, London Market Companies, Mt. McKinley Insurance Company, Munich Reinsurance America, Inc., and XL Insurance America, Inc.—none of which are parties to this action. *See* Declaration of Christian Stegmaier, dated April 24, 2024 ("Stegmaier Decl."), Ex. A. (Compl., Wisconsin Action); *see also* Dkt. 47-1 at 17 n.21 (Partial AIG Insurers' Mot. to Dismiss Tyco's Am. Compl.).

knowing the contours of any insurance coverage that might be available to help fund any such settlement. The Court noted that there was a prior pending action in Wisconsin involving more insurers and more policies but found that it was an insufficient basis to dismiss or stay this action because the schedule in the Wisconsin Action, though expedited at Tyco's request, would not resolve key coverage questions quickly enough to allow Tyco to more fully assess any settlement before the then-scheduled Water Provider bellwether trial.

While the AIG Insurers respectfully continue to disagree with the Court's denial of their initial motion to dismiss or stay, a dismissal or stay of this action is now clearly warranted based on the material change in circumstances since the Court ruled on that earlier motion. Tyco has settled with the Water Providers without any coverage rulings by this Court. Tyco's settlement eliminates the Court's sole reason for not dismissing or staying this action in favor of the first-filed Wisconsin Action. There will be no Water Provider bellwether trial and therefore Tyco does not need this Court's immediate assistance to resolve key coverage questions that might have, prior to the recent settlement, been relevant to Tyco's decision to settle with the Water Providers, or to the settlement terms. Therefore, there is no reason for this action to continue; rather, it should be dismissed or stayed in favor of the more comprehensive Wisconsin Action.

Significantly, Tyco and the insurers have already made significant progress on coverage issues in the Wisconsin Action. For example, Tyco moved for partial summary judgment on a key coverage question in the Wisconsin Action *under Wisconsin law*—and Judge Morrison already issued a ruling *in favor of Tyco* on that coverage question. Judge Morrison also issued a partial summary judgment ruling in favor of the AIG Insurers on a different coverage question, also under Wisconsin law. With (1) Tyco and the AIG Insurers agreeing that Wisconsin law applies, (2) Tyco and the AIG Insurers seeking coverage rulings in Wisconsin, (3) Judge Morrison devoting

4

significant resources to resolve all coverage questions the parties have asked him to resolve, making the Wisconsin Action more advanced than this action, and (4) continued discovery on an expedited basis in the Wisconsin Action to enable the parties to seek more coverage rulings based on a complete record, there is nothing to be gained by continuing this action, where the sole reason for its existence was to aid efforts by Tyco to assess settlement with the Water Providers and possibly to achieve a settlement with them.

In summary, this Court's reasons for maintaining this action have been mooted. This action is less comprehensive, less developed, costly to the parties, and a drain on this Court's valuable resources. Moreover, it presents the risk of inconsistent judgments, as well as appeals in different appellate court systems. Given all of this, a dismissal or stay of this action pending a speedy resolution of the Wisconsin Action is warranted. In granting this relief, this Court could (a) dismiss the action in its entirety, (b) stay the case pending resolution of the Wisconsin Action, or (c) hold in abeyance the deadlines set forth in this Court's case management order, including the deadline for Tyco's partial summary judgment motions, while the parties continue to litigate coverage issues in Wisconsin as they have been doing for months.

## BACKGROUND

**A.    This Court Denied The Insurers' Previous Motion To Dismiss Or Stay, Reasoning That Resolving Coverage Issues Could Foster A Settlement With The Water Providers.**

The Wisconsin Action was initiated on December 16, 2022. *See* Stegmaier Decl., Ex. A. (Compl., Wisconsin Action). Tyco initiated this action on May 31, 2023. Dkt. 1 (Compl.); *see also* Dkt. 32 (Am. Compl.). On September 11, 2023, Defendants, including the AIG Insurers, moved to dismiss or, in the alternative, to stay this action in favor of the Wisconsin Action. Dkt. 47 (Partial AIG Insurers' Mot. to Dismiss Tyco's Am. Compl.). This Court denied the motion on October 17, 2023. Dkt. 103 (the "Court's October 17, 2023 Order").

5

The Court explained that it denied the motion because "[t]he absence of a resolution of the major coverage issues between Tyco and its liability carriers has impaired the negotiations between Tyco and the plaintiffs in the MDL" and that "[a] timely resolution of those coverage issues . . . could provide the negotiating parties in the MDL critical information needed to reach a negotiated settlement." *Id.* at 16. The Court further determined that because Tyco "faces an August 2024 bellwether trial in the AFFF MDL that could potentially produce a devastating financial verdict against it," it was necessary to adjudicate the coverage issues prior to that date because doing so "would likely play an important, and perhaps even decisive, role in resolving the coverage issues between Tyco and its carriers, either by negotiation or a court decision." *Id.* at 16-17. In turn, the Court found that the adjudication of this action would "likely assist in advancing efforts to resolve the disputes between the plaintiffs and the Telomer defendants [including Tyco] pending in the bellwether trial." *Id.* at 16-17. The Court reasoned that because dispositive motions were not due until August 13, 2024 under the Wisconsin scheduling order, this Court was "positioned to prioritize this litigation and issue rulings on key coverage questions in a more timely manner *in advance of the August 2024 bellwether trial*." *Id.* at 17 & n.4 (emphasis added).

On November 10, 2023, the AIG Insurers sought reconsideration of the Court's October 17, 2023 Order. Dkt. 154 (Partial AIG Insurers' Memo. of Law for Reconsideration). The Court denied the motion on December 18, 2023. Dkt. 196 (Order). The Court reiterated its prior reasoning that a "timely resolution of th[e] coverage issues" before the bellwether trial was necessary to facilitate resolution of the AFFF MDL claims against Tyco. *Id.* at 7.

### B. After This Court Denied Defendants' Motion, The Parties Litigated Under An Expedited Schedule, Coordinating All Discovery In Both Actions.

To ensure the coverage issues were decided before the bellwether trial, the Court issued a case management order that required the parties to complete all fact and expert discovery by April

6

19, 2024 and brief dispositive motions by June 1, 2024. Dkt. 111 (Scheduling Order). Although these deadlines have been extended in a limited fashion by joint request of the parties, the June 1, 2024 date for completing dispositive motion briefing has not changed. *See* Dkt. 253 (Scheduling Order); Dkt. 264 (Scheduling Order). Discovery in both actions has been coordinated, so that all documents produced in either action is cross-designated in the other, and all depositions bear the captions of both actions.

The parties have tried their best to complete all necessary discovery in accordance with the Court's deadlines, but that has proved impossible. Tyco has produced **nearly 5 million** documents consisting of **over 28 million** pages, and it continues to produce additional documents almost weekly.[2] *See* Stegmaier Decl. ¶ 18. In addition, on April 15, 2024, the AIG Insurers received over **400,000** pages of documents in response to their third-party subpoena to Marsh—which was served prior to the close of discovery. *See* Stegmaier Decl., Ex. C (Marsh Subpoena dated Feb. 12, 2024); Stegmaier Decl., Ex. D (Marsh Production Email dated Apr. 15, 2024).

This brand-new, non-party production is important. Notably, Marsh acted as Tyco's insurance broker during many of the policy years in question. Documents reflecting communications between Tyco and Marsh concerning the historical scope of Tyco's insurance program, including any advice Marsh provided to Tyco concerning the program, are relevant to disputed coverage issues in the case. For example, Tyco's insurance underwriting expert, Dennis Connolly, has opined that ███████████████████████████████████████████ ███████████████████████████████████ *See* Stegmaier Decl., Ex. E ¶ 19 (Rebuttal Expert Report of Dennis R. Connolly dated Apr. 8, 2024). However, one of the few

---

[2] On April 12, 2024, *well* after the date to complete its document production, Tyco produced over *16,000* pages of additional documents. *See* Stegmaier Decl., Ex. B (Tyco's Production Letter dated Apr. 12, 2024).

contemporaneous emails between Tyco and Marsh produced by Marsh in response to another insurer's subpoena already undermines Mr. Connolly's opinion by revealing that Marsh ▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See* Stegmaier Decl., Ex. F (Correspondence between Tyco and Marsh dated between May 14, 2003 and May 23, 2003 (MARSH00399767)). The documents just produced by Marsh in response to the AIG Insurers' subpoena are likely to further undermine Mr. Connolly's opinions.

Overall, it has not been possible for Defendants to meaningfully review and synthesize such a vast amount of information in such a short period of time. In contrast, Tyco has had a significant portion of its information gathered and reviewed by lawyers for years in connection with the AFFF MDL, putting Defendants at a severe disadvantage they have not been able to overcome in such a short period of time despite the enormous resources they have devoted to these actions. Nonetheless, the parties worked tirelessly to meet the Court's deadlines. The parties have taken *thirty-five* fact depositions, and, between the AIG Insurers and Tyco, *twelve* initial and rebuttal expert reports have been served from *eight* different experts. *See* Stegmaier Decl. ¶ 19. Yet more remains to be done, which is why Tyco agreed to extend the discovery deadlines in the Wisconsin Action by a few months, as set forth below. While all of this is ongoing, the AIG insurers continue to mediate in good faith with Judge Layn Phillips in an effort to achieve a full resolution of Tyco's coverage claims. *See* Stegmaier Decl. ¶ 20. A stay of this action, allowing the parties to focus on a single suit with a single schedule and associated set of deadlines, would free up time and resources to devote to settlement talks.

   **C.** **The Wisconsin Action Has Materially Advanced And Judge Morrison Has Already Decided Key Coverage Questions.**

As this Court knows, in addition to being filed before this action, the Wisconsin Action is more comprehensive in that it includes many more insurers (and thus many more policies at issue) than this

8

action.  Since this Court's October 17, 2023 Order, the Wisconsin Action has progressed ahead of this action in three major ways.

*First*, the Wisconsin Court has *already* issued substantive rulings on insurance coverage questions and has done so expeditiously.  *See* Stegmaier Decl., Ex. G (Jan. 24, 2024 Order on "Occurrences," Wisconsin Action); Stegmaier Decl., Ex. H (Mar. 21, 2024 Order on "Allocation of Coverage," Wisconsin Action).  The latest of these—the March 21, 2024 Order on "Allocation of Coverage"—granted Tyco's motion for partial summary judgment.  *See* Stegmaier Decl., Ex. H.  Notably, in its supporting brief, Tyco argued that Judge Morrison should apply *Wisconsin* law.  *See* Stegmaier Decl., Ex. I at 1 (Tyco's Memo. Supp. Mot. for Partial Summ. J. on Allocation of Coverage, Wisconsin Action).

*Second*, the parties have repeatedly traveled to Wisconsin to present lengthy arguments on the motions, as well as for scheduling conferences.  *See, e.g.*, Stegmaier Decl., Ex. J (Feb. 7, 2024 Hr'g. Tr., Wisconsin Action).  There have been additional conferences by Zoom.  Judge Morrison has devoted substantial time and energy to the Wisconsin Action, meeting with counsel, hearing arguments, and issuing substantive decisions.  In contrast, none of the parties have appeared before this Court in any hearing with respect to this action.

*Third*, the insurers recently moved—with Tyco's approval—for additional time to complete discovery in the Wisconsin Action.  *See* Stegmaier Decl., Ex. K at 7 (Proposed Second Am. Case Scheduling Order and Supp. Br., Wisconsin Action).  That motion was granted.  *See* Stegmaier Decl., Ex. L at 5 (Third Am. Case Mgmt. Order).  Tyco agreed to a new schedule because it understood that discovery was not complete and could not be completed under the schedule set in this action.  In fact, Tyco's 30(b)(6) witness has at least another day of testimony to give, and there will be additional fact depositions.  In short, all parties recognize discovery is

not over, but all of the discovery going forward will take place solely in the Wisconsin Action so that it does not violate the schedule set forth in this action. That would put this action even further behind the Wisconsin Action, because Judge Morrison will have before him discovery that will not be before this Court, allowing him to make coverage rulings based on a more developed body of evidence.

### D. Tyco's Settlement with the MDL Water Provider Plaintiffs Is Not Contingent On Determination Of Coverage Issues.

On April 12, 2024, Tyco announced a $750 million settlement with the Water Provider Plaintiffs in the AFFF MDL. *See* Stegmaier Decl., Ex. M (Johnson Controls International PLC Form 8-K, dated Apr. 12, 2024); Ex. N (Exhibit 10.1 to Form 8-K, Settlement Agreement for Water Systems dated Apr. 12, 2024).[3] Notably, the settlement is not contingent on Tyco's resolution of its coverage disputes with its insurers. Rather, Tyco is funding the settlement itself. Nonetheless, it is important to note that Tyco has already settled with various insurers—and, again, Tyco continues to mediate with the AIG Insurers in good faith before Judge Phillips, and a stay of this action without having to deal with rushed summary judgment motions based on an incomplete record will permit the parties to focus even more on settlement.

In any event, Tyco's settlement with the Water Providers means that the Water Provider bellwether trial will not occur and, therefore, there is no need for this Court to resolve coverage questions, especially because the parties are already doing so before Judge Morrison. The sole rationale for tolerating competing, duplicative actions—the need to resolve coverage so Tyco could assess and facilitate any settlement with the Water Providers—no longer applies.

---

[3] These documents are also publicly available on Johnson Controls' website for investor relations: https://investors.johnsoncontrols.com/financial-information/johnson-sec-filings.

**ARGUMENT**

I.   **A DISMISSAL OR STAY OF THIS ACTION IS WARRANTED.**

It is settled law that "a trial court has 'broad discretion to stay proceedings as an incident to its power to control its own docket.'" *Stewart v. T-Mobile USA, Inc.*, 2015 U.S. Dist. LEXIS 100061, at *3-4 (D.S.C. July 31, 2015) (citation omitted); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). The decision to grant or deny a stay rests within the court's sound discretion, and courts "must weigh competing interests and maintain an even balance" when deciding whether a stay is appropriate. *Landis*, 299 U.S. at 254-55. This discretion extends to staying proceedings in a federal action "when a similar case is pending in state court." *Amdur v. Lizars*, 372 F.2d 103, 107-08 (4th Cir. 1967) (affirming under *Landis* the district court's stay of a federal action in favor of a "state proceeding [that] is appreciably more advanced than the one in federal court"); *see also Marsh v. Johnson*, 263 F. Supp. 2d 49, 52 (D.D.C. 2003) ("A trial court has broad discretion to stay all proceedings in an action *pending the resolution of independent proceedings elsewhere.*") (citing *Landis*, 299 U.S. at 254 (emphasis added)).

"Proper use of this authority requires the court to exercise its judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'" *Van Laningham v. Allied Ins.*, 2017 U.S. Dist. LEXIS 233333, at *5 (M.D.N.C. Mar. 15, 2018) (citation omitted). "Courts have identified these various factors as: (1) the interests of judicial economy, (2) the hardship and equity to the moving party in the absence of a stay, and (3) the potential prejudice to the non-moving party in the event of a stay." *Id*. (internal quotations omitted).

11

*Cnty. Comm'n of Fayette Cnty. v. Nat'l Grid Ne. Holdings 2 LLC*, 2023 U.S. Dist. LEXIS 19418 (S.D. W.Va. Feb. 6, 2023), underscores why a stay is warranted here. In that case, plaintiffs to an existing environmental liability action filed an amended complaint that included a direct action against the defendant's insurers. One of those insurers then filed a third-party complaint that impleaded dozens more insurers, resulting in the coverage issues overtaking the liability issues before the federal court, even though a coverage case involving the defendant and its insurers was already pending in Massachusetts state court. *Id.* at *8-10. Although the federal court declined to abstain from exercising jurisdiction over the coverage issues—just as this Court did in this matter—the *Fayette County* court still determined that a stay of the insurance coverage issues was warranted "pending the outcome of parallel proceedings," particularly as it could "take advantage of" the Massachusetts court's findings and outcomes if it needed to rule on the coverage issues at all. *Id.* at 11-12. This Court can and should do the same here.

Significantly, this Court's decision to exercise jurisdiction over this dispute was based solely on its concern that Tyco should be afforded a conclusion, one way or the other, with respect to the coverage issues in advance of the August 2024 bellwether trial, to foster settlement between Tyco and the Water Providers. As the Court stated:

- "*Plaintiff faces an August 2024 bellwether trial in the AFFF MDL that could potentially produce a devastating financial verdict against it*. A timely resolution of those coverage issues, either by finding coverage or the absence of coverage, could provide the negotiating parties in the MDL critical information needed to reach a negotiated settlement." Dkt. 103 at 16 (the Court's October 17, 2023 Order) (emphasis added).

- "In other words, according to the Wisconsin case management order, *there will be no court adjudication of the major coverage issues in advance of the commencement of the August 23, 2024 bellwether trial in which Tyco faces a potentially perilous outcome*." *Id.* at 17 (emphasis added).

- "A case management order in this Court which *facilitates the adjudication of the major coverage issues in advance of the bellwether trial would likely play an important, and perhaps even decisive, role in resolving the coverage issues* between Tyco and its carriers, either by negotiation or a court decision." *Id.* (emphasis added).

- "Under the newly issued Wisconsin state case management order, dispositive motions are not due to be filed until August 13, 2024, with responses due four weeks later, and replies due three weeks thereafter. Assuming the parties file on the last day due in the schedule, briefing on dispositive motions would not be completed until October 1, 2024. (Dkt. No. 94-6 at 5)." *Id.* at n.3.

- "In turn, the resolution of Tyco's coverage issues with its carriers, whether by determining coverage is or is not available, would likely assist in advancing efforts to resolve the disputes between the plaintiffs and the Telomer defendants *pending in the bellwether trial*." *Id.* (emphasis added).

- "Whether Tyco or its carriers have engaged in procedural fencing is something of a side show and fails to address the clear need for a court to adjudicate the major coverage disputes *in advance of the August 2024 bellwether trial*." *Id.* at 18 (emphasis added).

- "As set forth below, this Court intends to provide the carriers what they claim they seek—an adjudication of their coverage disputes before they are obligated to provide indemnity. *Tyco would also obtain what it seeks, a determination of its coverage disputes before going to trial in the bellwether case*." *Id.* at 19 (emphasis added).

These considerations have been rendered moot by Tyco's announced settlement with the Water Providers. That settlement negates the stated rationale for parallel actions and on that basis alone, a dismissal or stay is now warranted. What's more, as discussed below, a balancing of the three factors set forth above strongly favors a stay as well.

A.     **Judicial Economy Strongly Weighs In Favor Of A Dismissal or Stay.**

The first factor strongly favors a dismissal or stay, as staying this action will no doubt significantly promote judicial economy. There is no need at this point for two busy judges to resolve the same insurance coverage issues. Moreover, the Wisconsin Action "is appreciably more advanced than" this action, given that the Wisconsin Court has already decided two summary judgment motions. *See Amdur*, 372 F.2d at 107-08. The Wisconsin Court is well-equipped to resolve additional coverage issues under Wisconsin law.

13

### B.     Equitable Considerations Firmly Favor A Dismissal Or Stay.

The second and third factors likewise favor a dismissal or stay. The hardship on the AIG Insurers (and all insurer defendants) in continuing to litigate the same issues in two different venues is palpable. Putting aside the considerable additional expense, Tyco and the insurers agree that more discovery is necessary, but it is not available in this action. This situation risks a serious hardship for Defendants, particularly if this Court reached coverage issues before that additional discovery was completed, when in fact it would be completed in short order in the Wisconsin Action.[4] In *Amdur*, the Fourth Circuit affirmed a district court's stay of a federal action in favor of an advanced state court proceeding, reasoning that, "[s]ince the general theory underlying stay orders is the necessity of protecting the defendant from vexatious and uneconomical litigation, we conclude that the defendant is entitled to protection in the circumstances shown here." 372 F.2d at 107. The same is true here.

Tyco will suffer no prejudice if a stay is entered or the case is dismissed. Just the opposite—it will benefit, just as Defendants will. As this Court previously recognized, "the Wisconsin forum has certain advantages because Tyco is at home in Wisconsin." Dkt. 103 at

---

[4] Given that Tyco has agreed that more discovery is needed, deciding coverage issues in this action while discovery is ongoing in the Wisconsin Action raises significant issues under Federal Rule of Civil Procedure 56(d). Moreover, due process is violated where a defendant does not have the opportunity to fully present evidence opposing the claims asserted against it. This includes making sure the defendant has adequate time to discover such evidence. *See Freehill v. Lewis*, 355 F.2d 46, 48 (4th Cir. 1966) ("[A]dequate time must be allowed for discovery of the facts and assembly of the proof."). Further, it is black letter law that "[s]ufficient time for discovery is considered especially important when the relevant facts are exclusively in the control of the opposing party." 10B Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice & Procedure* § 2741 (4th ed. 2023). Tyco has all the facts, which plainly favors Tyco. *See, e.g., Cooper v. Stender*, 30 F.R.D. 389, 393 (E.D. Tenn. 1962) ("It is not the purpose of the discovery rules to give one party a strategic advantage over the other."). Staying this action while Tyco and the Defendants finish discovery pursuant to the expedited schedule to which they agreed and which Judge Morrison approved in the Wisconsin Action would eliminate these issues, both here and potentially on appeal.

16-17 (the Court's October 17, 2023 Order). Tyco alleges that the underlying lawsuits for which it seeks coverage all "aris[e] out of its manufacture, design, sale, supply, use or distribution of fire safety products." Dkt. 32 ¶ 2 (Am. Compl.). As Tyco has previously represented, that conduct has taken place "continuously" at its "facilities *in Marinette, Wisconsin*." Stegmaier Decl. Ex. O ¶ 56 (Compl., *Ansul, LLC, et al. v. ACE Am. Ins. Co., et al.*, No. 2022-CP-40-05289 (S.C. Ct. Com. Pl. May 22, 2023)) (emphasis added). Accordingly, the Wisconsin forum has, at least, the following advantages: (1) the primary sources of proof—records and Tyco employees—are located at Tyco's headquarters in Wisconsin, (2) the attendance of witnesses—principally Tyco employees[5]—will be easier to procure, and (3) the ability for a court or jury to view the premises—for example, Tyco's Fire Technology Center in Marinette, Wisconsin—can more easily be accommodated. This benefits all parties and prejudices no one. And a dismissal or stay will prevent the risk of inconsistent decisions, which would adversely affect both Tyco and the insurers in sowing confusion, prolonging litigation, increasing costs, and likely producing overlapping and parallel appeals to state and federal appellate courts. It will also free up resources to devote to settlement discussions. Accordingly, the Court should dismiss or stay this action in favor of the Wisconsin Action and allow the parties to proceed in a timely and reasonable manner to resolve all coverage disputes in Wisconsin.

II. **THIS COURT SHOULD RESOLVE THIS MOTION TO DISMISS OR STAY BEFORE TAKING UP TYCO'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT.**

On March 18, 2024, Tyco filed two partial summary judgment motions on discrete coverage issues. Dkt. 256 (Tyco's Notice of Motion for Partial Summary Judgment Regarding

---

[5] Out of the 32 former or current Tyco employees deposed in this action and in the AFFF MDL, 15 resided in Wisconsin at the time of their depositions. *See* Stegmaier Decl. ¶ 21.

15

Certain Pollution Exclusions); Dkt. 257 (Tyco's Notice of Motion for Partial Summary Judgment on Deductibles and Retentions). Briefing on those motions is not due to be completed until April 29, 2024. Dkt. 264 (Scheduling Order). Tyco does not contend in either motion that South Carolina law applies to the coverage issues. Dkt. 256-1 at 5 (Tyco's Motion for Partial Summary Judgment Regarding Certain Pollution Exclusions); Dkt. 257-1 at 5 (Tyco's Motion for Partial Summary Judgment on Deductibles and Retentions). The AIG Insurers respectfully submit that the Court should decide the instant motion to dismiss or stay before taking up the motions for partial summary judgment, as the Court's decision on the former may render it unnecessary for the Court to decide the latter. In addition to conserving judicial and litigant resources, sequencing the motions as set forth above may de-risk the potential for inconsistent judgments. In short, if this Court is inclined to dismiss or stay this action in favor of the more advanced and more comprehensive Wisconsin Action, this Court should not hobble Judge Morrison by issuing dispositive merits rulings at this juncture—and that is especially true since, as all parties agree, discovery is not complete and is ongoing in the Wisconsin Action.

If the Court is not inclined to dismiss or fully stay this action, another option would be to hold the deadlines in this Court's case management order in abeyance, including the deadline for Tyco's partial summary judgment motions (which Tyco could re-file in Wisconsin), while the parties continue to litigate coverage issues in Wisconsin and provide joint quarterly status reports to this Court.

## **CONCLUSION**

For the above-stated reasons, this Court should dismiss or stay this action in favor of the Wisconsin Action.

April 24, 2024
Columbia, South Carolina

Respectfully submitted,

COLLINS & LACY, P.C.

*/s/ Christian Stegmaier*
CHRISTIAN STEGMAIER
Federal Bar No. 8007)
cstegmaier@collinsandlacy.com
1330 Lady Street, 6th Floor
Columbia, South Carolina 29201
Telephone: (803) 256-2660


ALSTON & BIRD LLP

Adam J. Kaiser (*pro hac vice*)
Alexander S. Lorenzo (*pro hac vice*)
Matthew B. Byers (*pro hac vice*)
90 Park Avenue, 15th Floor
New York, New York 10016
adam.kaiser@alston.com
alexander.lorenzo@alston.com
matt.byers@alston.com
Telephone: (212) 210-9400

*Counsel for Defendants AIU Insurance Company, American Home Assurance Company, Granite State Insurance Company, Insurance Company of the State of Pennsylvania, National Union Fire Insurance Company of Pittsburgh, Pa., and New Hampshire Insurance Company*