UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| TYCO FIRE PRODUCTS LP,<br><br>            *Plaintiff*,<br><br>v.<br><br>AIU INSURANCE COMPANY, *et al.*<br><br>            *Defendants*. | Civil Action No. 2:23-cv-02384-RMG<br><br><br>Hon. Richard M. Gergel |

## PLAINTIFF'S OMNIBUS REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST AIG AND TIG REGARDING CERTAIN "POLLUTION EXCLUSIONS"

April 26, 2024

WILLS MASSALON & ALLEN LLC

Christy Ford Allen (SC Bar 07549)
Post Office Box 859
Charleston, South Carolina 29402
Tel:    (843) 727-1144
Email: callen@wmalawfirm.net

COVINGTON & BURLING LLP

Allan B. Moore (admitted *pro hac vice*)
Timothy D. Greszler (admitted *pro hac vice*)
Alexis N. Dyschkant (admitted *pro hac vice*)
850 Tenth Street, NW
Washington, DC 20001
Tel:    (202) 662-5575
Email: abmoore@cov.com

*Counsel for Plaintiff Tyco Fire Products LP*

TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................2

I.    Insurers' Effort to Expand Paragraph 1 of the Exclusions Is Inconsistent with the
      Paragraph's Plain Language. ..........................................................................................3

      A.    AIG and TIG's Interpretation of "Premises Used For the Handling or Storage of
            Waste" Is Not Reasonable. ....................................................................................3

      B.    The AFFF Claims Arise from the Intended "Use" of AFFF, Not the Disposal or
            Processing of AFFF as "Waste." ...........................................................................5

II.   Paragraph 2 of the Pollution Exclusions Does Not Apply to Product Liability and
      Common Law Claims for Property Damage and Bodily Injury. ......................................8

      A.    AIG's Interpretation of Paragraph 2 Is Not Reasonable. .......................................8

      B.    TIG's Reliance on the EPA's Recent PFAS-Related Drinking Water Regulation
            Is Misplaced. ...................................................................................................... 10

III.  Insurers' Arguments to Delay or Defer a Ruling on This Motion Are Unavailing. ...................... 12

      A.    Tyco's Motion Does Not Seek or Require a Ruling on the Full Scope of the
            Insurers' Duty to Indemnify ................................................................................ 12

      B.    TIG's Discovery Plea Mischaracterizes Tyco's Motion. ..................................... 14

      C.    Tyco's Motion Does Not Rely on or Require Extrinsic Evidence. ....................... 15

      CONCLUSION ................................................................................................................ 15

TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page(s)**

*Casper v. Metal Trades, Inc.*,
    604 F.2d 299 (4th Cir. 1979) ........................................................................................ 10

*Cataract Metal Finishing, Inc. v. Hartford Fire Ins. Co.*,
    2003 WL 251955 (W.D.N.Y. Jan. 2, 2003) .................................................................. 11

*Charleston Waterkeeper v. Frontier Logistics, L.P.*,
    488 F. Supp. 3d 240 (D.S.C. 2020) (Norton, J.) ............................................................ 7

*Cornerstone Title & Escrow, Inc. v. Evanston Ins. Co.*,
    555 Fed. App'x 230 (4th Cir. 2014) ............................................................................. 13

*Country Mut. Ins. Co. v. Jackson*,
    2022 WL 187808 (E.D. Wash. Jan. 20, 2022) ............................................................... 4

*Darks Constr., Inc. v. Shelby Ins. Co.*,
    2002 WL 31894718 (Conn. Super. Ct. Dec. 4, 2002) .................................................. 12

*Del. Riverkeeper Network v. Soil Safe, Inc.*,
    2017 WL 2829603 (D.N.J. June 30, 2017) ..................................................................... 7

*Estate of Jones ex rel. Demet v. Smith*,
    768 N.W.2d 245 (Wis. Ct. App. 2009) .......................................................................... 7

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*,
    713 F.3d 502 (9th Cir. 2013) .......................................................................................... 7

*Ellet Bros., Inc. v. U.S. Fidelity & Guar. Co.*,
    275 F.3d 384 (4th Cir. 2001) ........................................................................................ 13

*FCCI Ins. Co. v. Island Pointe, LLC*,
    2018 WL 1100484 (D.S.C. Feb. 23, 2018) .................................................................. 13

*Greenville Cnty. v. Ins. Reserve Fund*,
    443 S.E.2d 552 (S.C. 1994) ............................................................................................ 4

*Harrods Ltd. v. Sixty Internet Domain Names*,
    302 F.3d 214 (4th Cir. 2002) ........................................................................................ 14

*Jalbert v. XL Ins. Am., Inc.*,
    2018 WL 4850403 (C.D. Cal. June 7, 2018) .................................................................. 4

*PCS Phosphate Co. v. Am. Home. Assurance Co.*,
    2016 WL 1271031 (E.D.N.C. Mar. 29, 2016) ................................................................ 4

*Trustguard Ins. Co. v. Collins*,
    942 F.3d 195 (4th Cir. 2019) ........................................................................................ 13

*United Capitol Ins. Co. v. Kapiloff*,
    155 F.3d 488 (4th Cir. 1998) ................................................................................... 13

*Wilson Mutual Insurance Company v. Falk*,
    857 N.W.2d 156 (Wis. 2014) .............................................................................. 9, 10

*Wis. Pub. Serv. Corp. v. Heritage Mut. Ins. Co.*,
    548 N.W.2d 544 (Wis. Ct. App. 1996), *aff'd*, 561 N.W.2d 726 (Wis. 1997)..................................... 10

*WPC Indus. Contractors Ltd. v. Amerisure Mut. Ins. Co.*,
    660 F. Supp. 2d 1341 (S.D. Fla. 2009), *superseded on other grounds*, 720 F. Supp. 2d
    1377 (S.D. Fla. 2009) ............................................................................................... 4

**Rules and Regulations**

Fed. R. Civ. P. 56 ............................................................................................................ 14

## INTRODUCTION

AIG and TIG ("Insurers") oppose a motion that Tyco has not made.  Tyco has not asked the Court to articulate a "sweeping rule" of insurance law that pollution exclusions in general liability policies apply only to "traditional environmental contamination" and can never apply to product-related claims.  *See* ECF 274 ("TIG Opp.") at 10–12; ECF 281 ("AIG Opp.") at 10.  To the contrary, Tyco's Motion targets the plain language of five specific pollution exclusions (largely found in AIG primary and umbrella policies from the late 1990s and early 2000s) that expressly confirm that these policies cover property damage and bodily injury arising from the "escape" or "release" of "pollutants" *except* at or from certain "*premises*" or as a result of such pollutants' treatment as "*waste*"—i.e., circumstances plainly not presented by the AFFF Claims.

Indeed, Tyco has stated that the the Court may assume, for purposes of this Motion, both that (i) Tyco's AFFF product "is a 'pollutant' (as defined in the exclusions) [and (ii)] its use to fight fires as intended, either in emergencies or training, qualifies as an 'escape' or 'release' of 'pollutants'—two propositions which Tyco vigorously disputes."  ECF 256-1 ("Tyco Mem.") at 6.  Even under these assumptions, as the AFFF complaints show, the AFFF Claims are not claims about discharges at or from Tyco (or Tyco contractor) "premises" or claims about "waste"; they are *product liability claims* within the core coverage of the policies.

AIG knows this to be true. 

---

[1] AIG produced this document after the deposition of Mr. Chase, who wrote it, and just before 9 p.m. ET, on the night before the deposition of its Rule 30(b)(6) designee and senior claims

1

[REDACTED]

[REDACTED] [2]

In short, because the language of the few pollution exclusions upon which Tyco has moved is clear (i.e., *those exclusions* do not exclude coverage for product liability claims); because the Court must adopt Tyco's coverage-preserving interpretation of an exclusion so long as it is at least "reasonable" (Tyco Mem. at 5); and because the interpretation of insurance policy language presents a pure question of law appropriate for summary judgment (*see id.*), the Court should grant Tyco's Motion. In their effort to contend otherwise, Insurers seek to distract the Court by addressing irrelevant straw-man arguments that Tyco simply has not made.

## ARGUMENT

Insurers provide no legitimate basis to deny or delay a ruling on Tyco's Motion. *First*, they advance overbroad readings of the "waste"- and "disposal"- related provisions in Paragraph 1 of the exclusions that are not supported by the plain language. *Second*, even they cannot agree on what losses Paragraph 2 of their exclusions are intended to capture, which underscores that neither has advanced a plain reading. *Third*, the Court need not delay interpreting the plain language of these narrow exclusions, and settled law favors partial summary judgment.

---

officer on claims-handling topics related to Tyco's claim. *See* Declaration of Ryan M. Buschell ("Buschell Decl."), ¶ 3.

[2] [REDACTED]

I.   **Insurers' Effort to Expand Paragraph 1 of the Exclusions Is Inconsistent with the Paragraph's Plain Language.**

Insurers attempt to stretch the provisions of Paragraph 1 of these exclusions beyond their plain and obvious application to the discharge of "pollutants" "at or from" Tyco (or Tyco-affiliated) "premises" or to the disposal of "waste."  But no reasonable reading of this language could expand its scope beyond those specific premises and waste activities—its clear subject-matter—to bar coverage for the core product liability coverage that the policies provide. Insurers' argument finds no support in the plain language and is manifestly unreasonable.[3]

A.   **AIG and TIG's Interpretation of "Premises Used For the Handling or Storage of Waste" Is Not Reasonable.**

In three of the pollution exclusions at issue, *see* ECF 256-3, 256-4, & 256-7, Paragraph 1 of the exclusion bars coverage for the "escape" or "release" of "pollutants" _only where_ at least one further condition exists (as set forth in specified sub-paragraphs)—for example, where the "escape" or "release" occurred at the insured's premises (¶ 1(a)) or where the insured itself disposed of the "pollutant" as "waste" (¶ 1(c)).  Tyco Mem. at 6-7.  The only sub-paragraph in these three exclusions that Insurers contend even potentially applies to the AFFF Claims is Paragraph 1(b).  That sub-paragraph excludes bodily injury or property damage arising out of the "escape" or "release" of "pollutants *[a]t or from* any premises, site or location which is or was at any time *used by or for* any insured or others *for the handling, storage, disposal, processing or*

---

[3] Insurers are wrong that the Court must decide which state's law to apply.  *See* AIG Opp. at 7-8; TIG Opp. at 10.  Tyco's Motion is based on the plain language of the pollution exclusions at issue and rules of contract interpretation recognized in all jurisdictions.  *See* Tyco Mem. at 5. Accordingly, there is no conflict of law to resolve, and insurers have not shown otherwise.

*treatment of waste*." *E.g.*, AIG Opp. at 16-17 (emphasis added).  The Court should reject Insurers' manifestly overbroad reading of this language.[4]

*First*, the escape or release of pollutants "*at or from*" a premises self-evidently refers to a discharge or emission of some kind at or from a *specific type of property or facility*, and does not refer to the intended use of a finished product that was brought onto that premises after the product left its manufacturing facility and entered the stream of commerce.

*Second*, a premises "*used for*" the "handling, storage, disposal, processing or treatment of waste" plainly refers to a landfill, recycling plant, or other facility with a waste management function.  Courts have consistently interpreted this language accordingly.  *See, e.g., Jalbert v. XL Ins. Am., Inc.*, 2018 WL 4850403, at *10 (C.D. Cal. June 7, 2018) (battery recycling plant); *PCS Phosphate Co. v. Am. Home. Assurance Co.*, 2016 WL 1271031, at *9 (E.D.N.C. Mar. 29, 2016) (electrical transformer recycling operation); *Country Mut. Ins. Co. v. Jackson*, 2022 WL 187808, at *7 (E.D. Wash. Jan. 20, 2022) (scrap metal recycling facility).  Insurers have failed to identify a single decision holding that any "premises" other than a waste management facility falls into this or a materially similar sub-paragraph.

Instead, Insurers advance a patently unreasonable interpretation that does not appear ever to have been endorsed by any court:  that a "premises" becomes "used for" the "handling, storage, disposal, processing or treatment of waste" anytime something is thrown away there. AIG Opp. at 16-17; TIG Opp. at 19-20.  Under Insurers' reading, any family home would qualify as premises "used for" the disposal of waste by virtue of having indoor plumbing—an interpretation already rejected by at least one court.  *See WPC Indus. Contractors Ltd. v.*

---

[4] As an initial matter, the use of AFFF at issue in the underlying claims does not involve "waste." *See infra*, Section I.B.

*Amerisure Mut. Ins. Co.*, 660 F. Supp. 2d 1341, 1347 (S.D. Fla. 2009) (finding a home is not used "for the disposal of or handling of waste" merely because "modern construction permits the accommodation of human digestive functions within the home"), *superseded on other grounds*, 720 F. Supp. 2d 1377 (S.D. Fla. 2009); *see also Greenville Cnty. v. Ins. Reserve Fund*, 443 S.E.2d 552, 553 (S.C. 1994) (exclusions must be interpreted narrowly against the insurer).

Insurers' extreme position also renders other parts of the policy a nullity or surplusage. *See* 2 Couch on Ins. § 22:43 (3d. 2023) (observing that an interpretation that "entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction") (citation omitted).  For example, Paragraph 1(c) of the same exclusion bars coverage where a "release" of "pollutants" arises out of *the insured* transporting, handling, storing, treating, or disposing of waste.  *See* Tyco Mem. at 17.  But if any premises is "used for" the "handling, storage, disposal, processing or treatment of waste" whenever alleged "waste" is left there *by anyone*, then Paragraph 1(c)'s limitation to waste disposal activities of *the insured* would have no force:  Paragraph 1(b) would exclude coverage any time that limitation to Paragraph 1(c) might preserve coverage.  And Paragraph 1(c) would be superfluous, because it would exclude nothing not already excluded by Paragraph 1(b).

Because not even Insurers argue that the AFFF Claims involve the "escape" or "release" or "pollutants" from landfills or recycling plants, the Court should grant Tyco's Motion with respect to Paragraph 1 of these three pollution exclusions, *see* ECF 256-3, 256-4, & 256-7.

### B.    The AFFF Claims Arise from the Intended "Use" of AFFF, Not the Disposal or Processing of AFFF as "Waste."

The remaining two pollution exclusions on which Tyco has moved, *see* ECF 256-5 & 256-6, expressly preserve coverage for any "escape" or "release" of "pollutants" arising out of the "Products-Completed Operations Hazard," so long as Tyco's product was not "(a) discarded,

dumped, abandoned, thrown away; or (b) transported, handled, stored, treated, disposed of or processed as waste; by anyone." Tyco Mem. at 17 (quoting sub-paragraph in full). All other "escapes" or "releases" of "pollutants" arising from the policyholder's products are covered. Insurers admit (as they must) that the AFFF Claims fall under the Products-Completed Operations Hazard (i.e., the policies' product liability coverage). But they argue that the AFFF Claims all arise out of AFFF being "discarded" or "thrown away."

*First*, as the Court is well aware, the underlying plaintiffs in the AFFF Claims overwhelmingly assert that the property damage and bodily injury allegedly caused by AFFF arose from its intended use as a firefighting product: "When *sprayed onto outdoor surfaces as intended*, the compounds [in AFFF] migrated through the soil and into the groundwater, thereby contaminating the underground aquifer." ECF 278-2 (Amended Complaint, *City of Sioux Falls v. 3M Co. et al.*, No. 2:19-cv-01806 (D.S.C.)), ¶ 8 (emphasis added). These allegations are repeated across the AFFF complaints. *See, e.g.*, Tyco Mem. at 9–10 (citing allegations regarding *use* of AFFF). There can be no reasonable dispute that such allegations in the underlying AFFF Claims fall within the broad "Products Completed Operations Hazard" exception, and they do not run afoul of its "waste" limitations—i.e., the alleged property damage and bodily injury arose from the "intended use" of AFFF, not a waste disposal practice. Insurers have not identified *a single underlying complaint* from which such allegations are absent.

*Second*, Insurers' effort to spin these allegations is not credible. They argue that the plaintiffs' allegations of "intended use" still qualify as "discarding" or "disposal," reasoning that used AFFF was "abandoned and disposed of on the ground" where it was applied. AIG Opp. at 17; TIG Opp. at 19 (similar). The language cannot be stretched so far. Many products are never collected for subsequent disposal after their intended use. But no one would consider pesticides,

for example, to have been "discarded" or "thrown away" simply because they are not recovered from the soil after the crop has been harvested.  Nor would anyone consider outdoor sidewalk chalk "discarded" on the pavement simply because no one later scraped up the chalk shavings. Common sense examples are endless.  Policyholders would not consider such products, including AFFF, to have been "thrown away" or "discarded."  *See, e.g.*, 2 Couch on Ins. § 22:11 ("[A]n insured's reasonable expectations upon reading the policy should guide construction").

Neither AIG nor TIG has identified any decisions adopting their expansive contrary interpretation.  And in other contexts, courts regularly distinguish between (1) the use of substances that remain in the environment after they are applied; and (2) the disposal or discarding of such substances.  *See, e.g.*, *Charleston Waterkeeper v. Frontier Logistics, L.P.*, 488 F. Supp. 3d 240, 256 (D.S.C. 2020) (Norton, J.) (distinguishing between products that are "abandoned" and those that are "released into the environment pursuant to their design to serve an intended purpose"); *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 516 (9th Cir. 2013) ("[W]ood preservative that is washed or blown away from utility poles . . . has not been 'discarded.'"); *Del. Riverkeeper Network v. Soil Safe, Inc.*, 2017 WL 2829603, at *22 (D.N.J. June 30, 2017) ("[W]ords like 'discard,' 'disposal,' and 'abandon' connote[] that the material is not being applied for a beneficial or intentional purpose." (citation omitted)).

*Third*, Insurers cite a handful of documents that they characterize as Tyco's "disposal" instructions for AFFF.  *See* AIG Opp. at 17-18; TIG Opp. at 19-20.  But these "instructions" merely show that—like many products—AFFF was intended for outdoor use (e.g., on the "outdoor surfaces").  Such outdoor use does not trigger the "disposal" exclusion, as explained above.  But even if there are some stray allegations that could reasonably be characterized as AFFF being "discarded" or "thrown away," that would provide Insurers no refuge.  Where

damage or injury is caused by both a covered cause (the "use" of AFFF) and an excluded cause (the "disposal" of AFFF), the entire loss is covered. *See, e.g.*, *Estate of Jones ex rel. Demet v. Smith*, 768 N.W.2d 245, 248 (Wis. Ct. App. 2009) (holding CGL coverage extends "to a loss caused by [an] insured risk even though [an] excluded risk is a contributory cause"). Here, there can be no dispute that the overwhelming majority of the allegations in the underlying AFFF Claims concern bodily injury and property damage resulting from the "use" of AFFF, not its "disposal," and so the entire loss would still be covered.

The Court thus should grant summary judgment in favor of Tyco with respect to Paragraph 1 of these two exclusions as well, *see* ECF 256-5, & 256-6.

## II.    Paragraph 2 of the Pollution Exclusions Does Not Apply to Product Liability and Common Law Claims for Property Damage and Bodily Injury.

Insurers also attempt, albeit in different ways, to extend the reach of Paragraph 2 of the pollution exclusions beyond its plain meaning. As anticipated in Tyco's Motion, *see* Tyco Mem. at 13–16, AIG's untenable interpretation of Paragraph 2 deprives *every other provision* of the exclusion of *any* meaning. TIG, on the other hand, perhaps aware of the untenable impact of AIG's interpretation, argues that Water Provider Claims—which began being filed in 2016— somehow arise from a PFAS-related regulation adopted by the EPA only a few weeks ago, on April 8, 2024, that still has not yet taken effect. The Court should reject both arguments.

### A.    AIG's Interpretation of Paragraph 2 Is Not Reasonable.

AIG's overbroad interpretation of Paragraph 2 is not consistent with the most basic rules of contract interpretation. Rather than interpret Paragraph 2 in context and in a way that harmonizes its language with the surrounding provisions, as the Court is required to do when interpreting any contract, *see* Tyco Mem. at 14 (collecting cases), AIG advances the broadest possible interpretation of each word as if it exists in a vacuum. In doing so, AIG asserts that

Paragraph 2 "precludes coverage not just for property damage and bodily injury arising out of pollution, but also for remediation costs associated with the same lawsuit or underlying claim." AIG Opp. at 24.  This reading is incompatible with the text.

_First_, exactly as Tyco foreshadowed in its opening brief, _see_ Tyco Mem. at 13-16, AIG's overbroad interpretation of Paragraph 2 renders other exclusionary language superfluous.  AIG has no answer for the fact that, if Paragraph 2 were interpreted to preclude coverage for all "_property damage and bodily injury_ arising out of pollution," AIG Opp. at 24 (emphasis added), all of the carefully drafted _limitations_ to Paragraph 1 would be superfluous:  they could never actually apply to preserve coverage.  _See_ Tyco Mem. at 14.  It is simply not reasonable for there to be expressly specified circumstances under which coverage for bodily injury and property damage arising from the "escape" or "release" of "pollutants" is preserved in Paragraph 1, only for Paragraph 2 of the same exclusion to wipe out all such coverage without exception.[5]  But that is what AIG asks the Court to accept here.  Instead, the only way to reconcile this language is to conclude that—unlike Paragraph 1—Paragraph 2 does _not_ apply to compensatory damages for "bodily injury" or "property damage," and is instead directed to a distinct basis of liability— namely, "loss, cost or expense" for certain remediation actions under environmental statutes.

_Second_, the Wisconsin Supreme Court's decision in _Wilson Mutual Insurance Company v. Falk_, 857 N.W.2d 156 (Wis. 2014) provides no support for AIG's overbroad interpretation of Paragraph 2.  While _Falk_ addressed language very similar to Paragraph 2(a), AIG does not alert the Court to the fact that the "Farm Chemicals Limited Liability Endorsement" at issue in that

---

[5] Likewise, under the 2005–2008 AIG umbrella policies, because the exception for pollution-related losses within the products-completed operations hazard ostensibly applies to Paragraph 1 of the exclusion, the entire exception would be superfluous and the expanded coverage it provides would be illusory under AIG's interpretation of Paragraph 2.  _See_ Tyco Mem. at 17–18.

case *did not contain a Paragraph 1 or Paragraph 2(b)*. *Id.* at 172-73. Accordingly, the court in *Falk* did not have to account for whether its construction of "loss, cost or expense" from "requests, demands, [or] orders" conflicted with other language in the same exclusion that: (i) expressly *preserved* coverage for "bodily injury" or "property damage" from the "release" of "pollutants" under most circumstances as Paragraph 1 does; and (ii) expressly distinguished between a "request, demand or order" and a "claim or suit" for "damages," as Paragraph 2(b) does. But this Court must do so here. As explained above, *Falk* could not have reached the same conclusion consistent with hornbook principles of contract interpretation if that court had been presented with the very different pollution exclusions at issue in this Motion.[6]

*Third*, because the language of the policy plainly supports Tyco's interpretation, extrinsic evidence is irrelevant. *See, e.g.*, *Casper v. Metal Trades, Inc.*, 604 F.2d 299, 300 (4th Cir. 1979).[7]

### B.    TIG's Reliance on the EPA's Recent PFAS-Related Drinking Water Regulation Is Misplaced.

TIG does not ask the Court to adopt AIG's wildly overbroad interpretation of Paragraph 2. But TIG's interpretation of Paragraph 2 fares no better. TIG contends that the Water Provider Claims against Tyco—many of which have been pending for many years—somehow "*arise out*

---

[6] For this reason, the decisions that interpret pollution exclusions that include both Paragraphs 1 and 2 are the most persuasive authority, and those decisions support Tyco's reading of the policy language, not AIG's. *See* Tyco Mem. at 11–13; *see also, e.g.*, *Wis. Pub. Serv. Corp. v. Heritage Mut. Ins. Co.*, 548 N.W.2d 544, 549 (Wis. Ct. App. 1996) (construing Paragraph 2 exclusion for "loss, cost or expense arising out of any governmental direction or request that you test for, monitor, cleanup, remove, contain, treat, detoxify or neutralize pollutants" as limited to "liability as a PRP under CERCLA or state law"), *aff'd*, 561 N.W.2d 726 (Wis. 1997).

[7] For this reason, AIG's citation to the purported expert opinion offered by its retained insurance expert Michael L. Averill cannot be considered in connection with Tyco's Motion. As Tyco will demonstrate in a forthcoming motion, Mr. Averill's opinions also are inadmissible because they amount only to improper legal conclusions concerning the interpretation of that language, not admissible opinions on industry custom and practice.

*of*" the newly issued EPA drinking water regulation, which has yet to take effect.  *See* TIG Opp. at 13.  This argument is divorced from policy language and the chronology of the underlying AFFF Claims.

*First*, before even reaching the question of whether an EPA regulation of general applicability even qualifies as an "order" to "respond to" "pollutants," TIG cannot credibly contend that the damages sought by the water providers are a "loss, cost or expense *arising out of*" the EPA regulation that TIG cites.  *See* TIG Opp. at 13–14.  That regulation was not published in the Federal Register until April 26, 2024, and will not even become effective until June 25, 2024, and water providers will not be required to comply with its PFAS limits until *five years from now*.[8]  Meanwhile, the water providers' common law and product liability claims against Tyco for "property damage" were settled (subject to the Court's approval) on April 12, 2024.  TIG's reference to state-level drinking water regulations is also misplaced.  Only ten states have drinking water regulations for PFAS,[9] and even water providers in those states assert common law claims for property damage independent of any regulatory requirements.

*Second*, even setting aside the impossibility of water provider claims "arising out of" regulations that have not yet gone into effect, TIG cites no apposite authority for the proposition that a regulation of general applicability can constitute a "request, demand or order" within the meaning of Paragraph 2(a).  Instead, TIG cites cases concerning statutory and regulatory interpretation, none of which concerns a pollution exclusion in a commercial general liability

---

[8] PFAS National Primary Drinking Water Regulation, 89 Fed. Reg. 32,532, 32,533 (Apr. 26, 2024) (to be codified at 40 C.F.R. pt. 141, 142).

[9] U.S. EPA, *Economic Analysis for the Final Per- and Polyfluoroalkyl Substances National Primary Drinking Water Regulation* (2024), 4-26, https://www.epa.gov/system/files/documents/2024-04/pfas-npdwr_final-rule_ea.pdf.  States with promulgated regulations include New Jersey, Vermont, New Hampshire, Massachusetts, Michigan, New York, Pennsylvania, Wisconsin, and Rhode Island.  *See id.*

policy.  *See* TIG Opp. at 14 n.9.  But cases construing policy language identical to or materially the same as Paragraph 2(a) make clear that a "request, demand or order" is directed to a specific party and responds to conditions at a specific site.  *See, e.g.*, *Cataract Metal Finishing, Inc. v. Hartford Fire Ins. Co.*, 2003 WL 251955, at *1 (W.D.N.Y. Jan. 2, 2003) (cleanup at metal-finishing plant); *Darks Constr., Inc. v. Shelby Ins. Co.*, 2002 WL 31894718, at *1 (Conn. Super. Ct. Dec. 4, 2002) (cleanup of oil spill).  General water quality standards simply are not the type of "request, demand or order" for site-specific environmental cleanup contemplated by Paragraph 2(a), even if such regulations were now in effect.

## III.    Insurers' Arguments to Delay or Defer a Ruling on This Motion Are Unavailing.

Lacking persuasive arguments on the policy language, Insurers devote much of their Oppositions to arguing that the Court should not reach the merits of Tyco's Motion.  Indeed, AIG does not even begin to respond to Tyco's arguments until *page 16*.  To forestall a ruling, Insurers contend that: (i) Tyco's Motion seeks a premature determination of Insurers' indemnity obligations, TIG Opp. at 10; AIG Opp. at 1–2; (ii) Insurers require more discovery to oppose Tyco's Motion, TIG Opp. at 9, 11; and (iii) Tyco relies on extrinsic evidence over which there is a genuine dispute of material fact, AIG Opp. at 2.  All of these arguments are unavailing.

### A.    Tyco's Motion Does Not Seek or Require a Ruling on the Full Scope of the Insurers' Duty to Indemnify.

Insurers argue that Tyco's Motion is premature because their *indemnity obligations* cannot be decided until "factual determinations have been made in the underlying lawsuits" and "underlying liability against Tyco has been established."  TIG Opp. at 10; AIG Opp. at 1–2. This argument misses the mark completely.  It also ignores familiar and settled jurisprudence in regard to how complex insurance cases are typically adjudicated.

Tyco's Motion does not ask or require the Court to adjudicate Insurers' indemnity obligations *in full*. Those obligations are conditioned on much more than whether the five pollution exclusions at issue bar coverage for the AFFF Claims. Tyco asks only that the Court resolve the specific, material issues of contract interpretation that its Motion presents, based on the plain language of the relevant policy provisions. In the same vein, there is no merit to TIG's contention that Tyco must establish coverage under, and exhaustion of, underlying policies before the Court can construe a pollution exclusion. *See* TIG Opp. at 4–5. That is not the law. The cases identified by TIG all concern efforts by insurers to avoid or determine indemnity obligations before any underlying liability was established.[10] As noted above, Tyco does not seek a full determination of TIG's duty to indemnify, and here, Tyco has entered into a settlement (subject to Court approval) of significant alleged underlying liability as to which coverage needs to be determined.

Nor is this Court unable to act on Tyco's Motion until all other issues pertaining to Insurers' indemnity obligations can be adjudicated. Insurance coverage actions (particularly, in complex cases) regularly involve narrow and targeted motions practice concerning disputes over the meaning of policy language, including motions for partial summary judgment. *See, e.g.*, *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998) ("It is well established that a declaration of parties' rights under an insurance policy is an appropriate use of the declaratory judgment mechanism"); *Cornerstone Title & Escrow, Inc. v. Evanston Ins. Co.*, 555 Fed. App'x

---

[10] *See Trustguard Ins. Co. v. Collins*, 942 F.3d 195, 198 (4th Cir. 2019) (insurer seeking determination of no duty to indemnify); *Ellet Bros., Inc. v. U.S. Fidelity & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001) (same); *FCCI Ins. Co. v. Island Pointe, LLC*, 2018 WL 1100484, at *3 (D.S.C. Feb. 23, 2018) (insurer seeking declaration of other insurer's duty to indemnify).

230, 239 (4th Cir. 2014) (ordering partial summary judgment in favor of insured that certain

exclusions did not bar coverage, remanding for further proceedings on other exclusions).

### B.     TIG's Discovery Plea Mischaracterizes Tyco's Motion.

In a further effort to cast Tyco's Motion as premature, TIG describes "the relief Tyco

seeks" as "a broad-sweeping rule that the pollution exclusion [in its policy] would not apply to

<u>any</u> underlying claims."  TIG Opp. at 12; *see also id.* at 17 ("Tyco attempts to have this Court

rule as a matter of law that <u>all</u> 'AFFF Claims' fall outside of the TIG Pollution Exclusion.").

Based on this assertion, TIG argues that there is "no way for the parties or this Court to make

that determination" due to a purported "lack of discovery in the underlying lawsuits."  *Id.* at 21–

22.  This position both mischaracterizes Tyco's requested relief and fails to identify the

purportedly required but missing discovery.

As an initial matter, Fed. R. Civ. P. 56(d) "requires a party opposing summary judgment

on the grounds that more discovery is needed to file an affidavit making that point."  *Harrods*

*Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002).  *Harrods*, which TIG

itself quotes, holds that an argument in a brief "is not an adequate substitute" for a Rule 56(d)

affidavit, which is necessary to ensure a "good faith" need for further discovery.  *Id.*  TIG has

filed no such affidavit, and the Court should reject TIG's request on this basis alone.[11]

But even if TIG had attempted to justify its need for additional discovery, that request

would fail because it is premised on a mischaracterization of Tyco's requested relief.  Tyco seeks

a ruling that, *by its terms*, the pollution exclusion in the one TIG policy at issue does not preclude

---

[11] Rather than submit a Rule 56(d) affidavit, TIG's brief simply "imagine[s] factual scenarios in
the undeveloped, underlying lawsuits that would fall within the TIG Pollution Exclusion."  TIG
Opp. at 22.  But fact discovery is over in this case.

coverage for "the product liability and common law causes of action alleging bodily injury and property damage asserted in the AFFF Claims" (i.e., as those claims are pleaded).  Tyco Mem. at 11 & 19.  That is far narrower than a request to find the exclusion does not bar coverage for every single claim or allegation in the thousands of underlying complaints.  Indeed, Tyco specifically excepted certain underlying claims from its Motion.  *Id.* at 4 n.4 (identifying certain environmental cleanup causes of action in a handful of underlying complaints).  Nothing more is needed for the Court to rule on the grounds upon which Tyco actually has moved.

    **C.**    **Tyco's Motion Does Not Rely on or Require Extrinsic Evidence.**

Finally, AIG devotes roughly *the first half* of its Opposition to discussing purported extrinsic evidence about whether "Pollution Exclusions, regardless of their actual terms," are limited to "traditional environmental pollution."  AIG Opp. at 3–4, 9–16.  But Tyco's Motion neither asks the Court to decide that broad question nor relies on extrinsic evidence.  AIG's gratuitous discussion of extrinsic evidence merely clouds the issues and distracts from AIG's patently unreasonable interpretation of the unambiguous policy language.  Here, Tyco has demonstrated that the five pollution exclusions at issue are unambiguous and the Insurers' contrary interpretations are not reasonable.  *See supra*, Sections I-II.  In these circumstances, the Insurers' resort to extrinsic evidence is impermissible.  *See supra*, Section II.A.

**CONCLUSION**

For the reasons set forth above and in Tyco's prior brief, *see* ECF 256-1, the Court should grant Tyco's Motion and hold, as a matter of law, that the five pollution exclusions at issue in this Motion do not preclude coverage for the product liability and common law causes of action alleging bodily injury and property damage asserted in the AFFF Claims.

Dated: April 26, 2024

WILLS MASSALON & ALLEN LLC

By: */s/ Christy Ford Allen*
Christy Ford Allen (SC Bar 07549)
Post Office Box 859
Charleston, South Carolina 29402
Tel:    (843) 727-1144
Email: callen@wmalawfirm.net

COVINGTON & BURLING LLP

Allan B. Moore (admitted *pro hac vice*)
Timothy D. Greszler (admitted *pro hac vice*)
Alexis N. Dyschkant (admitted *pro hac vice*)
850 Tenth Street, NW
Washington, DC 20001
Tel:    (202) 662-5575
Email: abmoore@cov.com

*Counsel for Tyco Fire Products LP*